**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____x
: 
TRANSCIENCE &                                                          : 
YOLANDA VON BRAUNHUT (individual)              : 
                                 Plaintiffs        :          Index No.:
: 
       -against-                                       : 
:          **VERIFIED COMPLAINT**
: 
BIG TIME TOYS, LLC                                            : 
                            Defendant.      : 
_____ x

<u>**PETITION FOR INJUNCTIVE RELIEF**</u>
<u>**&**</u>
<u>**CLAIM FOR MONEY DAMAGES**</u>

        Plaintiffs TRANSCIENCE &YOLANDA VON BRAUNHUT (individual) by and through their attorney William Timmons, Esq., with offices located in Sayville New York, hereby file this Summons and Verified Complaint in this Petition for Injunctive Relief *and* Claim for Money Damages, and allege the following in support thereof:

<u>**INTRODUCTION**</u>

By this Petition for Injunctive Relief *and* Claim for Money Damages Plaintiffs seek:

- the issuance of permanent injunction by the Court prohibiting any future use of the Licensed Trademarks or Licensed Copyrights by the Defendant as detailed within this Complaint;

- the issuance of a permanent Order of the Court requiring that the Defendant immediately cease selling, marketing , and/or producing any of the previously Licensed Products as detailed within this Compliant;

- the issuance of an Order of the Court requiring that the Defendant immediately return to Plaintiffs any and all unsold product, packets, tooling, packaging materials, and any other thing(s) that relate to the previously Licensed Products as detailed within this Compliant;

- the issuance of a permanent Order of the Court preventing the Defendant from selling, marketing , and/or producing knock-off products related to the previously Licensed Products as detailed within this Compliant;

Page 2

- an awarding of compensatory damages, commensurate with interest, from Defendant to Plaintiffs from damages resultant of breach of contract and non-performance of an implied contract as detailed within this Complaint;

- an awarding of statutory damages, commensurate with interest, from Defendant to Plaintiffs for Defendant's willful and egregiously executed trademark and copyright infringements of Plaintiffs' intellectual property as detailed within this Complaint; and

- an award of attorney's fees, costs, and disbursements payable by Defendant in favor of Plaintiffs for the total expense of bringing forth this action.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

2. This action is based upon Defendant's alleged infringement of Plaintiffs' United States (US) trademarked and US copyrighted intellectual property rights.

3. In accordance with 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the entire matter pursuant to "all other claims that are so related . . . that they form part of the same case or controversy" (§ 1367(a)).

4. Alternatively, the Court has subject matter jurisdiction over the case pursuant to diversity jurisdiction under 28 U.S.C. § 1332: US Code - Section 1332: *Diversity of citizenship; amount in controversy; costs*.

5. The matter in controversy in the current instance exceeds the sum or value of $75,000, exclusive of interest and costs.

6. The action in the current instance is between citizens/corporations of different states.

7. The Court has personal jurisdiction over the parties of the case pursuant to the parties' substantial and recurring economic contacts with the State of New York.

8. In addition, the parties have consented to the application of the laws of the State of New

York pursuant to the content of the now terminated "Purchase Agreement and Amendment to License Agreement" dated May 1, 2009. (**see Exhibit B**)

9.  Furthermore, the parties have consented to the jurisdiction of the federal courts in the County of New York of the State of New York with respect to any remedies available to the parties in aid of arbitration, if so elected, pursuant to the now terminated "Purchase Agreement and Amendment to License Agreement" dated May 1, 2009.(**see Exhibit B**)

10.  Finally, the third party to the now terminated contract, namely Escrow Holder Sichenzia Ross Friedman Ference, LLP, as provided for in the said terminated contract maintains offices at 61 Broadway, 32nd Floor, New York, NY 10006.

11.  Venue is proper because the third party to the terminated contract, namely Escrow Holder Sichenzia Ross Friedman Ference, LLP, as provided for in the said terminated contract maintains offices at 61 Broadway, 32nd Floor, New York, NY 10006.

## PARTIES

12.  Plaintiff TRANSCIENCE (hereinafter and above, together with Plaintiff YOLANDA VON BRAUNHUT, "Plaintiffs") is a Maryland corporation with offices and a principle place of business located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.

13.  Plaintiff YOLANDA VON BRAUNHUT (hereinafter and above, together with Plaintiff TRANSCIENCE, "Plaintiffs") is an individual with an address located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.  YOLANDA VON BRAUNHUT is the Chief Executive Officer (CEO) and chief acting agent of TRANSCIENCE.

14.  Defendant BIG TIME TOYS, LLC (hereinafter, together with its agents acting on its behalf, "Defendant") is a Tennessee Limited Liability Company (LLC) with an office located at 708 Berry Road, Nashville, TN 37204.  **SAM HARWELL** is a resident of the State of Tennessee

and is the president and CEO of Defendant BIG TIME TOYS, LLC.

## FACTUAL ALLEGATIONS

15.  Plaintiffs are the sole and exclusive owners of methods, materials, and properties (including intellectual properties) for designing, hatching, growing, and sustaining live micro-crustaceans (*Artemia NYOS*); a hybrid brine shrimp known and sold under the United States registered trademark "Sea-Monkeys®".

16.  Plaintiffs are each owners of certain copyrights registered in the United States Copyright Office (USCO) and others unregistered.

17.  Plaintiff Yolanda von Braunhut is the copyright owner of an instruction book entitled, "It's Fun To Raise Pet Sea-Monkeys".

18.  Noted American inventor and marketer Harold von Braunhut held 196 patents for various products, many of which have become cultural icons, with the United States Patent and Trademark Office (USPTO).

19.  Harold von Braunhut invented and registered with the USPTO the brine shrimp product, initially called "Instant Life", in 1957. (**see Exhibit A; sub-exhibits A thru D**)

20.  Harold changed the name to "Sea-Monkeys®"and registered such with the USPTO in the year 1962.(**see Exhibit A; sub-exhibits A thru D**)

21.  Harold started a corporation named "Transcience" and transferred to it ownership of various products he had invented over the years.

22.  Transcience relies upon direct sales and licensing agreements relating to its Sea-Monkeys® product to account for most of its profits.

23.  The Transcience Corporation is a Maryland corporation with offices and a principle place of business located at 6200 Chapman's landing Road, Indian Head, Maryland 20640.

24.  Harold married Yolanda Signorelli (now known as: Yolanda von Braunhut) in the year 1980.

25.  Harold was the CEO of Transcience until his untimely death in 2003.

26.  Upon his death Yolanda became the CEO of Transcience.

27.  Yolanda has been the CEO of Transcience ever since.

28.  In June of the year 2007, Plaintiffs entered into a License Agreement with the Defendant Big Time Toys, LLC. (**see Exhibit A**)

29.  The 2007 License Agreement granted Defendant rights to produce, market, and sell the Sea-Monkeys® product owned by Plaintiffs.

30.  The 2007 License Agreement provided that Defendant Licensee "pay to the Licensor a royalty of ten percent (10%) of 'Gross Sales' of Licensed Products sold by Licensee to third parties". (**see Exhibit A; page 8**)

31.  The 2007 License Agreement provided that the royalty payments were due on the 10th of each month over the duration of the contract. (**see Exhibit A; page 8**)

32.  The 2007 License Agreement provided that the agreement would commence on January 1st 2008 and expire on December 31, 2012 unless otherwise terminated, renewed, or extended by terms as provided therein.

33.  The 2007 License Agreement provided that the Licensors will continue to manufacture, produce, and sell (at a controlled and reduced cost) to the Licensee the trade secret pouches upon which the Sea-Monkeys® product is based.(**see Exhibit A; paragraph pages 9-10; 16-18**).

34.  The 2007 License Agreement provided that Licensee would pay to Licensor a supplemental laboratory fee of $750 per week for "Laboratory and Research Facility

Maintenance". (**see Exhibit A; paragraph 10A; page 17**)

35.  The 2007 License Agreement provided that the Licensees would procure and otherwise produce other parts of the final Licensed Product, including but not limited to the water tank and packaging materials, from outside sources.

36.  The 2007 License Agreement gave Defendant Licensee the right to purchase the entire Licensed Product "for an amount not to exceed 10 million dollars". (**see Exhibit A; paragraph 17**)

37.  The 2007 License Agreement provided that the 10 million dollar purchase price would be realized in 2 segments; namely an initial lump sum 5 million dollar payment followed by an application of a 5% royalty payment per year from merchandising sales (and a per year percentage of entertainment related revenue) from that point thereafter until the remaining 5 million dollar sum was attained.

38.  The 2007 License Agreement provided that after realization of the first 5 million dollars of the 10 million dollar purchase amount that the Licensor would turn over to Licensee the production/manufacture of the pouches, including but not limited to the trade secrets, upon which the Sea-Monkeys® product is based. (**see Exhibit A; page 23**)

39.  The 2007 License Agreement provided that the "agreement shall be governed by the laws of the State of New York." (**see Exhibit A; page 26; paragraph 21**)

40.  In May of the year 2009 Plaintiffs and Defendant modified their existing agreement as evidenced by "Purchase Agreement and Amendment to License Agreement".(**see Exhibit B**)

41.  The 2009 Amendment Agreement modified the 2007 License Agreement only where expressly indicated leaving those provisions not expressly indicated intact. (**see Exhibit B; Section 5; page 12**)

42.  The 2009 Amendment Agreement provided that the supplemental laboratory fee payable to Licensor by Licensee for "Laboratory and Research Facility Maintenance" would be reduced to $375 per week. (**see Exhibit B; page 15 [f]**)

43.  The 2009 Amendment Agreement provided that Defendant Licensee "pay to the Licensor a royalty of twenty percent (20%) of 'Gross Sales' of Licensed Products sold by Licensee to third parties" (**see Exhibit B; pages & 4**).

44.  The 2009 Amendment Agreement expressly provided that the royalty payments would be applied directly to the "Initial Purchase Price" to realize the first 5 million dollars of the 10 million dollar purchase price. (**see Exhibit B; pages 3 & 4**).

45.  The 2009 Amendment Agreement "expressly agreed that all such (royalty) payments due on and after the Effective Date shall be applied to the payment of the Purchase Price." (**see Exhibit B; page 4**).

46.  Furthermore, the 2009 Amendment Agreement expressly provided that the "Initial Purchase Price" of 5 million dollars "shall be paid as follows:  (i) $500,000 shall be paid upon execution of this Agreement" and "(ii) $4,500,000 shall be paid in the form of royalties payable under the License Agreement." (**see Exhibit B; page 3; Section 2.2. <u>Purchase Price</u> (a) (i) & (ii)**)

47.  Plaintiffs note that 500,000 + 4,500,000 equals the sum of 5,000,000.

48.  Plaintiffs/Licensors and Defendant Licensee performed in accordance with their agreement without further occurrence until December of the year 2012.

49.  A few days before the day when the royalty payments were due on December 10th 2012 Defendant, through its agents, called Plaintiffs and informed Plaintiffs of Defendant's intention to NOT provide the royalty payment on the December 10th due date.

50.   Defendant indicated to Plaintiffs at that time an intention to breach the agreement.

51.   Defendant did NOT provide the royalty payment on December 10th 2012 as agreed to by the parties in the 2007 License Agreement and 2009 Amendment Agreement.

52.   Defendant ceased to make laboratory fee payments on or about December 10th 2012.

53.   The 2009 Amendment Agreement, namely *Section 2.4.(a)* Remedies for BTT failure to Pay Royalties (**see Exhibit B; page 6**), provided that, in the event of a failure to make a royalty payment that the Licensee shall have 15 days from the date of receipt of notice of failure to make a royalty payment to cure any such default.

54.   Plaintiff sent notice to Defendant of the failure of Defendant to make a royalty payment in the form of a letter entitled "NOTICE OF DEFAULT" sent to the main offices of Defendant on December 20, 2012. (**see Exhibit C**)

55.   Plaintiff effectively declared,[1] 15 days after the receipt of the "NOTICE OF DEFAULT" by Defendant without cure of the default, the 2009 Amendment Agreement and the 2007 License Agreement "null and void and of no further force of effect" in a letter sent to the Defendant dated January 18, 2013. (**see Exhibit D**)

56.   Defendant, through its agents, in a letter dated January 22, 2013 sent to Plaintiffs' counsel facetiously, ludicrously, and in demonstration of bad faith put forth an unfounded notion that the pouch payments for the purchase of the Sea-Monkeys® pouches should be counted toward the realization of the first 5 million dollars or "Initial Purchase Price" of the 10 million dollar total purchase price of Sea-Monkeys® Properties. (**see Exhibit E**)

57.   Such a notion is nowhere to be found or can be held to be anywhere implied in either the 2007 License Agreement or the 2009 Amendment to License Agreement.

---

[1] The declaration of termination is consistent with *Section 2.4.(a)(i)* of the 2009 Amendment Agreement. (**see Exhibit B; page 6**)

58.  Such an unfounded notion is a delaying tactic and is fraught with malice.

59.  If such a notion is sustained, echoed, or in any way continues to be maintained by Defendant Plaintiffs reserve the right to amend this Complaint with the insertion of an action for tortious interference of contract replete with a demand for substantial punitive damages and sanctions.

60.  The phrase "all such payments" in the last line of Section 2.2(a) of the 2009 Amendment Agreement clearly and without question or reasonable doubt refers to all such royalty payments, and no other payment, being now (relative to the initial 2007 License Agreement) applicable to the realization of the 5 million dollar "Initial Purchase Price". (**see Exhibit B; page 4**)

61.  Plaintiffs allege that, during this time, Defendant, through its agents, attempted to persuade Plaintiffs to accept a lower purchase price for the sale of "Sea-Monkeys® Properties".

62.  Plaintiffs did NOT agree to accept a lower purchase price for the sale of "Sea-Monkeys® Properties".

63.  Plaintiffs effectively reconfirmed the declaration of termination of the 2009 Amendment Agreement and the 2007 License Agreement in a letter sent to the Defendant dated January 29,2013. (**see Exhibit F**)

64.  Plaintiffs sent further correspondence to Defendant in attempts to resolve the issues in as civil a manner as possible and avoid the need for unnecessary and frivolous litigation. (**see Exhibit G**)

65.  Plaintiffs allege that Defendant, through its agents, responded in a nonsensical, unrealized, trite, trivial, malicious, and dismissive way. (**see Exhibit H**)

66.  Plaintiffs allege that Defendant further responded by threatening to initiate litigation

against Plaintiffs should Plaintiffs attempt to enter into agreement(s) with third parties to license the Sea-Monkeys® product to anyone else.

67.  Plaintiffs allege that Defendant did not initiate legal process of any sort against Plaintiffs between December 10th of the year 2012 and the time of filing of this Complaint.

68.  In the current instance Plaintiffs do NOT seek the Court to adjudicate the issue of whether or not there was a breach of contract by the Defendant.

69.  Uncontroverted *prima facie* evidence of breach of the 2009 Amendment Agreement and the 2007 License Agreement by Defendant is detailed within this Complaint.

70.  The contract between Plaintiffs and the Defendant was effectively terminated upon Plaintiffs declaration of such after Defendant's failure to cure the default after receiving proper notice of default. (**see Exhibit B; page 6; see also Exhibits D & F**)

71.  Pursuant to *Section 2.4.(a)*Remedies for BTT failure to Pay Royalties of the 2009 Amended Agreement the remedies for failure to pay the royalty after notice of default and failure to cure default provide, among other things, that Plaintiffs be entitled to:  1) declare the agreement terminated with "no further force or effect", 2) "commence an action for equitable relief, including but not limited to, injunctive relief prohibiting any continued use of the Licensed Trademarks and Licensed Copyrights", 3) require that Defendants "immediately cease selling, marketing, or producing the Licensed Products and Sea-Monkeys® Properties", and finally, 4) that "any rights granted" under the contract to Defendant be "deemed null and void". (**see Exhibit B; pages 6 & 7**)

72.  Defendant, all throughout the days between January 18, 2013 and the date of September 10th 2013, prominently featured the Sea-Monkeys® product on the homepage of the *Big Time Toys* website located at http://www.bigtimetoys.com/ without right, permission or

authorization to do so. (**see Exhibits K, L, M &N**)

73.  Plaintiffs allege that Defendant continues to prominently feature the Sea-Monkeys® product on the homepage of the *Big Time Toys* website without right, permission or authorization to do so.

74.  Plaintiffs have been directly harmed by Defendant's interference with Plaintiffs' ability to generate profits from the Sea-Monkeys® product.

75.  Plaintiffs now seek the Court's assistance:  1) to recover damages resultant from Defendant's past, ongoing, and continuing unauthorized use of Sea-Monkeys® Properties and 2) to prevent further future harm to the Plaintiffs at the hands of the Defendant.

**COUNT ONE**
**DAMAGES SUSTAINED FROM DEFENDANT'S BREACH OF CONTRACT**

76.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

77.  Plaintiffs maintain that a valid contract existed between the parties as evidenced from the 2007 License Agreement and the 2009 Amendment to License Agreement (**see Exhibits A&B**).

78.  Defendant failed to produce the royalty payment due on December 10th 2012.

79.  Defendant breached the contract with Plaintiffs when it failed to correct the default within 15 days after receipt of notice of default.

80.  Plaintiffs were in compliance with the terms of the agreement between the parties over the lifespan of the now terminated agreement.

81.  Defendant has NOT produced a single royalty payment to the Plaintiffs since November of 2012.

82.  Defendant has NOT made a single laboratory fee payment since Defendant's breach

of contract in December of 2012.

83. Plaintiffs declared the agreement between the parties "null and void with no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. (**see Exhibit D; page 6; and Exhibits D & F**)

84. Defendant continues to receive benefits from continuing and ongoing unauthorized sales of the Sea-Monkeys® product.

85. As a result of the aforementioned breach of contract Plaintiffs have suffered damages resultant from Defendant's failure to produce the royalty payments and the supplemental laboratory fee payment as provided for in the 2009 Amendment to License Agreement.

86. The 2009 Amendment to License Agreement provided that Defendant pay a royalty of 20% of Gross sales of monies generated from sale to third parties of the previously licensed Sea-Monkeys® product.

87. The 2009 Amendment to License Agreement provided a forecast of approximately $3,750,000 Gross sales per year of the Sea-Monkeys product and based upon that figure provided a minimum royalty payment payable by Defendant to Plaintiffs of $750,000 per year (payable in quantities of $62,500 per month). (**see Exhibit B; page 4 & 5**)

88. Compensatory damages in the State of New York "place the non-breaching party in as good a position as it would have been had the contract been performed." *Brushton-Moira Cent. School Dist. v. Fred H. Thomas Assocs., P.C.,* 91 N.Y.2d 256, 261, 692 N.E.2d 551, 669 N.Y.S.2d 520 (N.Y. 1998).

89. Damages are based on the accrual date of Plaintiffs' cause of action (*Rodriguez v Moore-McCormack Lines*, 32 NY2d 425, *supra*; *Simon v Electrospace Corp.*, 28 NY2d 136, *supra*).

90.  Plaintiffs note that interest is awarded pursuant to statutory mandate; most notably CPLR 5001(a) providing that interest shall be recovered upon a sum awarded for a breach of contract and CPLR 5001(b) mandating that "interest shall be computed from the earliest date the cause of action existed". (**see Exhibit I**)

91.  As a result of the breach of contract, as described above, Plaintiffs have suffered money damages for royalty payments NOT PAID in the amount of $62,500.00 per month for each and every month (due on the tenth of each month) since Defendant's first failure to produce the royalty payment due on December 10th 2012.

92.  As a result of Defendant's breach of contract, as described above, Plaintiffs have suffered money damages for unpaid supplemental laboratory fee payments in the amount of $375.00 per week for each and every week since Defendant's first failure to pay this fee on or about December 10th 2012.

93.  As a result Defendant's breach of contract, as described above, Plaintiffs continue to suffer money damages for royalty payments NOT paid in the amount $62,500.00 for each and every future month that goes by from the date of this Complaint forward; all resultant from Defendant's failure to produce the royalty payment due on the 10th of each month as specified in the original breached agreement.

## COUNT TWO
## DAMAGES SUSTAINED FROM DEFENDANT'S
## NON-PERFORMANCE OF IMPLIED CONTRACT

94.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

95.  Plaintiffs maintain that a valid express contract existed between the parties as evidenced from the 2007 License Agreement and the 2009 Amendment to License Agreement

(**see Exhibits A & B**).

96.  Defendant failed to pay Plaintiffs the royalty payment due on December 10th 2012.

97.  Defendant breached the express contract with Plaintiffs when it failed to correct the default within 15 days after receipt of notice of default. (**see Exhibits C, D & F**)

98.  Plaintiffs were in compliance with the terms of the express agreement between the parties over the lifespan of the now terminated agreement.

99.  Defendant has NOT produced a single royalty payment to the Plaintiffs since November of 2012.

100.  Defendant has NOT made a single laboratory fee payment since Defendant's breach of the express agreement in December of 2012.

101.  Plaintiffs declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. (**see Exhibits D& F**)

102.  Defendant continues to receive benefits from continuing and ongoing unauthorized sales of the Sea-Monkeys® product.

103.  Plaintiffs contend that an implied contract came into existence by default after Defendant's willful termination of the agreement previously entered into by the parties.

104.  Plaintiffs argue that past, ongoing, and future unjust enrichments by Defendant at the expense of Plaintiffs necessitate the imposition of an implied contract between the parties.

105.  Plaintiffs have no desire to reform or otherwise reenter into any contractual relationship with Defendant outside the temporal implied contract that Plaintiffs contend came into being by default upon Defendant's breach of the original express agreement.

106.  Plaintiffs contend that the implied contract now in place by default serves only to

compensate the Plaintiffs for use of Plaintiffs' valuable intellectual property and for no other reason.

107.  Plaintiffs note that the implied contract now in place by default does not in any way provide for the sale of Sea-Monkeys® Properties to Defendant.

108.  Plaintiffs note that Defendant's willful failure to cure the breach of contract and subsequent visitation of hardship upon the Plaintiffs, as described with particularity throughout this Complaint, has terminated the possibility of sale of Sea-Monkeys® Properties to Defendant.

109.  The 2009 Amendment to License Agreement provided that Defendant pay a royalty of 20% of Gross sales of monies generated from sale to third parties of the previously licensed Sea-Monkeys® product.

110.  The 2009 Amendment to License Agreement provided a forecast of approximately $3,750,000 Gross sales per year of the Sea-Monkeys product and based upon that figure provided a minimum royalty payment payable by Defendant to Plaintiffs of $750,000 per year (payable in quantities of $62,500 per month). (**see Exhibit B; page 4 & 5**)

111.  Damages are intended to place the non-breaching party in as good a position as it would have been had the contract been performed (*see, e.g., Goldstein Corp v City of New York*, 80 NY2d 366, 373).

112.  Damages are based on the accrual date of Plaintiffs' cause of action (*Rodriguez v Moore-McCormack Lines*, 32 NY2d 425, *supra*; *Simon v Electrospace Corp.*, 28 NY2d 136, *supra*).

113.  Plaintiffs note that interest is awarded pursuant to statutory mandate; most notably CPLR 5001(a) providing that interest shall be recovered upon a sum awarded for a breach of contract and CPLR 5001(b) mandating that "interest shall be computed from the earliest date the

cause of action existed". (**see Exhibit I**)

114.  As a result of Defendant's non-performance of the implied contract, as described above, Plaintiffs have suffered money damages for royalty payments NOT paid in the amount $62,500.00 per month for each and every month (on the tenth of each month) since the Defendant's first failure to produce the royalty payment due on December 10th 2012.

115.  As a result of Defendant's non-performance of the implied contract, as described above, Plaintiffs have suffered money damages for missed supplemental laboratory fee payments in an amount of either $375.00 or $750.00 per week, dependent upon the measure of damages, for each and every week since Defendant's first failure to pay this fee on or about December 10th 2012.

116.  As a result Defendant's non-performance of the implied contract, as described above, Plaintiffs continue to suffer money damages for royalty payments NOT paid in the amount $62,500.00 for each and every future month that goes by from the date of this Complaint forward; all resultant from Defendant's failure to produce the royalty payment due on the 10th of each month as specified in the terminated agreement and resurrected in the implied contract.

## COUNT THREE
## DEFENDANT'S UNJUST ENRICHMENT
## FROM NON-PERFORMANCE OF IMPLIED CONTRACT

117.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

118.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

119.  Defendant has been unjustly enriched by its continuing and ongoing unauthorized sales of the previously licensed Sea-Monkeys® product.

120.  Defendant was enriched at the expense of the Plaintiffs:  1) by minimally denying Plaintiffs the previous entitlement to 20% of the gross sales of the previously licensed Sea-Monkeys® product and 2) by maximally preventing and/or interfering with Plaintiffs' right to generate sales on Plaintiffs' own accord from sales or license agreements of the Sea-Monkeys® product to third parties.

121.  Defendant's non-performance, non-accountability, delay, obstruction, and inability to account for the profits generated from past and continuing sales of the previously licensed Sea-Monkeys® product is inherently unjust.

122.  Defendant has no good faith basis or defense to justify or otherwise excuse their past and ongoing enrichment at the expense of the Plaintiffs.

123.  Defendant has no good faith basis or defense for its continuing, corruptible posture.

124.  Plaintiffs seek both remedies at law and remedies in equity for Plaintiffs unjust enrichment as stated throughout this Complaint in the form of:  1) money damages for monies that have otherwise been diverted from the Plaintiffs and 2) equitable relief in the form of injunctions that will prevent Defendant from visiting continuing future harm upon the Plaintiffs.

125.  As a result of Defendant's unjust enrichment, as described above, Plaintiffs have suffered substantial financial damages by the self-serving actions of the Defendant and will continue to suffer ongoing recurring future damages if Defendant is not otherwise prevented from doing so.

## COUNT FOUR
## CONVERSION

126.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

127.  Plaintiffs have clear and unequivocal title to the intellectual property that formed

the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (**see Exhibit A; sub-exhibits A thru D**)

128.   Defendant has exercised and continues to exercise control over the Plaintiffs intellectual property in a manner that is inconsistent with the Plaintiff's exclusive right of possession.

129.   Defendant has violated or otherwise interfered with Plaintiffs' dominion relative to Plaintiffs' intellectual property.

130.   Defendant continues to violate or otherwise interfere with Plaintiffs' dominion relative to Plaintiffs' intellectual property.

131.   Defendant, between the dates of January 18, 2013 and September 10th 2013 and presumably thereafter, identified/identifies the trademarked Sea-Monkeys® product as one of "***Our Home Run Toys***" on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibit M**)

132.   Defendant, as demonstrated by its continuing undisputed lack of compensatory providence, has made an unauthorized assumption of the right to possession or ownership of the Sea-Monkeys® Properties.

133.   Defendant has failed to compensate Plaintiffs for Defendant's past and ongoing unauthorized use of the previously licensed Sea-Monkeys® product.

134.   Defendant has wrongfully taken possession of monies to which it is not entitled to in obviation of and with complete disrespect and disregard of Plaintiff's intellectual property rights.

135.   Defendant continues to wrongfully take possession of monies to which it is not entitled to in obviation and with complete disrespect and disregard of Plaintiff's intellectual

property rights.

136.  Defendant has made an unauthorized assumption of the right to possession or ownership of monies to which Plaintiffs have sole and exclusive claim.

137.  As a result of the conversion, as described above, Defendant has converted property and continues to convert property into property of its own to which Plaintiffs alone have sole and exclusive claim.

<u>COUNT FIVE</u>
<u>TRADEMARK INFRINGEMENT</u>

138.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

139.  Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (**see Exhibit A; sub-exhibits A thru D**)

140.  Plaintiffs declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 18th of the year 2013. (**see Exhibits D & F**)

141.  Plaintiffs own *all* trademarks for the Sea-Monkeys® product. (**see Exhibit A; sub-exhibits A thru D**)

142.  All of Plaintiffs' trademarks for the Sea-Monkeys® product are registered with the United States Trademark and Patent Office (USPTO). (**see Exhibit A; sub-exhibits A thru D**)

143.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

144.  Defendant, between the dates of January 18, 2013 and September 10th 2013 and presumably thereafter, prominently featured/features the trademarked Sea-Monkeys® product on

the *Big Time Toys* website located at http://www.bigtimetoys.com/.(**see Exhibits K, L, M, & N**)

145.  Defendant, between the dates of January 18, 2013 and September 10th 2013 and presumably thereafter, identified/identifies the trademarked Sea-Monkeys® product as one of "***Our Home Run Toys***" on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibit M**)

146.  Defendant has presented and continues to present to the world an assumed right and/or authorization to sell the trademarked Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K & M**).

147.  Defendant has received and continues to receive benefits from continuing and ongoing unauthorized sales of Plaintiffs trademarked Sea-Monkeys® product.

148.  Defendant has made no attempt to compensate Plaintiffs for their past and ongoing unauthorized use of Plaintiffs trademarked Sea-Monkeys® product.

149.  Defendant willfully continues to profit from its unauthorized use of Plaintiffs trademarked Sea-Monkeys® product.

150.  Defendant's profits come at the expense of Plaintiffs and precipitate harm upon the Plaintiffs.

151.  Defendant on its website represents to its partners/retailers that it has authorization to sell the trademarked Sea-Monkeys® product. (**see Exhibits K, M, & N**)

152.  Defendant's representation of authorization to sell the trademarked Sea-Monkeys® product on Defendant's web site has interfered with Plaintiffs ability to enter into 3rd party contractual relationships to profit from its Sea-Monkeys® product.

153.  The Lanham Act; enacted July 6, 1946, codified at 15 U.S.C. § 1051 et seq. (15 U.S.C. ch. 22; provides remedies that can be sought when a trademark is infringed in Subchapter

III, Sections 42 and 43.

154.  These provisions are codified in 15 USC §1117; "Recovery for violation of rights; profits, damages and costs; attorney fees; treble damages". (**see Exhibit J**)

155.  Plaintiffs elect to be compensated (determinable at trial) by the greater of actual damages, defining compensatory damages as all profits Defendant unrightfully obtained, or statutory damages as provided for by the Lanham Act and/or other laws of the USA.

156.  As a result of the trademark infringement, as described above, Defendant has profited and continues to profit from intellectual property to which Defendant has no claim.

<u>**COUNT SIX**</u>
<u>**COPYRIGHT INFRINGEMENT**</u>

157.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

158.  Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (**see Exhibit A; sub-exhibits A thru D**)

159.  Plaintiffs declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 18th of the year 2013. (**see Exhibits D & F**)

160.  Plaintiffs own *all* copyrights for the Sea-Monkeys® product. (**see Exhibit A; sub-exhibits A thru D**)

161.  All of Plaintiffs' copyrights for the Sea-Monkeys® product are registered with the United States Copyright Office (USCO). (**see Exhibit A; sub-exhibits A thru D**)

162.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

163.  Defendant, between the dates of January 18, 2013 and September 10th 2013 and presumably thereafter, prominently featured/features the copyrighted Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K, L, M, & N**)

164.  Defendant, between the dates of January 18, 2013 and September 10th 2013 and presumably thereafter, identified/identifies the copyrighted Sea-Monkeys® product as one of "***Our Home Run Toys***" on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibit M**)

165.  Defendant has presented and continues to present to the world an assumed right and/or authorization to sell the copyrighted Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K & M**).

166.  Defendant has received and continues to receive benefits from continuing and ongoing unauthorized sales of Plaintiffs copyrighted Sea-Monkeys® product.

167.  Defendant has made no attempt to compensate Plaintiffs for their past and ongoing unauthorized use of Plaintiffs copyrighted Sea-Monkeys® product.

168.  Defendant willfully continues to profit from its unauthorized use of Plaintiffs copyrighted Sea-Monkeys® product.

169.  Defendant's profits come at the expense of Plaintiffs and precipitate harm upon the Plaintiffs.

170.  Defendant on its website represents to its partners/retailers that it has authorization to sell the copyrighted Sea-Monkeys® product. (**see Exhibits K, M, & N**)

171.  Defendant's representation of authorization to sell the copyrighted Sea-Monkeys® product on Defendant's web site has interfered with Plaintiffs ability to enter into 3rd party contractual relationships to profit from its product.

172.  Exclusive rights in copyrighted works are defined and remedies for infringement are contained in Chapters 1 and 5 of Title 17 of the *United States Code* (USC). (**see Exhibit O**)

173.  Chapter 5 section 501 of Title 17 of the USC provides for an action of *Infringement of Copyright;* 17 USC § 501. (**see Exhibit P**)

174.  Plaintiffs assert that the copyrighted Sea-Monkeys® product is a protected work, that the Defendant copied the protected work, and that such copying of the protected work was an infringement of Plaintiffs copyright.

175.  Chapter 5 section 504 of Title 17 of the USC provides for remedies for copyright infringement; 17 USC § 504. (**see Exhibit Q**)

176.  Plaintiffs will elect to be compensated (before final judgment of the matter) by either actual damages, defining compensatory damages as all profits Defendant unrightfully obtained, or statutory damages as provided for by US Copyright Law.

177.  As a result of the copyright infringement, as described above, Defendant has profited and continues to profit from intellectual property to which Defendant has no claim.

## DEMAND FOR EQUITABLE RELIEF

WHEREFORE, the Plaintiff respectfully requests the following equitable relief:

(1) The issuance of an injunction by the Court prohibiting any continued use of the Licensed Trademarks or Licensed Copyrights as provided for in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(2) The issuance of an Order of the Court requiring that the Defendants immediately cease selling, marketing , and/or producing any of the Licensed Products, including but not limited to Sea-Monkeys® Properties, as provided for in the now terminated 2007

"License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(3) The issuance of an Order of the Court requiring that the Defendant immediately return to Plaintiffs any and all unsold product, packets, tooling, packaging materials, and any other thing related to the previously Licensed Products as provided for in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(4) The issuance of a permanent Order of the Court prohibiting the Defendant from selling, marketing , and/or producing knock-off products related to the previously Licensed Products as defined in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(5) Assessing against the Defendant punitive damages, in favor of Plaintiffs, to punish Defendant for their egregious behavior and uncivil tortious actions which necessitated the bringing of this lawsuit;

(6) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR RELIEF AT LAW</u>

WHEREFORE, in addition to the above stated equitable relief, the Plaintiff respectfully requests the following relief at law:

(1) Awarding the Plaintiffs the greater of 1) compensatory damages for royalty payments NOT paid in the amount of SIXTY TWO THOUSAND FIVE HUNDRED DOLLARS ($62,500.00 USD) multiplied by the number of months that minimum royalty payments have NOT been paid (beginning on December 10th 2012)[2] **OR** 2) compensatory

---

[2] The amount past due, using the minimum royalty payment as the measure of damages, as of September 10th 2013 is exactly SIX HUNDRED AND TWENTY FIVE THOUSAND DOLLARS (**$625,000.**00 USD).  On October 10th 2013

damages  equaling 20% of Gross sales of monies generated from sale to third parties of the previously licensed Sea-Monkeys® product for the period that royalty payments have NOT been paid (beginning on December 10th 2012); for amounts past due pursuant to the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(2) Awarding the Plaintiffs compensatory damages for supplemental laboratory fees NOT paid in the amount of SEVEN HUNDRED AND FIFTY DOLLARS ($750.00 USD) multiplied by the number of weeks that supplemental laboratory fees have NOT been paid (beginning on December 10th 2012)[3] for amounts past due pursuant to the now terminated 2007 "License Agreement";

(3) Awarding the Plaintiffs interest thereupon due, in accordance with amounts due relative to the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(4) Awarding the Plaintiffs statutory damages, commensurate with interest, for Defendant's willful and egregiously executed trademark and copyright infringements of Plaintiffs' intellectual property; and

(5) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury on all issues triable of right by jury.

---

and on the tenth of every month thereafter this amount will increase incrementally by SIXTY TWO THOUSAND FIVE HUNDRED DOLLARS (**$62,500**.00 USD).

[3] The amount past due as of September 6th 2013 is exactly TWENTY NINE THOUSAND AND TWO HUNDRED AND FIFTY DOLLARS (**$29,250**.00 USD).  Every week thereafter, from 9-6-13 forward, this amount will increase incrementally by SEVEN HUNDRED AND FIFTY DOLLARS (**$750**.00 USD).

Respectfully Submitted,


By: _____
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
 (631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE &YOLANDA VON BRAUNHUT

Dated:  September 10, 2013

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
                                                             :
TRANSCIENCE &                                                :
YOLANDA VON BRAUNHUT (individual)                            :
                                        Plaintiffs           :        Index No.:
                                                             :
                                                             :
             -against-                                       :
                                                             :        **VERIFIED COMPLAINT**
                                                             :
                                                             :
BIG TIME TOYS, LLC                                           :
                                        Defendant.           :
------------------------------------------------------------ x

**VERIFICATION PAGE**

**YOLANDA VON BRAUNHUT**, being duly sworn, deposes and says:

I am the acting agent of Plaintiff TRANSCIENCE and am the individual named as a Plaintiff in the above-entitled action.  I have read the foregoing **Verified Complaint** and know the contents thereof.  The contents of such are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _10th_ day of _SEPTEMBER_, 2013,

at _BRYAN'S ROAD, MD. 20616_

_Yolanda von Braunhut_                          _9/10/13_
Yolanda von Braunhut                                Date

                        Sworn to before me this _10th_

            _____ day of _SEPTEMBER_, 2013

_Gloria M. Davies_ NOTARY
GLORIA M. DAVIES
COMMISSION EXPIRES 5-8-2016