UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

TRANSCIENCE CORPORATION      )    Civil Action No. 13 CV 6642
YOLANDA VON BRAUNHUT           )
(individual),                    )

          Plaintiffs,    )

-against-                 )

                           )

BIG TIME TOYS, LLC,            )

          Defendant.     )

------------------------------------------------------------x

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

---

Of Counsel and on the Brief:

     John A. Stone, Esq.

1650756-2

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................ii

INTRODUCTORY STATEMENT ......................................1

  The Amended Complaint.......................................1
  A Factual Overview.........................................2
  Plaintiff's Amended Complaint Should Be Dismissed...........6

LEGAL ARGUMENT .............................................7

POINT I

COUNT ONE (DAMAGES SUSTAINED FROM DEFENDANT'S BREACH OF
CONTRACT) SHOULD BE DISMISSED ...............................7

POINT II

COUNT TWO (DAMAGES SUSTAINED FROM DEFENDANT'S
NON-PERFORMANCE OF IMPLIED CONTRACT), COUNT THREE
(DEFENDANT'S UNJUST ENRICHMENT FROM QUASI CONTRACT),
AND COUNT SEVEN (BREACH OF IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING) SHOULD BE DISMISSED ..................9

POINT III

COUNT FOUR (CONVERSION) SHOULD BE DISMISSED .................13

POINT IV

COUNTS FIVE (TRADEMARK INFRINGEMENT) AND SIX (COPYRIGHT
INFRINGEMENT) SHOULD BE DISMISSED ..........................14

POINT V

COUNT EIGHT (TORTIOUS INTERFERENCE WITH CONTRACT AND/
OR BUSINESS RELATIONSHIPS) SHOULD BE DISMISSED ..............15

CONCLUSION ................................................17

## TABLE OF AUTHORITIES

**Page**

### Cases

Ainbinder v Money Center Financial Group,
    2013 WL 1335997 (E.D.N.Y. 2013) ............................... 14

Bentley v. Dennison,
    852 F.Supp.2d 379 (S.D.N.Y. 2012) ............................. 2

Board of Education, East Meadow Union Free School District,
    530 F.Supp. 1130 (E.D.N.Y. 1982) ............................. 12

Canal+ U.K., Ltd. v Lutvak,
    773 F.Supp.2d 419 (S.D.N.Y. 2011) ............................ 3

De La Cruz v. Caddell Dry Dock & Repair Co., Inc.,
    22 A.D.3d 404 (A.D. 1st Dept 2005) ........................... 9

Ellis Enterprises Inc. v. Software Packaging Associates, Inc.,
    155 Fed. Appx. 405 (10th Cir. 2005) ....................... 7, 11

Fezzani v. Bear Stearns & Company, Inc.,,
    398 F.Supp.2d. 618 (S.D.N.Y. 2004) .......................... 8

Foster v. Churchill,
    665 N.E.2d 153 (N.Y. 1996) .................................. 15

Harris v. Provident Life & Accident Ins. Co.,
    310 F.3d 73 (2d Cir. 2002) .................................. 10

Hinterberger v. Catholic Health Sys., Inc.,
    536 Fed. Appx. 14 (2d Cir. 2013) ............................. 9

Jacob v. Kimberley-Clark Corp.,
    2006 WL 1582149 (E.D.N.Y. 2006) ............................. 17

Nadel v. Play by Play,
    208 F.3d 368 ................................................ 15

New York Cent. R. Co., v State,
    273 N.Y.S. 891 (N.Y. Ct. of Claims 1934) ................... 12

North Alaska Housing Corporation v. United States,
   76 Fed. Cl. 158 (2007) ........................................13

Ozbakir v Scotti,
   764 F.Supp.2d. 556 (W.D.N.Y. 2011)...........................13

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
   602 F.3d 57 (2d Cir. 2010) ....................................2

Purgess v. Sharrock,
   33 F.3d 134 (2d Cir.1994) ....................................15

Robledo v. Bond No. 9,,
   ____ F.Supp.2d. ____ (S.D.N.Y. 2013)..........................2

White Plains Coat & Apron Co., Inc. v. Cintas Corp.,
   8 N.Y.3d 422 (2007)..........................................15

Zeigler v. State of New York,
   948 F.Supp.2d 271 (N.D.N.Y. 2013)............................8

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .................1, 2, 7

## INTRODUCTORY STATEMENT

Defendant Big Time Toys, LLC seeks dismissal of plaintiffs Transcience Corporation's and Yolanda von Braunhut's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state claims on which relief may be granted.

## The Amended Complaint

On September 19, 2013, plaintiffs filed a Verified Complaint in this matter.   On December 13, 2013, plaintiffs filed an Amended Complaint.

Count One of the Amended Complaint, entitled "Damages Sustained from Defendant's Breach of Contract," asks the Court to award breach-of-contract damages by "acknowledg[ing]", but without *"adjudicat[ing]*, the issue of whether or not there was a breach of contract by the Defendant." Count One also fails to allege an essential element of a breach of contract claim. Therefore, Count One should be dismissed.

An adjudication of breach of contract, and valid termination, are the "lynchpin" to the remaining seven Counts in the Amended Complaint.   Absent such an adjudication, those contracts, and defendant's rights to the Sea-Monkeys properties, continue.   Consequently, all remaining Counts must fall. Moreover, the remaining Counts flow from, and are insufficiently

1

distinct from, plaintiffs' contract claims and must be dismissed for that reason.

Counts Four (Conversion), Five (Trademark Infringement) and Six (Copyright Infringement) each assert non-contract causes of action based on the same facts that are governed by the contracts. Therefore, all of those Counts are barred by the economic loss doctrine and must be dismissed. Count Eight (Tortious Interference with Contract and/or Business Relationships) fails to specify a single contract, economic relationship, or third party that defendant interfered with. Count Eight should be dismissed.

## A Factual Overview[1]

---

[1] A brief factual overview is provided to assist the Court in understanding the relationships among the parties and the nature of the dispute. Defendant moves for dismissal of the Amended Complaint solely pursuant to Federal Rule of Civil Procedure 12(b)(6) and respectfully submits that the parties' contractual documents and pleadings may be considered by this Court without converting this application to a Motion for Summary Judgment. Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint"); Robledo v. Bond No. 9, ___ F.Supp.2d. ___ (S.D.N.Y. 2013) (In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference"); Bentley v. Dennison, 852 F.Supp.2d 379, 382 n. 5 (S.D.N.Y. 2012) ("Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned"); Canal+ U.K., Ltd. v Lutvak, 773 F.Supp.2d 419, 427 (S.D.N.Y. 2011) ("where the claim is

On June 26, 2007, plaintiffs, as licensors, and defendant, as licensee, entered into a "License Agreement" granting defendant exclusive worldwide rights to "Sea-Monkeys" products and an option to purchase all such rights. (Original Complaint, Ex. A). "Sea-Monkeys" are brine shrimp, hatched from eggs in a small aquarium tank, and sold as a toy/novelty item. The Sea-Monkeys product (or "kit") contains two principal components; (i) a small plastic tank and related paraphernalia manufactured at defendant's direction in China; and (ii) a set of three "pouches" (each slightly larger than a sugar packet), containing eggs, which plaintiffs manufacture/package in the U.S. Pouches are shipped from the U.S. to China, where they are inserted into the kits and shipped to various countries for sale. Defendant's principal U.S. customers for Sea-Monkeys are major mass retailers.

Effective May 1, 2009, the parties amended the License Agreement by entering into a "Purchase Agreement and Amendment to License Agreement" ("Purchase Agreement"). (Original Complaint, Ex. B). Section 2.1 of the Purchase Agreement provides:

> [defendant] hereby exercises the [purchase option] . .
> . [defendant] hereby purchases from [plaintiffs] all

for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim").

1650756-2                              3

right, title and interest, free of all liens, claims
and encumbrances, in and to any and all of the Sea-
Monkeys® Properties and Licensed Products, including
Sea-Monkeys®, related assets and the goodwill of the
business associated therewith, in exchange for the
Purchase Price . . .

Defendant is the beneficial and equitable owner (but not
title holder) of all Sea-Monkeys properties.  Defendant pays the
Purchase Price over time in the form of periodic payments.
Fully executed, but undated, assignments of title to all of the
Sea-Monkeys properties are held in escrow.  (Original Complaint,
Ex. B, Sec. 3.2).  Once defendant's payments total $5,000,000,
titles are required to be released by the escrow agent to
defendant[2].

---

[2]  Briefly, Section 2.2 of the Purchase Agreement provides:

   Purchase Price.  The total purchase price for the
   Licensed Property shall be $10,000,000, payable as follows
   (the "Purchase Price"):

   (a) Initial Purchase Price.  Five Million Dollars
   ($5,000,000) of the Purchase Price (the "Initial Purchase
   Price") shall be paid as follows:

   (i) $500,000 shall be paid upon execution of this
   Agreement . . . , and

   (ii) $4,500,000 shall be paid in the form of royalties
   payable under the License Agreement, except that . . . the
   Minimum Royalty under Section 4.B. of the License Agreement
   shall be $750,000 . . . payable in twelve (12) equal
   monthly installments on or before the tenth (10th) day of
   each month . . . .

   **All payments hereunder and under the License Agreement,
   including the Minimum Royalty,** shall be a nonrefundable
   advance against any amounts due to Transience and YvB.  It

In about December 2012, defendant notified plaintiffs of a material disruption in its Sea-Monkeys business and that it would not be making the December 2012 Purchase Price payment. Plaintiffs sent defendant a notice of default, dated December 20, 2012 (Amended Complaint, Ex. C), and a subsequent notice, dated January 18, 2013, declaring the contract terminated (Amended Complaint, Ex. D).   In response, defendant's counsel sent a letter, dated January 22, 2013, stating:

> [Defendant ("BTT")] has reviewed the assertions in the [December 20, 2102 and January 18, 2013] Letters and disagrees that any default under the [Purchase Agreement] or [License] Agreement has occurred.  We call to your attention Section 2.2(a) of the [Purchase Agreement], which provides "All payments hereunder and under the License Agreement, including the Minimum Royalty, shall be a nonrefundable advance against any amounts due to Transcience and YvB. **It is expressly agreed that all such payments due on and after the Effective Date shall be applied to the payment of the Purchase Price."**  (Emphasis added). According to BTT's records, payments made by BTT to

is expressly agreed that **all such payments due on and after the Effective Date shall be applied to the payment of the Purchase Price."**  (Emphasis added).

> (b)   <u>Additional Purchase Price</u>.  The remaining Five Million Dollars ($5,000,000) of the Purchase Price (the "Additional Purchase Price") shall be payable as royalties, monthly, [on modified terms].

Under the License Agreement and Purchase Agreement, defendant paid plaintiffs not only a Minimum Royalty/purchase price, but also for pouches and a supplemental laboratory fee.  All such payments, added together, exceed $5,000,000.  Despite the express words in the Purchase Agreement (in bold above), plaintiffs dispute that pouch payments and the supplemental laboratory fees are included in the computation of the Initial Purchase Price.

Ms. von Braunhut from May 1, 2009 through November 30, 2012 total in excess of the Initial Purchase Price of $5,000,000. We further call to your attention that recent actions taken by the United States Fish and Wildlife Service, as well as foreign governments, with respect to pouches supplied by Transcience Corporation, materially adversely affected BTT's ability to market and sell the products in certain markets. Such acts, we believe, constitute a force majeure of the type described in Section 20.G. of the [License] Agreement and give rise to other defenses. Accordingly, it is BTT's position that no default has occurred.

We further call to your attention that Transcience Corporation and Yolanda von Braunhut have chronically failed to comply with the [Purchase Agreement], particularly Section 5(c), with respect to the supply of pouches to BTT. Such failure constitutes a default under the [Purchase Agreement]. (Amended Complaint, Ex. E).

Defendant has continued its Sea-Monkeys business. Because plaintiffs repudiated the agreements (and will not release legal titles to the Sea-Monkeys properties to defendant), and in light of plaintiffs failure to respond to defendant's settlement proposal (See Original Complaint, Ex. G and H), defendant has discontinued its payments to plaintiffs under the agreements.

### Plaintiff's Amended Complaint Should Be Dismissed

Plaintiffs do not argue breach of contract as a cause of action. Rather, plaintiffs admit the existence of the contracts, expressly ask this Court to "acknowledge, *but not adjudicate*" whether defendant breached those agreements, and then assert seven other Counts alleging various claims. As

1650756-2

6

explained below, plaintiffs' refusal to adjudicate all the elements of their breach-of-contract claim fatally impairs that cause of action, which, in turn, requires dismissal of that and all of plaintiff's other claims. See e.g., Ellis Enterprises Inc. v. Software Packaging Associates, Inc., 155 Fed. Appx. 405 (10th Cir. 2005) (trial court's dismissal of the UCC-based "lynchpin" of the complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) caused plaintiff's claims for fraud, conversion, tortious interference, trademark infringement, and breach of the duty of good faith to "tumble[]," requiring their dismissal as well).

## LEGAL ARGUMENT

### POINT I

### COUNT ONE (DAMAGES SUSTAINED FROM DEFENDANT'S BREACH OF CONTRACT) SHOULD BE DISMISSED

As a matter of law, "[f]ailure to *sufficiently* plead the elements of a cause of action is grounds for dismissal." Fezzani v. Bear Stearns & Company, Inc., 398 F.Supp.2d. 618, 630 (S.D.N.Y. 2004) [emphasis added].

> To state a claim for breach of contract under New York law, a plaintiff must *adequately* allege *each* of the following elements: (1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages.

Zeigler v. State of New York, 948 F.Supp.2d 271, 293 (N.D.N.Y. 2013)[emphasis added].

First, plaintiffs expressly seek to adjudicate **only** the question of damages. Plaintiffs:

> seek the Court to acknowledge, but **not adjudicate**, the issue of whether or not there was a breach of contract by the Defendant.

(Amended Complaint, para. 75). Plaintiffs want the Court to "acknowledge" (1) the existence of the agreements, (2) adequate performance of the agreements by plaintiff, and (3) breach of the agreements by the defendant. Defendant denies it has breached the agreements and disputes that plaintiffs have adequately performed under them.

Second, nowhere in the Amended Complaint do plaintiffs allege that they adequately performed the agreements.[3] Consequently, an essential element of the cause of action is not pled.

_____

[3] In the original Complaint, plaintiffs alleged that "Plaintiffs/Licensors and Defendant Licensee performed in accordance with their agreement without further occurrence until December of the year 2012" (Original Complaint, para. 48), and that "Plaintiffs were in compliance with the terms of the agreement between the parties over the lifespan of the now terminated agreement". (Original Complaint, para. 80). Plaintiffs removed both of those allegations from the Amended Complaint. In its original Answer, defendant admitted that it performed in accordance with the agreements, but denied that plaintiffs had done so. (Original Answer, para. 48).

Plaintiffs cannot state a claim for relief that can be granted when only one (i.e., damages) of the several elements is submitted for adjudication.

Count One of the Amended Complaint, alleging "Damages Sustained from Defendant's Breach of Contract," should be dismissed.

## POINT II

### COUNT TWO (DAMAGES SUSTAINED FROM DEFENDANT'S NON-PERFORMANCE OF IMPLIED CONTRACT), COUNT THREE (DEFENDANT'S UNJUST ENRICHMENT FROM QUASI CONTRACT), AND COUNT SEVEN (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) SHOULD BE DISMISSED

New York law bars claims for unjust enrichment, quasi-contract, and breach of the duty of good faith and fair dealing when they are insufficiently distinct from contractual claims. Hinterberger v. Catholic Health Sys., Inc., 536 Fed. Appx. 14, *17 (2d Cir. 2013), citing, De La Cruz v. Caddell Dry Dock & Repair Co., Inc., 22 A.D.3d 404, 405 (A.D. 1st Dept 2005) ("The existence of an enforceable written contract covering the matter at issue precludes recovery for causes of action sounding in quasi contract"), and Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of

contract claim, based upon the same facts, is also pled.")
Therefore,

> every court faced with a complaint brought under New
> York law and alleging both breach of contract and
> breach of the implied covenant of good faith and fair
> dealing has dismissed the latter claim as duplicative.
> Consequently, a claim for breach of the implied
> covenant of good faith can survive a motion to dismiss
> only if it is based on allegations different from
> those underlying the accompanying breach of contract
> claim.

Goldblatt v. Englander Communications, LLC, 2007 WL 246402, *5

(S.D.N.Y. 2007).

> Moreover, where the relief sought in claiming a breach
> of the implied covenant of good faith is intrinsically
> tied to the damages allegedly resulting from the
> breach of contract, there is no separate and distinct
> wrong that would give rise to an independent claim.

Id.

First, plaintiffs admit in Count One of the Amended

Complaint that they entered into the License Agreement and

Purchase Agreement with defendant. Those agreements contain a

provision for remedies in the event of a breach by a party.

Therefore, plaintiffs cannot advance their non-breach-of-

contract claims unless and until their breach-of-contract claim

is properly adjudicated. Plaintiffs' assertion of just the

damages portion of that claim renders it fatally defective and

similarly impairs plaintiffs' other causes of action. Ellis

Enterprises, 155 Fed. Appx. at 405 (dismissal of UCC-based

1650756-2                          10

"lynchpin" of complaint required dismissal of plaintiff's claims for fraud, conversion, tortious interference, trademark infringement, and breach of the duty of good faith claims).

Second, plaintiffs use the same facts on which their breach-of-contract claim is based to support claims for damages in Counts Two (Damages Sustained from Defendant's Non-Performance of Implied Contract), Three (Defendant's Unjust Enrichment from Quasi Contract), and Seven (Breach of Implied Covenant of Good Faith and Fair Dealing). Accordingly, those claims are insufficiently distinct from plaintiffs' contract claims and must be dismissed.

In Count Two, plaintiffs' alleged damages are the amounts that would have been paid under the contracts. (See Amended Complaint, paras. 122-123).

Count Three adds no new facts, only a new alternative remedy. Therefore, plaintiffs' unjust enrichment/quasi-contract claim is not sufficiently different from their breach-of-contract claim and should be dismissed.

In Count Seven, plaintiffs' allegations regarding defendant's failure to pay royalties and continuing sales of Sea-Monkeys clearly duplicate those pled as part of plaintiffs' contract claim. (Compare, Count One, paras, 89 an 92, with Count

Seven, para. 91). Therefore, plaintiffs' claim for breach of the duty of good faith and fair dealing should be dismissed.

Third, if the parties' express contract remains viable, as defendant contends, then plaintiffs cannot advance an implied contract claim because that cause of action is dependent on the termination of the parties' express contract.[4] Therefore, plaintiffs' remarkable contention that they are not seeking an adjudication of most of the required elements of their breach-of-contract claim bars adjudication of their implied contract claim.

Fourth, plaintiffs contend that BTT breached defendant's duty of good faith and fair dealing by "intentionally misinterpreting, misconstruing" the subject agreement, "failing to make timely royalty payments," and continuing to sell Sea-Monkeys. (See Amended Complaint, para. 191). However, as a matter of law, defendant's construction of the agreement relates

---

[4]     An implied contract, which plaintiffs allege existed after the parties Purchase Agreement was allegedly terminated, is distinct and entirely different from a quasi-contract. A quasi-contract "is really not a contract at all but rather a legal fiction employed by a court in pursuit of an equitable remedy …" Board of Education, East Meadow Union Free School District, 530 F.Supp. 1130, 1133 (E.D.N.Y. 1982). However, an implied contract "is one where mutual assent is indeed discernable from the parties' conduct …" Id.; accord, New York Cent. R. Co., v State, 273 N.Y.S. 891, 894 (N.Y. Ct. of Claims 1934)("Implied contracts must be distinguished from quasi-contracts, which also have often been called implied contracts or contracts implied in law"), reversed on other grounds, 287 N.Y.S. 850 (A.D. 3rd Dept. 1936).

to whether that contract was breached; defendant's contractual interpretation is not a breach of any duty in and of itself. North Alaska Housing Corporation v. United States, 76 Fed. Cl. 158, 200 (2007).   Therefore, plaintiffs' claim for breach of duty of good faith and fair dealing is not viable.

Thus, Counts Two, Three and Seven of the Amended Complaint should be dismissed.

**POINT III**

**COUNT FOUR (CONVERSION) SHOULD BE DISMISSED**

New York's economic loss doctrine bars non-contractual claims for economic losses that "flow[] from a breach of contract," Ozbakir v Scotti, 764 F.Supp.2d. 556, 575 (W.D.N.Y. 2011), whether express or implied. Cyberco Holdings, Inc v. American Express Travel Related Services Corp., 2002 WL 324028, *3 (S.D.N.Y. 2002).

Plaintiffs claim that the Purchase Agreement was terminated and replaced by an implied contract. (See Amended Complaint, para. 110). Defendant disagrees and contends that the Purchase Agreement is still in force and effect. Either way, the existence of an express or implied contract requires the dismissal of plaintiffs' tort claims. Therefore, as a matter of law, Count Four of the Amended Complaint should be dismissed.

Moreover, conversion claims that are duplicative of breach-of-contract claims are not viable and should be dismissed. Ainbinder v Money Center Financial Group, 2013 WL 1335997, *9 (E.D.N.Y. 2013) (and cases cited therein).

Plaintiffs' conversion claim seeks recovery of property, the rights to which are governed by contract. Plaintiffs' duplicative conversion claim should be dismissed.

### POINT IV

### COUNTS FIVE (TRADEMARK INFRINGEMENT) AND SIX (COPYRIGHT INFRINGEMENT) SHOULD BE DISMISSED

Counts Five (Trademark Infringement) and Six (Copyright Infringement) both allege that defendant's operation of the Sea-Monkeys business violates plaintiffs' intellectual property rights. However, without the adjudication of whether the parties' contract has been breached and terminated – an adjudication which plaintiffs do not seek - defendant's beneficial and equitable ownership of the Sea-Monkeys properties and related contractual rights continue.

Plaintiffs' infringement claims should be dismissed.

## POINT V

## COUNT EIGHT (TORTIOUS INTERFERENCE WITH CONTRACT AND/OR BUSINESS RELATIONSHIPS) SHOULD BE DISMISSED

First, plaintiffs' Amended Complaint fails to plead essential elements of their tortious interference claims.

Under New York law, to state a claim for tortious interference with contract, "the plaintiff must show the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426 (2007); Foster v. Churchill, 665 N.E.2d 153, 156 (N.Y. 1996).

New York law also requires a party asserting a claim for tortious interference with prospective business relations to allege: (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to the business relationship. Nadel v. Play by Play, 208 F.3d 368, 382 (2d Cir. 2000; Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir.1994)

Here, plaintiffs allege that defendant "has intentionally created an impasse thereby curtailing plaintiffs' ability to

enter into beneficial contractual relationships of significant monetary value with third parties." (See Amended Complaint, para. 201). Plaintiffs do not allege that they had any contracts or relationships with a third party with whom defendant interfered, only the potential for such relationships. (See Amended Complaint, para. 205). Plaintiffs then charge defendant with knowledge of these unidentified potential relationships based on their counsel's November 19, 2013 letter (sent after the original Complaint was filed) which states:

> Please let it be known by your client, Big Time Toys, LLC (**defendant**), that *Transcience* has been contacted by potential licensees of the **Sea-Monkeys®** product in exploration of forming mutually beneficial contractual relationships of significant monetary value.

> *Transcience* is hopeful that any loose ends between **defendant** and itself will be resolved in such a way so as to NOT interfere with what is anticipated to be a series of jointly lucrative and mutually beneficial contractual relationships.

(See Amended Complaint, Exhibit R). Thus, plaintiffs have not pled the required elements of a cause of action for tortious interference with contract or prospective business relations and there are no allegations in the Amended Complaint to plausibly support a claim that defendant "intentionally and improperly procured a breach" of any agreement or interfered with any relationship.

1650756-2                            16

Plaintiffs' tortious interference claims are also barred by New York's economic loss doctrine. Jacob v. Kimberley-Clark Corp., 2006 WL 1582149, *5 (E.D.N.Y. 2006).

Plaintiffs' tortious interference claims should be dismissed.

## CONCLUSION

In view of the forgoing, defendant's Motion should be granted and the Amended Complaint should be dismissed.

**DeCOTIIS, FITZPATRICK & COLE, LLP**
*Attorneys for Defendant*
*Big Time Toys, LLC*

By: _____
JOHN A. STONE, ESQ.

Dated:   February 18, 2014