# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
DEC 1 3 2013
U.S.D.C. S.D. N.Y.
CASHIERS

—————————————————— x
                                          :
TRANSCIENCE CORPORATION &                 :
YOLANDA VON BRAUNHUT (individual)         :
                           Plaintiffs     :     Index No.:     13 CV 6642
                                          :
          -against-                       :
                                          :     **AMENDED COMPLAINT**
                                          :
BIG TIME TOYS, LLC                        :
                           Defendant.     :
—————————————————— x

### DEMAND FOR INJUNCTIVE RELIEF and CLAIM FOR MONEY DAMAGES

Plaintiffs TRANSCIENCE CORPORATION & YOLANDA VON BRAUNHUT
(individual) by and through their attorney William Timmons, Esq., with offices located in
Sayville, New York, pursuant to the Federal Rules of Civil Procedure (FRCP); Rule 15 (a)(1)(B);

> Rule 15. Amended and Supplemental Pleadings:
> (a) AMENDMENTS BEFORE TRIAL.
> (1) *Amending as a Matter of Course.* A party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

hereby file this AMENDED COMPLAINT in this Demand for Injunctive Relief and Claim for
Money Damages, and allege the following in support thereof:

### JURISDICTION AND VENUE

1.  The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331:
"The district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."

2.  This action is a civil action based upon Defendant's infringement of Plaintiffs' US
trademarked and US copyrighted intellectual property rights.

3.  In accordance with 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the

entire matter pursuant to "all other claims that are so related . . . that they form part of the same case or controversy" (§ 1367(a)).

4.  Alternatively, the Court has subject matter jurisdiction over the case pursuant to diversity jurisdiction under 28 U.S.C. § 1332: US Code - Section 1332: *Diversity of citizenship; amount in controversy; costs.*

5.  The matter in controversy in the current instance exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  The action in the current instance is between citizens/corporations of different states.

7.  The Court has personal jurisdiction over the parties of the case pursuant to the parties' substantial and recurring economic contacts with the State of New York.

8.  In addition, the parties have consented to the jurisdiction of the federal courts in the County of New York of the State of New York with respect to any remedies available to the parties in aid of arbitration pursuant to the now terminated "License Agreement" of 2007 and the "Purchase Agreement and Amendment to License Agreement" dated May 1, 2009. (**see Exhibits A & B**)

9.  The federal Court in the County of New York of the State of New York, and NOT Arbitration via the American Arbitration Association (AAA), is the proper forum for the relief sought in this Complaint because Plaintiffs maintain that pursuant to the terms of contract the rights granted in the now terminated "License Agreement" of 2007 and the "Purchase Agreement and Amendment to License Agreement" dated May 1, 2009 are now "deemed null and void".(**see Exhibit B; pages 6 & 7**)

10. Plaintiffs maintain that *prima facie* evidence of termination of the "License Agreement" of 2007 and the "Purchase Agreement and Amendment to License Agreement" of

2009 is presented throughout this Complaint.

11.  Plaintiffs maintain that the within action seeks relief for damages sustained and damages ongoing caused by the Defendant *after* the *prima facie* termination of the 2007 and 2009 agreements.

12.  Venue is proper because the third party to the terminated contract, namely Escrow Holder Sichenzia Ross Friedman Ference, LLP, as provided for in the said terminated contract maintains offices at 61 Broadway, 32nd Floor, New York, NY 10006.

## PARTIES

13.  Plaintiff TRANSCIENCE CORPORATION (hereinafter and above, together with Plaintiff YOLANDA VON BRAUNHUT, "Plaintiffs") is a Maryland corporation with offices and a principle place of business located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.

14.  Plaintiff YOLANDA VON BRAUNHUT (hereinafter and above, together with Plaintiff TRANSCIENCE CORPORATION, "Plaintiffs") is an individual with an address located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.  YOLANDA VON BRAUNHUT is the Chief Executive Officer (CEO) and chief acting agent of TRANSCIENCE CORPORATION.

15.  Defendant BIG TIME TOYS, LLC (hereinafter, together with its agents acting on its behalf, "Defendant") is a Tennessee Limited Liability Company (LLC) with an office located at 708 Berry Road, Nashville, TN 37204.  **SAM HARWELL** is a resident of the State of Tennessee and is the president and CEO of Defendant BIG TIME TOYS, LLC.

## FACTUAL ALLEGATIONS

16.  Plaintiffs are the sole and exclusive owners of methods, materials, and properties (including intellectual properties) for designing, hatching, growing, and sustaining live micro-crustaceans (*Artemia NYOS*); a hybrid brine shrimp known and sold under the United States (US) registered trademark "Sea-Monkeys®".

17.  Plaintiffs are each owners of certain copyrights registered in the United States Copyright Office (USCO) and others unregistered.

18.  Plaintiff Yolanda von Braunhut is the copyright owner of an instruction book titled "It's Fun To Raise Pet Sea-Monkeys".

19.  Noted American inventor and marketer Harold von Braunhut held 196 patents for various products, many of which have become cultural icons, with the United States Patent and Trademark Office (USPTO).

20.  Harold von Braunhut invented and registered with the USPTO the brine shrimp product, initially called "Instant Life", in 1957. (see **Exhibit A; sub-exhibits A thru D**)

21.  Harold changed the name to "Sea-Monkeys®" and registered such with the USPTO in the year 1962. (see **Exhibit A; sub-exhibits A thru D**)

22.  Harold started a corporation named "Transcience Corporation" (Transcience) and transferred to it ownership of various products he had invented over the years.

23.  Transcience relies upon direct sales and licensing agreements relating to its Sea-Monkeys® product to account for most of its profits.

24.  The Transcience Corporation is a Maryland corporation with offices and a principle place of business located at 6200 Chapman's landing Road, Indian Head, Maryland 20640.

25.  Harold married Yolanda Signorelli (now known as: Yolanda von Braunhut) in the

year 1980.

    26. Harold was the CEO of Transcience until his untimely death in 2003.

    27. Upon his death Yolanda became the CEO of Transcience.

    28. Yolanda has been the CEO of Transcience ever since.

    29. In June of the year 2007, Plaintiffs entered into a License Agreement with the Defendant Big Time Toys, LLC. (see **Exhibit A**)

    30. The 2007 License Agreement granted Defendant rights to produce (in part), market, and sell the Sea-Monkeys® product owned by Plaintiffs.

    31. The 2007 License Agreement provided that Defendant Licensee "pay to the Licensor a royalty of ten percent (10%) of 'Gross Sales' of Licensed Products sold by Licensee to third parties". (see **Exhibit A; page 8**)

    32. The 2007 License Agreement provided that the royalty payments were due on the 10th of each month over the duration of the contract. (see **Exhibit A; page 8**)

    33. The 2007 License Agreement provided that the agreement would commence on January 1st 2008 and expire on December 31, 2012 unless otherwise terminated, renewed, or extended by terms as provided therein.

    34. The Sea-Monkeys® product is dependent upon the manufacture of trade secret pouches.

    35. The trade secret pouches upon which the Sea-Monkeys® product is based are manufactured exclusively by the Plaintiffs.

    36. The 2007 License Agreement provided that the Licensors will continue to manufacture, produce, and sell (at a controlled and reduced cost) to the Licensee the trade secret pouches upon which the Sea-Monkeys® product is based. (see **Exhibit A; paragraph pages 9-**

10; 16-18).

37.  The 2007 License Agreement provided that the Licensees would procure and otherwise produce other parts of the final Licensed Product, including but not limited to the water tank and packaging materials, from outside sources.

38. The cost of manufacture and production (including but not limited to labor, purchase of raw materials, and factory expenses) of the trade secret pouches upon which the Sea-Monkeys® product is based is incorporated into the price paid for the purchases of the pouches.

39.  The trade secret, as provided for in the 2007 and 2009 agreements, is held in escrow by Escrow Holder Sichenzia Ross Friedman Ference, LLP.

40.  The 2007 License Agreement provided that Licensee would pay to Licensor's designee a supplemental laboratory fee of $750 per week for "Laboratory and Research Facility Maintenance". (see **Exhibit A; Paragraph 10-A; page 17**)

41.  The 2007 License Agreement gave Defendant Licensee the right to purchase the entire Licensed Product "for an amount not to exceed 10 million dollars". (see **Exhibit A; paragraph 17A, page 23**)

42.  The 2007 License Agreement provided that the 10 million dollar purchase price would be realized in 2 segments; namely an initial lump sum 5 million dollar payment followed by an application of a 5% royalty payment per year from merchandising sales (and a per year percentage of entertainment related revenue) from that point thereafter until the remaining 5 million dollar sum was attained.

43.  The 2007 License Agreement provided that after realization of the first 5 million dollars of the 10 million dollar purchase amount that the Licensor would turn over to Licensee the production **and** manufacture of the pouches, including but not limited to the trade secrets,

upon which the Sea-Monkeys® product is based. (see Exhibit A; page 23)

44.  The 2007 License Agreement provided that the "agreement shall be governed by the laws of the State of New York." (see Exhibit A; page 26; paragraph 21)

45.  In May of the year 2009 Plaintiffs and Defendant modified their existing agreement as evidenced by "Purchase Agreement and Amendment to License Agreement". (see Exhibit B)

46.  The 2009 Amendment Agreement modified the 2007 License Agreement only where expressly indicated leaving those provisions not expressly indicated intact. (see Exhibit B; Section 5; page 12)

47.  The 2009 Amendment Agreement provided that Defendant Licensee "pay to the Licensor a royalty of twenty percent (20%) of 'Gross Sales' of Licensed Products sold by Licensee to third parties" (see Exhibit B; pages 3 & 4).

48.  The 2009 Amendment Agreement expressly provided that the royalty payments would be applied to the "Initial Purchase Price" to realize the first 5 million dollars of the 10 million dollar purchase price. (see Exhibit B; pages 3 & 4).

49.  The 2009 Amendment Agreement "expressly agreed that all such (royalty) payments due on and after the Effective Date shall be applied to the payment of the Purchase Price." (see Exhibit B; page 4).

50.  Furthermore, the 2009 Amendment Agreement expressly provided that the "Initial Purchase Price" of 5 million dollars "shall be paid as follows:  (i) $500,000 shall be paid upon execution of this Agreement" and "(ii) $4,500,000 shall be paid in the form of royalties payable under the License Agreement." (see Exhibit B; page 3; Section 2.2. Purchase Price (a) (i) & (ii))

51.  Plaintiffs note that 500,000 + 4,500,000 equals the sum of 5,000,000.

52. A few days before the date of December 10th 2012 Defendant, through its agents, called Plaintiffs on the telephone.

53. A few days before the day when the royalty payment was due on December 10th 2012 Defendant, through its agents, called Plaintiffs and informed Plaintiffs of Defendant's intention to NOT provide the royalty payment on the December 10th due date.

54. Defendant indicated to Plaintiffs at that time an intention to breach the agreement.

55. Defendant did not provide written notice at that time (on or within a week of 12-10-12) to Plaintiffs of Defendant's claim that it had purchased Plaintiff's intellectual property.

56. Defendant did NOT pay to Plaintiffs a royalty payment on December 10th 2012.

57. Defendant ceased to make laboratory fee payments near the end of the year 2012.

58. Defendant has not made any royalty payments to Plaintiffs since the approximate date of November 10th of the year 2012.

59. The 2009 Amendment Agreement, namely *Section 2.4.(a)* Remedies for BTT failure to Pay Royalties (see **Exhibit B; page 6**), provided that, in the event of a failure to make a royalty payment that the Licensee shall have 15 days from the date of receipt of notice of failure to make a royalty payment to cure any such default.

60. Plaintiff sent notice to Defendant of the failure of Defendant to make a royalty payment in the form of a letter entitled "NOTICE OF DEFAULT" sent to the main offices of Defendant on December 20, 2012. (see **Exhibit C**)

61. Plaintiff effectively declared,[1] 15 days after the receipt of the "NOTICE OF DEFAULT" by Defendant without cure of the default, the 2009 Amendment Agreement and the 2007 License Agreement "null and void and of no further force of effect" in a letter sent to the

---

[1] The declaration of termination is consistent with *Section 2.4.(a)(i)* of the 2009 Amendment Agreement. (see **Exhibit B; page 6**)

Defendant dated January 18, 2013. **(see Exhibit D)**

62.   Defendant, through its agents, in a letter sent to Plaintiffs' counsel dated January 22, 2013 put forth for the first time in written form the notion that the pouch payments for the purchase of the Sea-Monkeys® pouches should be counted toward the realization of the first 5 million dollars or "Initial Purchase Price" of the 10 million dollar total purchase price of Sea-Monkeys® Properties. **(see Exhibit E)**

63.   Such a notion as stated in the previous paragraph is nowhere to be found or can be held to be anywhere implied in either the 2007 License Agreement or the 2009 Amendment to License Agreement.

64.   Such an unfounded notion is a delaying tactic and is fraught with malice.

65.   The payments that the Defendant made to Plaintiffs for the purchase of the trade secret Sea-Monkeys® pouches were NOT royalty payments.

66.   The phrase "all such payments" in the last line of Section 2.2(a) of the 2009 Amendment Agreement clearly and without question or reasonable doubt refers to all such royalty payments, and no other payment, being now (relative to the initial 2007 License Agreement) applicable to the realization of the 5 million dollar "Initial Purchase Price". (see **Exhibit B; page 4)**

67.   Plaintiffs allege that, during this time Defendant, through its agents, attempted to persuade Plaintiffs to accept a lower purchase price for the sale of "Sea-Monkeys® Properties".

68.   Plaintiffs did NOT agree to accept a lower purchase price for the sale of "Sea-Monkeys® Properties".

69.   Plaintiffs effectively reconfirmed the declaration of termination of the 2009 Amendment Agreement and the 2007 License Agreement in a letter sent to the Defendant dated

January 29, 2013. **(see Exhibit F)**

70. Plaintiffs sent further correspondence to Defendant in attempts to resolve the issues in as civil a manner as possible and avoid the need for unnecessary and frivolous litigation. (see **Exhibit G)**

71. Plaintiffs allege that Defendant, through its agents, responded to such in a nonsensical, unrealized, trite, trivial, malicious, and dismissive way.

72. Plaintiffs allege that Defendant further responded by threatening to initiate litigation against Plaintiffs should Plaintiffs attempt to enter into agreement(s) with third parties to license the Sea-Monkeys® product to anyone else

73. Plaintiffs allege that Defendant did not initiate legal process of any sort against Plaintiffs between December 10th of the year 2012 and the current date.

74. Plaintiffs allege that Defendant at no point up to the current date did Defendant set forth a written request to the Escrow Holder to release the trade secreted intellectual property held by the Escrow Holder into Defendant's custody.

75. In the current instance Plaintiffs seek the Court to acknowledge, but not adjudicate, the issue of whether or not there was a breach of contract by the Defendant.

76. Uncontroverted *prima facie* evidence of breach of the 2009 Amendment Agreement and the 2007 License Agreement by Defendant is detailed within this Complaint.

77. The contract between Plaintiffs and the Defendant was effectively terminated upon Plaintiffs declaration of such after Defendant's failure to cure the default after receiving proper notice of default. (see **Exhibit B; page 6; see also Exhibits D & F)**

78. Pursuant to *Section 2.4.(a)* Remedies for BTT failure to Pay Royalties of the 2009 Amended Agreement the remedies for failure to pay the royalty after notice of default and failure

to cure default provide, among other things, that Plaintiffs be entitled to:  1) declare the agreement terminated with "no further force or effect", 2) "commence an action for equitable relief, including but not limited to, injunctive relief prohibiting any continued use of the Licensed Trademarks and Licensed Copyrights", 3) require that Defendants "immediately cease selling, marketing, or producing the Licensed Products and Sea-Monkeys® Properties", and finally, 4) that "any rights granted" under the contract to Defendant be "deemed null and void". (**see Exhibit B; pages 6 & 7)**

79.  Plaintiffs allege that Defendant agreed to pay to Plaintiffs $4,500,000 in the form of royalty payments.

80.  Plaintiffs allege that Defendant did NOT pay to Plaintiffs $4,500,000 in the form of royalty payments.

81.  Defendant, all throughout the days between January 18, 2013 and the date of November 25th 2013, prominently featured the Sea-Monkeys® product on the homepage of the *Big Time Toys* website located at http://www.bigtimetoys.com/. (see **Exhibits K, L, M & N)**

82.  Plaintiffs allege that Defendant continues through to the present to prominently feature the Sea-Monkeys® product on the homepage of the *Big Time Toys* website.

83.  Plaintiffs have been directly harmed by Defendant's interference with Plaintiffs' ability to generate profits from the Sea-Monkeys® product.

84.  Plaintiffs now seek the Court's assistance:  1) to recover damages resultant from Defendant's past, ongoing, and continuing unauthorized use of Sea-Monkeys® Properties and 2) to prevent further future harm to the Plaintiffs by the actions of the Defendant.

## COUNT ONE
## Damages Sustained from Defendant's Breach of Contract

85.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

86.  Plaintiffs maintain that a valid contract existed between the parties as evidenced from the 2007 License Agreement and the 2009 Amendment to License Agreement (**see Exhibits A& B**).

87.  Defendant failed to produce the royalty payment due on December 10th 2012.

88.  Defendant breached the contract with Plaintiffs when it failed to correct the default within 15 days after receipt of notice of default.

89.  Defendant has NOT produced a single royalty payment to the Plaintiffs since November of 2012.

90.  Defendant has NOT made a single laboratory fee payment since Defendant's breach of contract in December of 2012.

91.  Plaintiffs declared the agreement between the parties "null and void with no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 18th 2013. (see **Exhibit D**)

92.  Defendant continues to receive benefits and to be enriched from continuing and ongoing sales of the Sea-Monkeys® product.

93.  As a result of the aforementioned breach of contract Plaintiffs have suffered damages resultant from Defendant's failure to produce the royalty payments and the supplemental laboratory fee payment as provided for in the 2009 Amendment to License Agreement.

94.  The 2009 Amendment to License Agreement provided that Defendant pay a royalty of 20% of Gross sales of monies generated from sale to third parties of the previously licensed

Sea-Monkeys® product.

95.  The 2009 Amendment to License Agreement provided a forecast of approximately

$3,750,000 Gross sales per year of the Sea-Monkeys product and based upon that figure

provided a minimum royalty payment payable by Defendant to Plaintiffs of $750,000 per year

(payable in quantities of $62,500 per month). **(see Exhibit B; page 4 & 5)**

96.  Compensatory damages in the State of New York "place the non-breaching party in

as good a position as it would have been had the contract been performed." *Brushton-Moira*

*Cent. School Dist. v. Fred H. Thomas Assocs., P.C.*, 91 N.Y.2d 256, 261, 692 N.E.2d 551, 669

N.Y.S.2d 520 (N.Y. 1998).

97.  Damages are based on the accrual date of Plaintiffs' cause of action (*Rodriguez v*

*Moore-McCormack Lines*, 32 NY2d 425, *supra*; *Simon v. Electrospace Corp.*, 28 NY2d 136,

*supra*).

98.  Plaintiffs note that interest is awarded pursuant to statutory mandate; most notably

CPLR 5001(a) providing that interest shall be recovered upon a sum awarded for a breach of

contract and CPLR 5001(b) mandating that "interest shall be computed from the earliest date the

cause of action existed". **(see Exhibit I)**

99.  As a result of the breach of contract, as described above, Plaintiffs have suffered

money damages for royalty payments NOT PAID in the amount of $62,500.00 per month for

each and every month (due on the tenth of each month) since Defendant's first failure to produce

the royalty payment due on December 10th 2012.

100.  As a result of Defendant's breach of contract, as described above, Plaintiffs have

suffered money damages for unpaid supplemental laboratory fee payments in the amount of

$375.00 per week for each and every week since Defendant's first failure to pay this fee on or

about December 10th 2012.

101. As a result Defendant's breach of contract, as described above, Plaintiffs continue to suffer money damages for royalty payments NOT paid in the amount $62,500.00 for each and every future month that goes by from the date of this Complaint forward; all resultant from Defendant's failure to produce the royalty payment due on the 10th of each month as specified in the original breached agreement.

## COUNT TWO
### Damages Sustained from Defendant's Non-Performance of Implied Contract

102. Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

103. Plaintiffs maintain that a valid express contract existed between the parties as evidenced from the 2007 License Agreement and the 2009 Amendment to License Agreement (see Exhibits A & B).

104. Defendant failed to pay Plaintiffs the royalty payment due on December 10th 2012.

105. Defendant breached the express contract with Plaintiffs when it failed to correct the default within 15 days after receipt of notice of default. (see Exhibits C, D & F)

106. Defendant has NOT produced a single royalty payment to the Plaintiffs since November of 2012.

107. Defendant has NOT made a single laboratory fee payment since Defendant's breach of the express agreement in December of 2012.

108. Plaintiffs declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. (see Exhibits D & F)

109. Defendant continues to receive benefits from continuing and ongoing unauthorized

sales of the Sea-Monkeys® product.

110.  Plaintiffs contend that an implied contract came into existence by implication of fact after Defendant's willful termination of the agreement previously entered into by the parties.

111.  Plaintiffs allege that past and ongoing enrichments by Defendant create an inference and a duty for Defendant to perform in accordance with an implied contract between the parties.

112.  Plaintiffs have no desire to reform or otherwise reenter into any contractual relationship with Defendant outside the temporal implied contract that Plaintiffs contend came into being by default upon Defendant's breach of the original express agreement.

113.  Plaintiffs contend that the implied contract now in place by default serves only to compensate the Plaintiffs for use of Plaintiffs' valuable intellectual property and for no other reason.

114.  Plaintiffs note that the implied contract now in place by default does not in any way provide for the sale of Sea-Monkeys® Properties to Defendant.

115.  Plaintiffs note that Defendant's willful failure to cure the breach of contract and subsequent visitation of hardship upon the Plaintiffs, as described with particularity throughout this Complaint, has terminated the possibility of sale of Sea-Monkeys® Properties to Defendant.

116.  The 2009 Amendment to License Agreement provided that Defendant pay a royalty of 20% of Gross sales of monies generated from sale to third parties of the Sea-Monkeys® product.

117.  The 2009 Amendment to License Agreement provided a forecast of approximately $3,750,000 Gross sales per year of the Sea-Monkeys product and based upon that figure provided a minimum royalty payment payable by Defendant to Plaintiffs of $750,000 per year (payable in quantities of $62,500 per month). (see **Exhibit B; page 4 & 5)**

118. Damages are intended to place the non-breaching party in as good a position as it would have been had the contract been performed (*see, e.g., Goldstein Corp v City of New York*, 80 NY2d 366, 373).

119. Damages are based on the accrual date of Plaintiffs' cause of action (*Rodriguez v Moore-McCormack Lines*, 32 NY2d 425, *supra*; *Simon v Electrospace Corp.*, 28 NY2d 136, *supra*).

120. Plaintiffs note that interest is awarded pursuant to statutory mandate; most notably CPLR 5001(a) providing that interest shall be recovered upon a sum awarded for a breach of contract and CPLR 5001(b) mandating that "interest shall be computed from the earliest date the cause of action existed". (see **Exhibit I**)

121. As a result of Defendant's non-performance of the implied contract, as described above, Plaintiffs have suffered money damages for royalty payments NOT paid in the amount $62,500.00 per month for each and every month (on the tenth of each month) since the Defendant's first failure to produce the royalty payment due on December 10th 2012.

122. As a result of Defendant's non-performance of the implied contract, as described above, Plaintiffs have suffered money damages for missed supplemental laboratory fee payments in the amount of $375.00 per week for each and every week since Defendant's first failure to pay this fee on or about December 10th 2012.

123. As a result Defendant's non-performance of the implied contract, as described above, Plaintiffs continue to suffer money damages for royalty payments NOT paid in the amount $62,500.00 for each and every future month that goes by from the date of this Complaint forward; all resultant from Defendant's failure to produce the royalty payment due on the 10th of each month as specified in the terminated agreement and resurrected in the implied contract.

## COUNT THREE
### Defendant's Unjust Enrichment from Quasi Contract

124.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

125.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

126.  Defendant has been unjustly enriched by its continuing and ongoing unauthorized sales of the previously licensed Sea-Monkeys® product.

127.  Defendant was enriched at the expense of the Plaintiffs and Plaintiffs were harmed accordingly:  1) by minimally the measure of the fair market value or *quantum meruit* of the benefit received by the Defendant from sales of Plaintiffs Sea-Monkey® product and 2) by maximally preventing and/or interfering with Plaintiffs' right to generate sales on Plaintiffs' own accord from sales or license agreements of the Sea-Monkeys® product to third parties.

128.  Defendant's non-accountability, delay, obstruction, and inability to account for the profits generated from past and continuing sales of the previously licensed Sea-Monkeys® product is inherently unjust.

129.  Defendant has no good faith basis or defense to justify or otherwise excuse their past and ongoing enrichment at the expense of the Plaintiffs.

130.  Defendant has no good faith basis or defense for its continuing, corruptible posture.

131.  Plaintiffs seek both remedies at law and remedies in equity for Plaintiffs unjust enrichment as stated throughout this Complaint in the form of:  1) money damages for monies that have otherwise been diverted from the Plaintiffs and 2) equitable relief in the form of injunctions that will prevent Defendant from visiting continuing future harm upon the Plaintiffs.

132.  As a result of Defendant's unjust enrichment, as described above, Plaintiffs have

suffered substantial financial damages by the self-serving actions of the Defendant and will continue to suffer ongoing recurring future damages if Defendant is not otherwise prevented by Court Order from doing so.

## COUNT FOUR
### Conversion

133. Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

134. Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. **(see Exhibit A; sub-exhibits A thru D)**

135. Defendant has exercised and continues to exercise control over the Plaintiffs intellectual property in a manner that is inconsistent with the Plaintiff's exclusive right of possession.

136. Defendant has violated or otherwise interfered with Plaintiffs' dominion relative to Plaintiffs' intellectual property.

137. Defendant continues to violate or otherwise interfere with Plaintiffs' dominion relative to Plaintiffs' intellectual property.

138. Defendant, between the dates of January 18, 2013 and November 25th 2013 and presumably thereafter, identified/identifies the trademarked Sea-Monkeys® product as one of *"Our Home Run Toys"* on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibit M)**

139. Defendant, as demonstrated by its continuing undisputed lack of compensatory providence, has made an unauthorized assumption of the right to possession or ownership of the Sea-Monkeys® Properties.

140.  Defendant has failed to compensate Plaintiffs for Defendant's past and ongoing unauthorized use of the previously licensed Sea-Monkeys® product.

141.  Defendant has wrongfully taken possession of monies to which it is not entitled to in obviation of and with complete disrespect and disregard of Plaintiff's intellectual property rights.

142.  Defendant continues to wrongfully take possession of monies to which it is not entitled to in obviation and with complete disrespect and disregard of Plaintiff's intellectual property rights.

143.  Defendant has made an unauthorized assumption of the right to possession or ownership of monies to which Plaintiffs have sole and exclusive claim.

144.  As a result of the conversion, as described above, Defendant has converted property and continues to convert property into property of its own to which Plaintiffs alone have sole and exclusive claim.

## COUNT FIVE
## Trademark Infringement

145.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

146.  Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (see **Exhibit A; sub-exhibits A thru D**)

147.  Plaintiffs effectively declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. (see **Exhibits D & F**)

148.  Plaintiffs own *all* trademarks for the Sea-Monkeys® product. (see **Exhibit A; sub-**

**exhibits A thru D)**

149.  All of Plaintiffs' trademarks for the Sea-Monkeys® product are registered with the United States Trademark and Patent Office (**USPTO**). **(see Exhibit A; sub-exhibits A thru D)**

150.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

151.  Defendant, between the dates of January 18, 2013 and November 25th 2013 and presumably thereafter, prominently featured/features the trademarked Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibits K, L, M, & N)**

152.  Defendant, between the dates of January 18, 2013 and November 25th 2013 and presumably thereafter, identified/identifies the trademarked Sea-Monkeys® product as one of "*Our Home Run Toys*" on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibit M)**

153.  Defendant has presented and continues to present to the world an assumed right and/or authorization to sell the trademarked Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibits K & M)**.

154.  Defendant has received and continues to receive benefits from continuing and ongoing sales of the Sea-Monkeys® product.

155.  Defendant has made no attempt to compensate Plaintiffs for their past and ongoing unauthorized use of Plaintiffs trademarked Sea-Monkeys® product.

156.  Defendant willfully continues to profit from its unauthorized use of Plaintiffs trademarked Sea-Monkeys® product.

157.  Defendant's profits come at the expense of Plaintiffs and precipitate harm upon the Plaintiffs.

158.   Defendant on its website represents to its partners/retailers that it has authorization to sell the trademarked Sea-Monkeys® product. (see **Exhibits K, M, & N**)

159.   Defendant's representation of authorization to sell the trademarked Sea-Monkeys® product on Defendant's web site has interfered with Plaintiffs ability to enter into 3rd party contractual relationships to profit from its Sea-Monkeys® product.

160.   Defendant, through its egregious and ongoing disingenuous conduct, has visited harm upon the market strength and veracity of Plaintiffs trademarked intellectual property.

161.   The Lanham Act; enacted July 6, 1946, codified at 15 U.S.C. § 1051 et seq. (15 U.S.C. ch. 22; provides remedies that can be sought when a trademark is infringed in Subchapter III, Sections 42 and 43.

162.   These provisions are codified in 15 USC §1117; "Recovery for violation of rights; profits, damages and costs; attorney fees; treble damages". (see **Exhibit J**)

163.   Plaintiffs elect to be compensated, determinable at trial, by the greater of actual damages, defining compensatory damages as all profits Defendant unrightfully obtained, or statutory damages as provided for by the Lanham Act and/or other laws of the USA.

164.   As a result of the trademark infringement, as described above, Defendant has profited and continues to profit from intellectual property to which Defendant has no claim.

## COUNT SIX
### Copyright Infringement

165.   Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

166.   Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (see **Exhibit A; sub-exhibits A thru D**)

167. Plaintiffs effectively declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. **(see Exhibits D & F)**

168. Plaintiffs own *all* copyrights for the Sea-Monkeys® product. **(see Exhibit A; sub-exhibits A thru D)**

169. All of Plaintiffs' copyrights for the Sea-Monkeys® product are registered with the United States Copyright Office **(USCO)**. **(see Exhibit A; sub-exhibits A thru D)**

170. Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

171. Defendant, between the dates of January 18, 2013 and November 25th 2013 and presumably thereafter, prominently featured/features the copyrighted Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibits K, L, M, & N)**

172. Defendant, between the dates of January 18, 2013 and November 25th 2013 and presumably thereafter, identified/identifies the copyrighted Sea-Monkeys® product as one of *"Our Home Run Toys"* on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibit M)**

173. Defendant has presented and continues to present to the world an assumed right and/or authorization to sell the copyrighted Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. **(see Exhibits K & M)**.

174. Defendant has received and continues to receive benefits from continuing and ongoing unauthorized sales of the Sea-Monkeys® product.

175. Defendant has made no attempt to compensate Plaintiffs for their past and ongoing unauthorized use of Plaintiffs copyrighted Sea-Monkeys® product.

176.   Defendant willfully continues to profit from its unauthorized use of Plaintiffs copyrighted Sea-Monkeys® product.

177.   Defendant's profits come at the expense of Plaintiffs and precipitate harm upon the Plaintiffs.

178.   Defendant on its website represents to its partners/retailers that it has authorization to sell the copyrighted Sea-Monkeys® product. **(see Exhibits K, M, & N)**

179.   Defendant's representation of authorization to sell the copyrighted Sea-Monkeys® product on Defendant's web site has interfered with Plaintiffs ability to enter into 3rd party contractual relationships to profit from its product.

180.   Exclusive rights in copyrighted works are defined and remedies for infringement are contained in Chapter 1 of Title 17 of the *United States Code* (USC). **(see Exhibit P)**

181.   Chapter 5 section 501 of Title 17 of the USC provides for an action of *Infringement of Copyright;* 17 USC § 501. **(see Exhibit P)**

182.   Plaintiffs assert that the copyrighted Sea-Monkeys® product is a protected work, that the Defendant copied the protected work, and that such copying of the protected work was an infringement of Plaintiffs copyright.

183.   Chapter 5 section 504 of Title 17 of the USC provides for remedies for copyright infringement; 17 USC § 504. **(see Exhibit Q)**

184.   Plaintiffs will elect to be compensated, before final judgment of the matter, by either actual damages, defining compensatory damages as all profits Defendant unrightfully obtained, or statutory damages as provided for by US Copyright Law.

185.   As a result of the copyright infringement, as described above, Defendant has profited and continues to profit from intellectual property to which Defendant has no claim.

## COUNT SEVEN
### Breach of Implied Covenant of Good Faith and Fair Dealing

186.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

187.  Under New York law, every contract contains an implied covenant of good faith and fair dealing which is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement. (see, Rowe v. Great Atlantic & Pacific Tea Co., 46 N.Y.2d 62, 412 N.Y.S.2d 827, 385 N.E.2d 566).

188.  This covenant is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement (see, Jaffe v. Paramount Communications, 222 A.D.2d 17, 22-23, 644 N.Y.S.2d 43).

189.  For a complaint to state a cause of action alleging breach of an implied covenant of good faith and fair dealing, the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff (see, Dvoskin v. Prinz, 205 A.D.2d 661, 662, 613 N.Y.S.2d 654; Holmes Protection of N.Y. v. Provident Loan Soc. of N.Y., 179 A.D.2d 400, 577 N.Y.S.2d 850).

190.  In the current instance Plaintiffs allege that Defendant, without cause or justification, deliberately withheld benefits to Plaintiffs thereby depriving Plaintiffs of their right to receive lawfully contracted-for benefits.

191.  Defendant breached the implied covenant of good faith and fair dealing by acting in bad faith, and without limitation, to obstruct and frustrate Plaintiffs' attempts to gain the benefit of its bargain by intentionally misinterpreting, misconstruing, and continuing to misconstrue or otherwise misinterpret the now terminated agreement between the parties, by failing to make timely royalty payments to Plaintiffs, and by continuing to sell and market Plaintiffs' Sea-Monkeys trademarked product without right or authority to do so.

192.  As a result of the foregoing, Plaintiffs have suffered compensatory and consequential damages, and will continue to suffer damages, in an amount to be determined at trial.

## COUNT EIGHT
### Tortious Interference With Contract and/or Business Relationships

194.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

195.  Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. **(see Exhibit A; sub-exhibits A thru D)**

196.  Plaintiffs effectively declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. **(see Exhibits D & F)**

197.  Defendant has exercised and continues to exercise control over the Plaintiffs intellectual property in a manner that is inconsistent with the Plaintiff's exclusive right of possession.

198.  Defendant has violated or otherwise interfered with Plaintiffs' dominion relative to Plaintiffs' intellectual property.

199.  Defendant continues to violate or otherwise interfere with Plaintiffs' dominion relative to Plaintiffs' intellectual property.

200.  Defendant, through the intentional maintenance and presentation of its unfounded claim to Plaintiff's intellectual property, has tortiously interfered with Plaintiffs' business relationships.

201.  Defendant's conduct has intentionally created an impasse thereby curtailing Plaintiffs' ability to enter into beneficial contractual relationships of significant monetary value with third parties.

202.  As a result of such conduct Defendant has acted to prevent Plaintiffs from

successfully establishing or maintaining business relationships.

203.  As a result of such conduct Defendant has acted to prevent Plaintiffs from mitigating damages that it has suffered at the hands of the Defendant.

204.  As a result of such conduct Defendant has perpetrated and continues to perpetrate upon Plaintiffs a tortious interference with Plaintiffs' prospective business relations, expectations, or advantage, or with prospective economic advantage.

205.  Defendant has knowledge of Plaintiff's potential beneficial business relationships with other parties. **(see Exhibit R)**

206.  As a result of the conduct of the Defendant, Plaintiffs have suffered substantial economic losses.

207.  As a result of the conduct of the Defendant, Plaintiffs have suffered severe mental distress.

208.  Defendant has performed in such a malicious manner so as to invite the assessment of punitive damages against it.

209.  As a result of the Defendant's presentations of deliberate untruth and insincere assertion, as described above, Defendant has tortuously interfered with Plaintiffs' ability to form and enter into contracts with interested 3rd parties to profit from its trademarked products.

## DEMAND FOR EQUITABLE RELIEF

WHEREFORE, the Plaintiff respectfully requests the following equitable relief:

   (1) The issuance of a permanent injunction by the Court prohibiting any continuing use of
       Plaintiffs' trademarks or copyrights by the Defendant;

(2) The issuance of an Order of the Court requiring that the Defendant immediately cease selling, marketing, and/or producing any of Plaintiffs' Licensed Products, including but not limited to Sea-Monkeys® Properties;

(3) The issuance of a preliminary injunction by the Court prohibiting any continuing use of Plaintiffs' trademarks or copyrights by the Defendant for the duration of this lawsuit;

(4) The issuance of a preliminary Order of the Court effective for the duration of this lawsuit requiring that the Defendant immediately cease selling, marketing, and/or producing any of Plaintiffs' Licensed Products, including but not limited to Sea-Monkeys® Properties;

(5) The issuance of an Order of the Court requiring that the Defendant immediately return to Plaintiffs any and all unsold product, packets, tooling, packaging materials, and any other thing related to the previously Licensed Products as provided for in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(6) The issuance of a permanent Order of the Court prohibiting the Defendant from selling, marketing, and/or producing "knock-off" products related to Sea-Monkeys® Properties as defined in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(7) Assessing against the Defendant punitive damages, in favor of Plaintiffs, to punish the Defendant for its egregious behavior and uncivil tortious actions which necessitated the bringing of this lawsuit;

(8) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.

(4) An awarding of statutory damages or actual damages in the form of the full measure of profit obtained by Defendant at Plaintiffs expense at the election of the Plaintiffs, commensurate with interest, from Defendant to Plaintiffs for Defendant's willful and egregiously executed trademark and copyright infringements of Plaintiffs' intellectual property as detailed within this Complaint;

(5) An awarding of damages resultant from Defendant's ongoing tortious interference with Plaintiff's ability to form and enter into contracts with 3rd parties to profit from its trademarked products or to otherwise mitigate damages that are resultant of the impasse created artificially by Defendant upon which this Compliant is based;

(6) An awarding of punitive damages paid to Plaintiffs by the Defendant, proportional to the degree of Defendant's egregious behavior as determined by the trier of fact, based upon Defendant's presentation of deliberate untruth and insincere assertions to create and prolong the current impasse upon which this Compliant is based; and

(7) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38 Plaintiffs hereby demand a trial by jury on any issue triable of right by a jury.

Respectfully Submitted,

By: _William Timmons_

William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
(631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION & YOLANDA VON BRAUNHUT

Dated: November 25, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                                            :
TRANSCIENCE CORPORATION &                                   :
YOLANDA VON BRAUNHUT (individual)                           :
                                    Plaintiffs              :      Index No.:      13 CV 6642
                                                            :
                    -against-                               :
                                                            :      AMENDED COMPLAINT
                                                            :
BIG TIME TOYS, LLC                                          :
                                    Defendant               :
------------------------------------------------------------x
```

## VERIFICATION PAGE

**YOLANDA VON BRAUNHUT**, being duly sworn, deposes and says:

I am the acting agent of Plaintiff TRANSCIENCE CORPORATION and am the individual named as a Plaintiff in the above-entitled action. I have read the foregoing **Amended Complaint** and know the contents thereof. The contents of such are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _25_ day of _NOVEMBER_ 2013,

at _Bryans ROAD, Maryland_

_Yolanda von Braunhut_                              _11/25/13_
Yolanda von Braunhut                                   Date

Sworn to before me this

_25H_ day of _NOVEMBER_, 2013

_Gloria M. Davies_
GLORIA M. DAVIES

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
                                 :

TRANSCIENCE CORPORATION &
YOLANDA VON BRAUNHUT (individual)     :
                       Plaintiffs      :        Index No.:     13 CV 6642
                                   :

            -against-               :
                                   :       **AMENDED COMPLAINT**

BIG TIME TOYS, LLC                   :
                     Defendant.     :
——————————————————————— x

## DECLARATION OF WILLIAM TIMMONS, ESQ.

STATE OF NEW YORK     )
                         )    s.s:
COUNTY OF SUFFOLK   )

      I, **WILLIAM TIMMONS**, an attorney admitted to practice in the State of New York and in the US federal courts for the Eastern District for the State of New York (EDNY) and for the Southern District for the State of New York (SDNY), under penalty of perjury, hereby declare:

1. I have been retained by Plaintiffs TRANSCIENCE & YOLANDA VON BRAUNHUT. I submit this **Amended Complaint**. I know the facts testified to in this **Amended Complaint** to be true based on my personal knowledge and a review of the documentation.
2. To the best of my knowledge, information , and belief formed after an inquiry reasonable under the circumstances the presentation of these papers or the contentions therein are not frivolous as defined in Subsection (c) of Section 130-1.1 of the Rules of the Chief Administrative Judge (22 NYCRR).
3. I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on November 25, 2013

By: _William Timmons (signature)_
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
(631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT

# EXHIBIT A

(as per original complaint)

# EXHIBIT B

(as per original complaint)

EXHIBIT C

# SICHENZIA ROSS FRIEDMAN FERENCE LLP
## ATTORNEYS AT LAW

### NOTICE OF DEFAULT

December 20, 2012

*Via Facsimile and Federal Express*

Big Time Toys, LLC
708 Berry Road
Nashville, TN 37204
Attention: Garry Barber, President

Re:   Purchase Agreement and Amendment to License Agreement
      Between Big Time Toys, LLC and Transcience Corporation and
      Yolanda von Braunhut, dated as of May 1, 2009 (the "Agreement")

Dear Mr. Barber:

This firm represents Transcience Corporation ("Transcience") and Yolanda von Braunhut ("YvB") in connection with the Agreement.

As you are aware, pursuant to the terms of the Agreement, Big Time Toys, LLC ("BTT") exercised its option to purchase from Transcience and YvB all right, title and interest in products licensed pursuant to a License Agreement, made as of June 26, 2007 (the "License Agreement"), by and among BTT, YvB and Transcience for the total sum of $10,000,000, which was divided into the following two components: (1) an Initial Purchase Price of $5,000,0000; and (2) an Additional Purchase Price of $5,000,000. Pursuant to Section 2.2(a) of the Agreement, BTT agreed to pay the $4,500,000 of the Initial Purchase Price remaining after the payment of $500,000 initial cash payment in the form of royalties payable under the License Agreement. Specifically, BTT agreed to pay Transcience the greater of the royalties set forth under Section 4.A. of the License Agreement (as amended by the Agreement), or a minimum royalty of $750,000, in twelve equal monthly installments on the 10th day of each month.

BTT has failed to pay the installment of the Initial Purchase Price due on December 10, 2012 in the amount of $62,500 pursuant to Section 2.2(a) of the Agreement. Please be advised that as a result of BTT's failure to make this payment, BTT is in default of its obligations under the Agreement and the License Agreement. Please be further advised that, in the event that BTT fails to cure said default on or before January 7, 2013, YvB and Transcience intends to enforce its rights and remedies under the Agreement and/or the License Agreement, including, but not limited to, those set forth in Section 2.4(a) of the Agreement.

This letter is without prejudice to, and shall not construed as a waiver of, any and all of Transcience and Yolanda von Braunhut's rights and remedies, at law or in equity, all of which are expressly reserved.



Big Time Toys, LLC
December 20, 2012
Page 2 of 2

      Be guided accordingly.

                                    Very truly yours,

                                    Christopher P. Milazzo

cc:    Jeffrey Kramer, Esq. (via email only)

EXHIBIT D

# SICHENZIA ROSS FRIEDMAN FERENCE LLP
### ATTORNEYS AT LAW

January 18, 2013

*Via Facsimile and Federal Express*

Big Time Toys, LLC
708 Berry Road
Nashville, TN 37204
Attention: Garry Barber, President

Re:   Purchase Agreement and Amendment to License Agreement
      Between Big Time Toys, LLC and Transcience Corporation and
      Yolanda von Braunhut, dated as of May 1, 2009 (the "Agreement")

Dear Mr. Barber:

As you know, this firm represents Transcience Corporation ("Transcience") and Yolanda von Braunhut ("YvB") in connection with the Agreement. I write with respect to the Notice of Default, dated December 20, 2012, served by my firm upon Big Time Toys, LLC ("BTT"), as a result of BTT's default in its obligation make the payment due December 10, 2012 (and thereafter) pursuant to the Agreement, and BTT's failure to cure said default on or before January 7, 2013.

Please be advised that, pursuant to Section 2.4(a) of the Agreement, Transcience and YvB hereby declare the Agreement and the License Agreement' made as of June 26, 2007 (the "License Agreement") are null and void and of no further force of effect. Please be further advised that, pursuant to Section 2.4(a)(iii), Transcience and YvB hereby direct the Escrow Holder (as defined in the Agreement) to return to Transcience and YvB all property (tangible, intangible, personal, intellectual and other), bills of sale, assignments and UCC financing statements and other documents and instruments, and the Trade Secrets held in escrow under the Agreement, and further demand that BTT return to Transcience and YvB any and all tooling owned by BTT for the production of the Licensed Products and/or Sea-Monkeys® Properties.[1]

Additionally, pursuant to Section 2.4(a)(v), Transcience and YvB demand that BTT immediately cease selling, marketing or producing the Licensed Products and Sea-Monkeys® Properties, and hereby declares any and all rights granted to BTT under the Agreement null and void.

---

[1] The term "Licensed Products" is defined at page 1 of the License Agreement. The term "Sea-Monkeys® Properties" is defined in Section 1 of the Agreement.



Big Time Toys, LLC
January 18, 2013
Page 2 of 2

      Please contact the undersigned immediately so that we may coordinate the orderly return of my clients' property and the smooth transition of the production, manufacture, sales and marketing of Sea-Monkeys® Properties from you to my clients.  We look forward to hearing from you.

      Finally, this letter is without prejudice to, and shall not construed as a waiver of, any and all of Transcience and Yolanda von Braunhut's rights and remedies under the Agreement, the License Agreement, or otherwise, at law or in equity, all of which are expressly reserved.

                         Very truly yours,

                         Christopher P. Milazzo

cc:    Jeffrey Kramer, Esq. (via email only)

EXHIBIT E



**DECOTIIS**
DeCotiis, FitzPatrick & Cole, LLP

OFFICE
GLENPOINTE CENTRE WEST
500 FRANK W. BURR BLVD. SUITE 31
TEANECK, NEW JERSEY 07666
T: 201.928.1100   F: 201.928.0588
WWW.DECOTIISLAW.COM

DIRECT
JEFFREY G. KRAMER, ESQ.
JKRAMER@DECOTIISLAW.COM
201.907.5234

January 22, 2013

Yolanda von Braunhut
Transcience Corporation
6200 Chapmans Landing Road
Indian Head, MD 20640-3040
Attn.: Chief Executive Officer

Sichenzia Ross Friedman Ference LLP
61 Broadway, 32nd Floor
New York, NY 10006
Attn: Michael H. Ference, Esq.

Re:   Purchase Agreement and Amendment to License Agreement, dated as of May 1,
      2009, by and among Big Time Toys, LLC, Yolanda von Braunhut, Transcience
      Corporation and Sichenzia Ross Friedman Ference LLP (the "Amendment"),
      which amended a License Agreement, dated June 26, 2007 (the "Agreement")

      Notice of Cross Default

      Notice of Objection Pursuant to Section 19(c) of the Amendment

Dear Ms. von Braunhut and Mr. Ference:

     We are responding on behalf of Big Time Toys LLC ("BTT") to letters from Sichenzia
Ross Friedman Ference LLP, dated December 20, 2012 and January 18, 2013, in connection with
the above matter (the "Letters").

     BTT has reviewed the assertions in the Letters and disagrees that any default under the
Amendment or Agreement has occurred.  We call to your attention Section 2.2(a) of the
Amendment, which provides "All payments hereunder and under the License Agreement,
including the Minimum Royalty, shall be a nonrefundable advance against any amounts due to
Transcience and YvB.  **It is expressly agreed that all such payments due on and after the
Effective Date shall be applied to the payment of the Purchase Price.**" (Emphasis added).
According to BTT's records, payments made by BTT to Ms. von Braunhut from May 1, 2009
through November 30, 2012 total in excess of the Initial Purchase Price of $5,000,000.  We



05-2163 1524445.1                    TEANECK · NEW YORK

**DECOTIIS**

January 22, 2013
Page 2

further call to your attention that recent actions taken by the United States Fish and Wildlife Service, as well as foreign governments, with respect to pouches supplied by Transcience Corporation, materially adversely affected BTT's ability to market and sell the products in certain markets.  Such acts, we believe, constitute a force majeure of the type described in Section 20.G. of the Agreement and give rise to other defenses.  Accordingly, it is BTT's position that no default has occurred.

We further call to your attention that Transcience Corporation and Yolanda von Braunhut have chronically failed to comply with the Amendment, particularly Section 5(c), with respect to the supply of pouches to BTT.  Such failure constitutes a default under the Amendment.

Finally, although no notice has been provided by Transcience Corporation or Yolanda von Braunhut, this letter shall serve as BTT's Notice of Objection pursuant to Section 19(c) of the Amendment.

We trust you understand that BTT disputes that the Amendment and Agreement have been terminated and that you will be guided accordingly.

This letter is without prejudice to, and is not a waiver of, any and all of BTT's rights and remedies under the Amendment and/or the Agreement, or otherwise, at law or in equity, all of which are expressly reserved.

If you have any questions concerning the enclosed, please feel free to contact me.

Sincerely,

Jeffrey G. Kramer

EXHIBIT F

# SICHENZIA ROSS FRIEDMAN FERENCE LLP
### ATTORNEYS AT LAW

January 29, 2013

*Via E-mail and First Class Mail*

Jeffrey G. Kramer, Esq.
DeCotiis, Fitzpatrick, Cole & Wisler, LLP
Glenpointe Center West
500 Frank W. Burr Boulevard, Suite 31
Teaneck, New Jersey 07666

      Re:    Purchase Agreement and Amendment to License Agreement
              Between Big Time Toys, LLC and Transcience Corporation and
              Yolanda von Braunhut, dated as of May 1, 2009 (the "Agreement")

              Notice of Termination

              <u>Response to Notice of Cross-Default</u>

Dear Mr. Kramer:

      I write in response to your letter, dated January 22, 2013 and in furtherance of the January 22, 2013 telephone conference between the parties and counsel.

      Please be advised that Transcience Corporation ("TSC") and Yolanda von Braunhut dispute the contentions raised in your letter. First, it is my clients' position that Big Time Toys, LLC ("BTT") has not fully paid the Initial Purchase Price under the Agreement. BTT was required to make monthly minimum royalty payments of $62,500 to Ms. Braunhut in December 2012 (and thereafter) until BTT paid the sum of $5,000,000. As you know, BTT failed to make the payment due for December 2012, and failed to cure within fifteen (15) days after notice of such default. As a result, my clients exercised their rights under the Agreement and, among other things, terminated the Agreement. Accordingly, my clients deem the Agreement null, void and of no further force or effect.

      Second, it is my understanding that the issues raised by the United States Fish and Wildlife Service and certain European governments have been resolved. Accordingly, such issues do not excuse BTT's failure to make the payments required under the Agreement.

      Third, neither TSC nor Ms. von Braunhut have defaulted in their obligations under the Agreement. Your convenient cross-noticing of a purported default is clearly a manufactured attempt to excuse BTT's failure to make the payments required under the Agreement. Neither TSC nor von Braunhut are in default of any provision of the Agreement or License Agreement. Further, since the parties entered into the Agreement, BTT has never noticed any purported default with to pouch production. Indeed, BTT has inexplicably and without justification failed to pay for a pouch production that it ordered.



61 BROADWAY | NEW YORK, NEW YORK 10006
T 212 930 9700 | F 212 930 9725 | WWW.SRFF.COM

Jeffrey G. Kramer, Esq.
January 29, 2013
Page 2 of 2

Finally, please be advised that my clients reject your offer to modify the Agreement as discussed during the January 22, 2013 conference call. As discussed above, my clients deem the Agreement terminated.

Notwithstanding, in settlement of the disputes between the parties, my clients are willing to reinstate the Agreement and the License Agreement for all territories, except Australia, on the terms and conditions contained therein (without any modification, except as to territory). Further, based upon your client's new claim with respect to the payment of the Initial Purchase Price, my clients would also require that BTT concede that the payments for BTT's purchase of pouches are not credited against the Initial Purchase Price and that the $5,000,000 Initial Purchase Price has not been paid, as well as cure its default in the payment of the minimum royalty for December 2012 and January 2013.

Alternatively, my clients would be willing to entertain an offer of a new license agreement that provides for a reduced royalty for a reduced geographic territory, or for a reduction in the properties and/or rights licensed.

This letter is without prejudice to, and shall not construed as a waiver of, any and all of TSC and Ms. von Braunhut's rights and remedies under the Agreement, the License Agreement, or otherwise, at law or in equity, all of which are expressly reserved.

Please call if you have any questions, or if you wish to discuss this matter further.

Sincerely,

Christopher P. Milazzo

cc::   Yolanda von Braunhut

# EXHIBIT G

February 6, 2013

*PRIVILEGED AND CONFIDENTIAL*
*FOR SETTLEMENT PURPOSES ONLY*

*Via Facsimile and Federal Express*

Big Time Toys, LLC
708 Berry Road
Nashville, TN 37204
Attention: Jamie O'Rourke

<div style="margin-left:2em">

Re:   Purchase Agreement and Amendment to License Agreement
      Between Big Time Toys, LLC and Transcience Corporation and
      <u>Yolanda von Braunhut, dated as of May 1, 2009 (the "Agreement")</u>

</div>

Dear Jamie:

As you know, this firm represents Transcience Corporation ("Transcience") and Yolanda von Braunhut ("YvB") in connection with the Agreement. I write to follow up on our conversation yesterday regarding a possible resolution of the present dispute between the parties concerning the termination of the Agreement.

While my clients firmly believe that the Agreement (together with the License Agreement) was validly and effectively terminated pursuant to this firm's January 18, 2013 letter, they are prepared to amicably resolve the dispute regarding same to avoid litigation costs on the following material terms and conditions:

- Big Time Toys, LLC ("BTT") acknowledges that the Agreement and the License Agreement are terminated and relinquishes any and all rights thereunder;

- Transcience shall pay BTT the sum of $75,000 in full and final settlement of all disputes between the parties;

- Transcience shall waive its right to recover the December 2012 and January 2013 minimum royalty payments of $62,500 which BTT failed to pay;

- Transcience shall purchase BTT's present inventory of pouches at cost;

- BTT shall return and/or turn over all tooling used by BTT in connection with the manufacture of the Licensed Products and/or Sea-Monkeys ® Properties;

- The parties shall exchange general releases;

- BTT shall indemnify Transcience and YvB for any claims brought by BTT's distributors, suppliers or manufacturers of the Licensed Products and Sea-Monkeys® Properties; and

- The parties shall execute a formal, written agreement setting forth the agreed terms.

This letter is for settlement purposes only, and nothing contained herein shall create any binding obligation upon Transcience and YvB.  Transcience and YvB shall not be bound by any terms in connection with the potential resolution of this agreement unless and until the parties execute a formal, written settlement agreement.  Further, this letter s without prejudice to, and shall not construed as a waiver of, any and all of Transcience and Yolanda von Braunhut's rights and remedies under the Agreement, the License Agreement, or otherwise, at law or in equity, all of which are expressly reserved.

Very truly yours,

Christopher P. Milazzo

cc:     Jeffrey Kramer, Esq. (via email only)

# EXHIBIT I

New York Civil Practice Law & Rules
- Article 50 –
§ 5001 Interest to Verdict, Report or Decision

§ 5001. Interest to verdict, report or decision. (a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission deprivingor otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

(b) Date from which computed. Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interestshall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

(c) Specifying date; computing interest. The date from which interest is to be computed shall be specified in the verdict, report or decision. If a jury is discharged without specifying the date, the court upon motion shall fix the date, except that where the date is certain and not in dispute, the date may be fixed by the clerk of the court upon affidavit. The amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered or the report or decision was made, and included in the total sum awarded.

# EXHIBIT J

## 15 USC §1117
### Recovery for violation of rights; profits, damages and costs; attorney fees; treble damages

(a)     When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d) [15 USC 1125(a) or (d)], or a willful violation under section 43(c) [15 USC 1125(c)], shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32 [15 USC § §1111, 1114], and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

(b)     In assessing damages under subsection (a), the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 32(1)(a) of this Act (15 U.S.C. 1114(1)(a)) or section 220506 of title 36, United States Code, that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 34(d) of this Act (15 U.S.C. 1116(d)), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621(a)(2) of the Internal Revenue Code of 1986 [26 USC §6621(a)(2)], commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

(c)    In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--

    (1) not less than $ 500 or more than $ 100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

    (2) if the court finds that the use of the counterfeit mark was willful, not more than $ 1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

(d)    In a case involving a violation of section 43(d)(1) [15 USC 1125(d)(1)], the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $ 1,000 and not more than $ 100,000 per domain name, as the court considers just.

(e)    In the case of a violation referred to in this section, it shall be a rebuttable presumption that the violation is willful for purposes of determining relief if the violator, or a person acting in concert with the violator, knowingly provided or knowingly caused to be provided materially false contact information to a domain name registrar, domain name registry, or other domain name registration authority in registering, maintaining, or renewing a domain name used in connection with the violation. Nothing in this subsection limits what may be considered a willful violation under this section.

EXHIBIT K

Big Time Toys.



Big Time Toys.



Big Time Toys.



# EXHIBIT L

| Toys | Partners | Company | Contact |

## Contact Us

**Big Time Toys, LLC**
708 Berry Road
Nashville, TN 37204

800-419-3810
Bob.Wardell@bigtimetoys.com

**CLICK HERE for Employment Opportunities**

**Moon Shoes Replacement Rubber Bands**
U.S. customers can send a check for $7 to Big Time Toys at the above address
($15 for Canadian customers) for a pack of 50 replacement rubber bands.

**CPSIA Codes**

Big Time Toys,

## Our Company

Big Time Toys manufactures, markets, and sells its own branded products worldwide. Our products can now be found in specialty stores, mass merchants, supermarkets, drug stores, hardware stores, clubs and online retailers throughout the United States, Canada and Overseas.

Our mission is to serve toy shoppers (KIDS!) by bringing to market new, unique, and well-designed products. We strive to introduce exciting and clever products...faster than our competitors. We love products that beg the question, "Why didn't I think of that"? If one of our products can put a smile on a kid's (or adult's!) face, then we've accomplished our objective. Our products are innovative, clever, affordable, and fun!

Please browse our product pages, if you find something interesting, contact us to become a customer, or if you are a consumer, to find a retail store near you.

Big Time is headquartered in Nashville, TN and has its manufacturing management office in Hong Kong. Big Time is proud member of the TMA (Toy Manufacturing Association).

**CLICK HERE for Employment Opportunities**

# EXHIBIT M

Big Time Toys.



Big Time Toys.



Toys   Partners   Company   Contact

## The Amazing Live Sea-Monkeys®

The World's Only Instant Pets!®

Like us on Facebook!

THE AMAZING LIVE
Sea-Monkeys

Return to Toy Gallery

# EXHIBIT N

Big Time Toys.





# EXHIBIT O

## <u>17 USC § 106 – EXCLUSIVE RIGHTS IN COPYRIGHTED WORKS</u>

### § 106 . Exclusive rights in copyrighted works

Subject to <u>sections 107 through 122,</u> the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

# EXHIBIT P

## 17 USC § 501 - INFRINGEMENT OF COPYRIGHT

**(a)** Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A (a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A (a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

**(b)** The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

# EXHIBIT Q

## 17 USC § 504 - REMEDIES FOR INFRINGEMENT: DAMAGES AND PROFITS

**(a) In General.**— Except as otherwise provided by this title, an infringer of copyright is liable for either—

> **(1)** the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

> **(2)** statutory damages, as provided by subsection (c).

**(b) Actual Damages and Profits.**— The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

**(c) Statutory Damages.**—

**(1)** Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

**(2)** In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was:

> **(i)** an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or

> **(ii)** a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in section 118 (f)) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

## 17 USC § 505 – REMEDIES FOR INFRINGEMENT: COSTS AND ATTORNEY'S FEES

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

## 17 USC § 502 – REMEDIES FOR INFRINGEMENT: INJUNCTIONS

(a) Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

(b) Any such injunction may be served anywhere in the United States on the person enjoined; it shall be operative throughout the United States and shall be enforceable, by proceedings in contempt or otherwise, by any United States court having jurisdiction of that person. The clerk of the court granting the injunction shall, when requested by any other court in which enforcement of the injunction is sought, transmit promptly to the other court a certified copy of all the papers in the case on file in such clerk's office.

# EXHIBIT R

William Timmons, Esq.

## ⊛ Attorney at Law ⊛

25 Candee Avenue
Sayville, New York 11782
otzotzo@aol.com
**( 631 ) 750-5980**

November 19, 2013

DeCotiis, FitzPatrick & Cole, LLP
ATTN: Jeffrey G. Kramer, Esq.
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666
(201) 907-5234

COPY TO:
Big Time Toys, LLC
ATTN: Sam Harwell & Jamie O'Rourke
708 Berry Road
Nashville, TN 37204

Re:   **SEA- MONKEYS® trademark license**

Dear Mr. Kramer,

As you know, I have been retained by the Transcience Corporation ("*Transcience*") with regard to issues connected to its trademarked Sea-Monkeys® intellectual property.

Please let it be known by your client, Big Time Toys, LLC (**BTT**), that *Transcience* has been contacted by potential licensees of the **Sea-Monkeys®** product in exploration of forming mutually beneficial contractual relationships of significant monetary value.

*Transcience* is hopeful that any loose ends between **BTT** and itself will be resolved in such a way so as to NOT interfere with what is anticipated to be a series of jointly lucrative and mutually beneficial contractual relationships.

If there are any questions or concerns please do not hesitate to contact me.

Sincerely,

William Timmons, Esq.