# EXHIBIT A

# Affidavit of Yolanda von Braunhut

I, YOLANDA VON BRAUNHUT, declare as follows:

1. My name is **Yolanda von Braunhut**.
2. I reside at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.
3. I maintain a post office box address at PO Box 809, Byrans Road, MD 20616-0809.
4. I am the individual named as a Plaintiff in the action entitled *Transcience Corporation & Yolanda von Braunhut (individual) v. Big Time Toys, LLC* (Index Number: 13 CV 6642) that is now currently before the Court in the Southern District of New York (**SDNY**).
5. I married **Harold von Braunhut** on Valentine's Day in New York City in the year 1980.
6. **Harold** was the founder and Chief Executive Officer (**CEO**) of the *Transcience Corporation* (herein *Transcience*) until his untimely death in 2003.
7. After my husband died I became the **CEO** of *Transcience* and have been the **CEO** of *Transcience* ever since.
8. I played an active role in the operation and economic viability of *Transcience* all throughout my relationship with **Harold**.
9. As the **CEO** of *Transcience* I have further developed business acumen in dealing with all facets of the *Transcience* business model including but not limited to: wholesale sales, retail sales, manufacturing, graphic design, shipping, mass marketing, market placement, accounting, and negotiation with labor.
10. Based upon my knowledge, expertise, and experience as the **CEO** of *Transcience* I estimate that a wholesale marketer of the Sea-Monkeys® product will achieve a gross profit margin of between 30 and 40 percent (30% to 40%) from gross sales of the product.
11. The gross profit margin of paragraph #10 refers to all profit realized from sales of the product before payment of the royalty for the license.

Page 1
Affidavit of Yolanda von Braunhut

## Affidavit of Yolanda von Braunhut

12. While *Transcience* owns all the intellectual property rights to the various products that my husband created over his lifetime, the Sea-Monkeys® product is the only product in the *Transcience* catalog that has generated significant profits over the last 10 years.

13. All the other products in the *Transcience* catalog have produced minimal profits over the past 10 years; minimal being defined as being collectively appreciably under $10,000 (Ten Thousand Dollars).

14. The Sea-Monkeys® product owned by *Transcience* has been readily available through major mass market retailers (including but not limited to: Walmart, Toys-R-Us, K-Mart, etc.) throughout the United States of America and other markets around the globe.

15. Sales of the Sea-Monkeys® product through the major mass market retailers accounts for an overwhelming majority of the sales and profitably of the product.

16. In the period ending December 31st 2006 gross worldwide sales of the Sea-Monkeys® product exceeded $3,400,000 (**THREE MILLION FOUR HUNDRED THOUSAND DOLLARS**).  (**see Exhibit A of the Amended Complaint; Paragraph 1, D, [vii]; Page 6**)

17. *Transcience* entered into a license agreement with an option to purchase intellectual property with *Big Time Toys, LLC* in the year 2007 that was subsequently modified in the year 2009.

18. The agreement provided that *Big Time Toys, LLC* would pay a royalty to *Transcience* to manufacture (in part), market, and sell *Transcience's* Sea-Monkeys® product.

19. Additionally, the 2009 modification of the agreement provided that the monthly royalty payment **would be applied** to the initial purchase price of the Sea-Monkeys® product.

20. The agreement gave *Big Time Toys, LLC* the right and authority to sell the

Page 2

Affidavit of Yolanda von Braunhut

## Affidavit of Yolanda von Braunhut

Sea-Monkeys® product to and through retailers in the United States and throughout the world.

21. *Big Time Toys, LLC* paid to *Transcience* a monthly royalty payment of $62,500 pursuant to the terms of the agreement.

22. *Transcience* was dependent on this royalty payment for its profitability.

23. *Big Time Toys, LLC* gave me notice over the telephone 4 days before a royalty payment was due on December 10th 2012 that *Big Time Toys, LLC* would NOT be making the December 10th 2012 royalty payment.

24. *Big Time Toys, LLC* did not give me written notice of its intention not to make the December 10th 2012 royalty payment.

25. *Big Time Toys, LLC* did NOT make the December 10th 2012 royalty payment.

26. *Transcience* sent notice to *Big Time Toys, LLC* of their failure to make a royalty payment in the form of a letter entitled "NOTICE OF DEFAULT" sent to the main offices of *Big Time Toys, LLC* on December 20, 2012.

27. *Transcience* effectively declared 15 days after the receipt of the "NOTICE OF DEFAULT" by *Big Time Toys, LLC* that the 2009 Amendment Agreement and the 2007 License Agreement were "null and void and of no further force of effect" in a letter sent to *Big Time Toys, LLC* dated January 18, 2013.

28. Despite the license agreement between *Transcience* and *Big Time Toys, LLC* being effectively terminated pursuant to the terms of the agreement *Big Time Toys, LLC* continued to sell and profit from the Sea-Monkeys® product owned by *Transcience*.

29. *Big Time Toys, LLC* indicated to me that they would continue to sell the Sea-Monkeys® product.

30. *Big Time Toys, LLC* indicated to me that if I tried to circumvent the contractual ties *Big Time Toys, LLC* had with the major mass market retailers of the Sea-Monkeys® product that they would act to destabilize

Page 3

**Affidavit of Yolanda von Braunhut**

## Affidavit of Yolanda von Braunhut

the market position of the Sea-Monkeys® product with these major mass retailers by indicating to them that *Big Time Toys, LLC* had a valid license and right to sell the Sea-Monkeys® product.

31. Such a representation by *Big Time Toys, LLC* to the major mass market retailers, based upon my knowledge and interaction with the major mass market retailers, could likely result in the major mass market retailers pulling the Sea-Monkeys® product entirely off the shelf.

32. Since *Big Time Toys, LLC* ceased making royalty payments to *Transcience, Transcience* has been unable to profit from its Sea-Monkeys® product.

33. Since *Big Time Toys, LLC* ceased making royalty payments to *Transcience, Transcience* has ceased to be a profitable enterprise.

34. If I and my company are immediately enabled to deal directly with the market retailers of my company's Sea-Monkeys® product without interference from *Big Time Toys, LLC* I am confident that I will be able to instantly reestablish the profitably of my company's Sea-Monkeys® product.

35. Since *Big Time Toys, LLC* ceased making royalty payments to *Transcience, Transcience* has been unable to compensate me for my performance as the **CEO** of *Transcience*.

36. The *Transcience* corporate bank accounts are currently funded with negligible amounts.

37. My personal bank accounts are currently funded with negligible amounts.

38. *Big Time Toys, LLC* did not at any point since their breach of the agreement in December of 2012 and the subsequent termination of the agreement in January of 2013 pursue legal process to clarify the relative positions of the parties.

39. *Big Time Toys, LLC* did not elect to pursue legal process despite its farfetched claim that it had paid the Initial Purchase Price in conformity with the 2009 agreement.

Page 4

Affidavit of Yolanda von Braunhut

## Affidavit of Yolanda von Braunhut

40. I was hopeful and confident all along, due to my belief that *Big Time Toys, LLC* did not have a tenable or valid position, that the matter would be settled independent of legal intervention in the Spring of 2013.

41. Attempts to settle the matter in the Spring of 2013 were unsuccessful.

42. I was unable to maintain the services of my previous legal counsel due to a lack of being able to provide legal fees upfront.

43. I was considering proceeding in a *pro se* capacity (aka self-representation) at the start of the Summer of 2013 but was unsure of how and where to begin.

44. William Timmons, Esq. is a long time family friend who was given notice of my tribulations with *Big Time Toys, LLC* at the end of July 2013.

45. I was able to retain the services of William Timmons, Esq. in August of 2013.

46. Mr. Timmons did not require an upfront fee to pursue the matter.

47. Mr. Timmons, upon my direction, initiated the current action against *Big Time Toys, LLC* in September of 2013.

48. In October of 2013 I consented to give *Big Time Toys, LLC* an additional 30 days to ANSWER the COMPLAINT for the purposes of pursuit of settlement.

49. Despite initial expectations that we would settle the matter independent of legal intervention we were unable to do so at that time.

50. The same relief now being requested was requested in the original COMPLAINT filed in September 2013.

51. While I have been able to withstand the denial and suspension of profit from my company's Sea-Monkeys® product in the short term, the weight and magnitude of harm from the denial and suspension of profit has now, at the time of the current request for preliminary injunctive relief, reached critical and unsustainable levels.

52. My husband and I purchased the residence where I currently reside in the year 1984.

53. With subsequent purchases of adjacent parcels my residence now encompasses approximately 150 acres.

Page 5

## Affidavit of Yolanda von Braunhut

54. The property includes the house where I live, an organic farm, and a wildlife refuge.

55. Due to my current poor fiscal posture, visited upon me by *Big Time Toys, LLC*, my personal credit rating has been negatively compromised (**see Exhibit 1**).

56. To successfully and safely maintain and secure the house, farm, and wildlife refuge on my property I have employed several individuals over the years.

57. These individuals have assisted me with providing food for the local wildlife, keeping the roads open, grounds keeping, home maintenance, and security (especially during hunting season).

58. Due to my current poor fiscal posture, visited upon me by *Big Time Toys, LLC*, I have had to cease to continue to employ these individuals.

59. I am currently 66 years of age and live alone at my residence.

60. While I am currently in excellent health, I have an immediate need for dental attention relating to fillings, filings, and scaling that I have not been able to attend to since *Big Time Toys, LLC* ceased making royalty payments to *Transcience*.

61. My residence has 3 electrical accounts with the local electric company.

62. One account is for the Old Barn, one for the New Barn, and one powers my home residence.

63. Due to the current fiscal hardship visited upon me by *Big Time Toys, LLC* the electricity for the Old Barn has been turned off (**see Exhibit 2**).

64. Due to the current fiscal hardship visited upon me by *Big Time Toys, LLC* I have not been able to provide protection to the wildlife that live on my property and have not been able to fill the wildlife feeders that are located throughout my property.

65. I own an exotic *Lessor Sulphur Crested Cockatoo*, a member of the *Psittaciformes* order or parrot family, named **Josephine**.

Page 6

**Affidavit of Yolanda von Braunhut**

## Affidavit of Yolanda von Braunhut

66. **Josephine** flew into my life through the window of a building located at 200 5th Avenue at 23rd Street in New York City that I worked in with my husband **Harold** in September of the year 1981.

67. **Josephine** has been a cherished pet and partner ever since.

68. *Sulphur Crested Cockatoo's* can live up to 100 years of age.

69. **Josephine** has developed some health issues over the past year that I have been unable to attend to from the time when *Big Time Toys, LLC* ceased making royalty payments to *Transcience.*

70. Due to the current fiscal hardship visited upon me by *Big Time Toys, LLC* I have been forced to apply for food stamps (**see Exhibit 3**).

71. Due to the current fiscal hardship visited upon me by *Big Time Toys, LLC* I have been forced to apply for assistance to heat my residence.

72. Due to the current fiscal hardship visited upon me by *Big Time Toys, LLC* I have been unable to make mortgage payments for the past 14 months for a loan on a portion of my property.

73. If I am unable to bring the mortgage account up to date the owner of the mortgage *will* foreclose on the property (**see Exhibit 4**).

74. Due to my current poor fiscal posture, visited upon me by *Big Time Toys, LLC*, I was unable to pay the real estate taxes due on my property in Charles County, Maryland on September 30th of 2013 (**see Exhibit 5**).

75. Charles County provides that if a property owner is unable to pay the real estate taxes due by the first week of March that a reminder notice will be mailed to the owner of the property.

76. Charles County then provides that if the tax arrears are not paid by the first week of April that the county will list the property in an advertisement for property to be auctioned and sold at a tax sale in May.

77. If I am still unable to pay the real estate taxes due on my property by the second week of May then Charles County will auction off and sell my property to account for property tax arrears.

Page 7

Affidavit of Yolanda von Braunhut

## Affidavit of Yolanda von Braunhut

78. I am unable to pay for the real estate taxes due on my property because *Big Time Toys, LLC* has interrupted and interfered with my ability to profit from my company's Sea-Monkeys® product.

79. If the relief I am seeking is not granted, I will continue to suffer personal harms and will likely lose and be unable to recover property that I now own.

80. *Big Time Toys, LLC* has not given to me any notices of continuing sales of the Sea-Monkeys® product since the contract with *Big Time Toys, LLC* was effectively terminated in January of 2013.

81. I am concerned that if ongoing and future gross worldwide sales of my company's Sea-Monkeys® product is found to be less than the amount of $3,400,000 (**see Exhibit A of the Amended Complaint; Paragraph 1, D, [vii]; Page 6**), when *Big Time Toys, LLC* first became associated with the product, that *Big Time Toys, LLC* is irreparably harming the market posture of my company's Sea-Monkeys® product.

82. While I have been able to withstand the denial and suspension of profit from my company's Sea-Monkeys® product in the short term, I believe that continuing denial and suspension of profit *will* visit irreparable harms upon me personally.

83. I am seeking the issuance of a preliminary injunction to permit my company to reconnect to the profitably of my company's Sea-Monkeys® product.

84. If a preliminary injunction is not GRANTED (affording me the requested immediate relief) continuing, unnecessary, unjustifiable, and profound hardship resulting in irreparable harms will be visited directly upon both *Transcience* and myself.

# Affidavit of Yolanda Von Braunhut

I declare under penalty of perjury under the laws of the United States of America that the foregoing to the best of my knowledge is true and correct.

Executed this 21st day of JANUARY, 2014

at BRYANS ROAD, MD.

_Yolanda Von Braunhut_         1/21/14
Yolanda Von Braunhut            Date

Sworn to before me this

21ST day of JANUARY, 2014

_Gloria M. Davies_
GLORIA M. DAVIES
Notary Public
COMMISSION EXPIRES 5-8-2016

**Signature Page**

Affidavit of Yolanda Von Braunhut