UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――x
                                              :
TRANSCIENCE CORPORATION &                     :
YOLANDA VON BRAUNHUT (individual)             :
                          Plaintiffs          :
                                              :
          -against-                           :   Index No.:   13 CV 6642
                                              :
                                              :
BIG TIME TOYS, LLC                            :
                          Defendant.          :
―――――――――――――――――――――――――――x


# MEMORANDUM of POINTS and AUTHORITIES

# in OPPOSITION to

# DEFENDANT'S MOTION TO DISMISS


*Plaintiffs Transience Corporation & Yolanda von Braunhut*

March 4, 2014

# **TABLE OF CONTENTS**

<u>Page</u>

PRELIMINARY STATEMENT……………………………………………………………….3

FACTUAL OVERVIEW……………………………………………………………………..….3

ARGUMENT:
**DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED**……………………….....5

    1. **introduction;**……………………………………………………………..............5

    2. **the semantics of "acknowledge" versus "adjudicate";** …………………….....6

    3. **incorporation by reference;** …………………………………………….…..7

    4. **the lack of an alternate forum to redress Plaintiffs' severe and ongoing injury by the unclean hands of the Defendant**……………………….8

    5. **Counter Position to Point I:**...........................................……………….…....6

    6. **Counter Position to Point II:**...........................................……….…………...9

    7. **Counter Position to Point III:**...........................................……….…………12

    8. **Counter Position to Point IV:**...........................................……….…………13

    9. **Counter Position to Point V:**...........................................………….…………14

CONCLUSION…………………………………………………………………………………15

**Preliminary Statement**

**This memorandum is respectfully submitted to the United States District Court for the Southern District of New York on behalf of Plaintiffs Transcience Corporation & Yolanda von Braunhut (individual)** in **opposition to the Defendant's Motion to Dismiss the matter in its entirety pursuant to Federal Rule of Civil Procedure** (FRCP) **12(b)(6) for failure to state claims on which relief may be granted.  This memorandum will petition the Court to DENY the motion with particular attention toward**:

1. the semantics of "acknowledge" versus "adjudicate";

2. incorporation by reference;

3. the lack of an alternate forum to redress Plaintiffs' severe and ongoing injury by the unclean hands of the Defendant.

**FACTUAL OVERVIEW**

The Plaintiffs (herein alternatively *Transcience*) and the Defendant (herein alternatively *BTT*) entered into a contractual relationship in the year 2007.  *Transcience* licensed to *BTT* the right to manufacture (in part), market, and sell *Transcience*'s trademarked Sea-Monkeys® product.  The 2007 contract provided that *BTT* would pay to *Transcience* a monthly royalty payment.  The 2007 contract provided an option for the Defendant to independently purchase the Sea-Monkeys® trademark from *Transcience* for a price of ten million dollars.  That contract was subsequently amended in the year 2009.  The 2009 contract provided that the monthly royalty payment would now be applied to the previously established purchase price.

The contractual relationship operated without significant incident until December 10th of 2012 when *BTT* abruptly ceased to make its monthly royalty payment.  *BTT* had, up to that point, paid about 3 million dollars of royalty payments for the license to sell *Transcience*'s trademarked Sea-Monkeys® product which would, pursuant to the 2009 amendment, be applied to the previously established purchase price.  *BTT* attempted, at that time, to get *Transcience* to consent to accept a lower purchase price but *Transcience* declined to do so.

The 2009 Amendment Agreement, namely *Section 2.4.(a)* <u>Remedies for BTT failure to Pay Royalties</u> (**see Amended Complaint Exhibit B; page 6**), provided that, in the event of a failure to make a royalty payment that the Licensee shall have 15 days from the date of receipt of notice of failure to make a royalty payment to cure any such default. The evidence shows that the Plaintiffs sent notice to Defendant of the failure of the Defendant to make a royalty payment in the form of a letter entitled "NOTICE OF DEFAULT" sent to the main offices of Defendant on December 20, 2012. (**see Amended Complaint Exhibit C**) Plaintiff effectively declared,[1] fifteen days after the receipt of the "NOTICE OF DEFAULT" by Defendant without the cure of the default, that the 2009 Amendment Agreement and the 2007 License Agreement are "null and void and of no further force of effect" in a letter sent to the Defendant dated January 18, 2013. (**see Amended Complaint Exhibit D**)

*BTT*, however, continued and continues to sell and profit from *Transcience*'s trademarked Sea-Monkeys® product despite demands that it cease doing so. *BTT* has not attempted to compensate *Transcience* for *Transcience*'s trademarked Sea-Monkeys® product nor has *BTT* attempted to pursue any sort of legal action with regard to the matter. *Transcience* retained its current counsel in the Summer of 2013 and filed the current action shortly thereafter.

*BTT*'s two pronged and self-contradicting defense to the multiple causes of action set forth in its Answer are, firstly, that an external event prevented it from making the December payment and, secondly, that it had also somehow already paid in full.

A motion petitioning the Court for equitable relief in the form of a preliminary injunction is now currently pending before the Court. The motion for equitable relief, pursuant to the

---

[1] The declaration of termination is consistent with *Section 2.4.(a)(i)* of the 2009 Amendment Agreement. (**see Amended Complaint Exhibit B; page 6**)

Federal Rules of Civil Procedure (**FRCP**) Rule 65, provides that the Court on its own accord may consolidate the motion for a preliminary injunction into a trial on the merits.

> namely, (2) *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing . . .[2]

As discussed in detail below, the Plaintiffs petition the Court to not grant the Defendant's motion to dismiss the action. Alternatively, Plaintiffs petition the Court for permission to produce a more definite statement.

## ARGUMENT:
## DEFENDANT'S MOTION FOR DISMISSAL SHOULD BE DENIED

1. **introduction;**

It must be noted that the counts that Plaintiffs allege as against the Defendant in the Amended Complaint are not placed in any order of hierarchy. The action as a whole is, in fact, listed on the initiating "Civil Cover Sheet" as a trademark suit which comes in as Count 5 in the Amended Complaint. The trademark infringement allegation is also utilized to establish the subject matter jurisdiction of the Court in both the original and the amended complaints. The breach of contract count is, for all practical purposes, a count of less legal weight than the others included since that count does not provide for the assessment of punitive damages as against the Defendant. Nonetheless, the calculation of damages, relative to the other counts, is immediately fashionable as against the Defendant due, if nothing else, to simple math. The Plaintiffs argue that each and every count is worthy of merit relative to the facts of the case and, further argue, that the trier of fact should be granted insight into the full gravity of harms caused by the

---

[2] Federal Rules of Civil Procedure; Rule 65; Injunctions and Restraining Orders, (a) Preliminary Injunction; (2)

Defendant when it contemplates the full measure of damages to be assessed against the Defendant.

>**Counter Position to Point I:**
>2. **the semantics of "acknowledge" versus "adjudicate";**

The Defendant in its motion to dismiss the action relies heavily upon what it perceives to be a night and day difference between the words "acknowledge" and "adjudicate". Plaintiffs do not agree with such an assertion as it relates to the current action. Dictionary.com defines the word "acknowledge" as follows:

>ac·knowl·edge
>1. to admit to be real or true; recognize the existence, truth, or fact of
>2. to show or express recognition or realization of
>3. to recognize the authority, validity, or claims of [3]

The same website defines the word "adjudicate" as follows:

>ad·ju·di·cate
>1. to pronounce or decree by judicial sentence.
>2. to settle or determine (an issue or dispute) judicially [4]

In the context of the Amended Complaint the Plaintiffs are asking the Court to recognize the existence, the truth, the validity, or the claims of its allegation that the Defendant had breached the agreement as between the parties. The acknowledgment that the Plaintiffs seek of the Court is based upon its presentation in the Amended Complaint and its accompanying exhibits of uncontroverted facts that illustrate that the Defendant had in fact breached the agreement. The evidence of breach in the Amended Complaint is clear on its face. There is no *bona fide* issue or dispute here that requires inquiry beyond acknowledgement of the facts when it comes to the issue of whether or not there was a breach.

---

[3] http://dictionary.reference.com/browse/acknowledge?s=t
[4] http://dictionary.reference.com/browse/adjudicate?s=t

On December 10th of the year 2012 the Defendant did NOT make its monthly royalty payment as it was obligated to do pursuant to the terms of the agreement between the parties. The Plaintiffs then, in conformity with the terms of the agreement between the parties, effectively terminated the agreement. The Plaintiffs' multiple causes of action begin at that very juncture. This is the acknowledgement or validity of claim that the Plaintiffs seek from the Court. The prayer for relief, for all practical purposes, begins with the January 18th effective termination of the entirety of the contractual relationship between the parties.

The unnecessary inclusion of "acknowledge" versus "adjudicate" into the Amended Complaint was predicated on eliminating the possibility of reformation or rectification of contract. The Plaintiffs are now abundantly aware, however, that these equitable defenses will not be ultimately available to the Defendant due to the Defendant's unclean hands and otherwise corrupt behavior as demonstrated throughout. If the Court is unable or unwilling to resolve the difference between acknowledgment and adjudication then the Plaintiffs ask the Court that they be given leave to produce a more definite statement. The Plaintiffs, by all measure of means, with respect to each claim presented petition the Court to adjudicate fully the 4 corners of the contract between the parties and anything else relevant to the relief that the Plaintiffs seek.

3. **incorporation by reference;**

The Defendant has noted that the Plaintiffs included in paragraph 80 of the Original Complaint the statement that, "Plaintiffs were in compliance with the terms of the agreement between the parties over the lifespan of the now terminated agreement." The Defendant in its Answer to the Original Complaint had also the opportunity to respond to this statement in full. The Amended Complaint somewhat inexplicably leaves this paragraph out. The Plaintiffs ask

that paragraph 80 of Exhibit A of Defendant's motion to dismiss, by means of incorporation by reference, be incorporated to address any perceived deficiency in the Amended Complaint.

The Defendant cites *Ellis Enterprises, Inc. v. Software Packaging Associates, Inc.* 155 Fed. Appx. 405 (10th Cir. 2005) to back its claim for dismissal. In that case, an individual had contracted with a software company to produce Bible study products. When the individual did not pay the company, the company sold the inventory to a third party. The court on appeal dismissed the eight count action after the defendant in its answer to the complaint had produced documentary evidence indicating that the individual was in breach of contract for failure to meet his payment obligation. While the Defendant in the current case is free to counter allege that the Plaintiffs have breached the agreement between the parties they have not produced any tangible evidence to indicate such.

It must be noted that the contractual agreement as between the parties initiated in the year 2007 and amended in the year 2009 warranted that the Plaintiffs produce essential trade secreted pouches on a regular basis. Aside from cashing the monthly royalty payment there was no other contacted for obligation to be performed by the Plaintiffs. There is no concrete evidence in the record to indicate that the Plaintiffs did not in fact perform adequately. It can therefore be inferred by the rather verbose Amended Complaint that the Plaintiffs had performed adequately all throughout.

4. **the lack of an alternate forum to redress Plaintiffs' severe and ongoing injury by the unclean hands of the Defendant.**

The arbitration clause in paragraph 10, on page 24 of the 2007 agreement states:

> "In the event of a disagreement between the parties with respect to this Agreement, either party, if they wish to adjudicate such disagreement shall submit the issue in dispute for arbitration . . ."

The Plaintiffs in consideration of initiating arbitration pursuant to the arbitration clause as contained within the agreement between the parties determined that it was not eligible for such relief based upon the fact that 1) due to the effective termination of the agreement between the parties the clause was no longer applicable and 2) Plaintiffs position that there is no *bona fide* disagreement or dispute between the parties to adjudicate.

The January 18, 2013 termination letter pursuant to the 2009 amendment on page 6 paragraph 2.4(a)(i) provides that in the event of the same sort of nonpayment by *BTT* as is evidenced here that *Transcience* shall be entitled to:

> "Declare this Agreement and the License Agreement to be terminated, in which case this Agreement and the License Agreement shall be deemed null and void and of no further force or effect;"

*BTT*'s written response to the notice of termination came *after* the termination. This is important because after the termination the arbitration clause is no longer exercisable. The Plaintiffs, after the breach and the subsequent continuance (without permission) of the Sea-Monkeys® business by the Defendant, was understandably confused about how to proceed. After retention of current counsel Plaintiffs have come to the collective opinion that the only proper forum for redress of the ongoing harms visited by the Defendant upon the Plaintiffs was the Southern District of New York (**SDNY**). As such the only recourse to an outright dismissal of the current action would be to re-file this same action with the **SDNY**.

### **Counter Position to Point II:**

The Plaintiffs dispute the Defendant's contention that that the claims for unjust enrichment, quasi-contract, and breach of the duty of good faith and fair dealing are insufficiently distinct from contractual claims. Compensatory damages in the State of New York "place the non-breaching party in as good a position as it would have been had the contract been

performed." *Brushton-Moira Cent. School Dist. v. Fred H. Thomas Assocs., P.C.,* 91 N.Y.2d 256, 261, 692 N.E.2d 551, 669 N.Y.S.2d 520 (N.Y. 1998). There is generally no providence for punitive damages in a breach of contract claim. Here, however, the facts indicate that the Defendant has performed all throughout the period of impasse in a malicious, harmful, greedy, deviant, and defiant manner.

The claims of unjust enrichment, quasi-contract, and breach of the duty of good faith and fair dealing do allow for the assessment and recovery of punitive damages. As such they are essential to Plaintiffs full measure of the gravity of harms visited upon it by the Defendant. These claims are essential to enforce a penalty as against the Defendant for its indecent and uncivil behavior. They are vital to visiting a penalty against the Defendant in such a way so as to give it pause to think twice before performing in the same despicable manner as they have all throughout the current impasse.

As noted in the petition for preliminary injunctive relief the Defendant had initially and somewhat belatedly invoked the defense of *force majeure* arguing that external circumstances had acted in such a severe way so as to prevent it from performing its contractual payment.[5] However, this argument was immediately followed by an absurd declaration that somehow they had already managed to purchase the property. (**see Amended Complaint; Exhibit E & Original Complaint; Exhibit H**) The intimation of this second, more expansive, and superseding argument has the effect of eclipsing and thereby erasing the first. As noted in the petition for equitable relief, how and/or why can/would you say please excuse my late payment and then say by the way I have already paid in full. The irony of this 2-pronged defense is that the second argument fails on its face. A plain reading, as noted in previous submissions to the

---

[5] The absurdity of the Defendant's defense argument is addressed in full in Plaintiffs' petition for preliminary injunctive relief.

Court, of 2.2 <u>Purchase Price</u> on page 4 of the 2009 Amendment and 2.4 <u>Remedies for BTT Failure to Pay Royalties</u> on page 6 can lead to no other conclusion.

And yet the Defendant, fraught with malice and ill-will, continues to present the phony proposition that somehow they have, after the fact, performed in conformity with the contract. The Defendant is, of course, entitled to its day in court and to the presentation of its misrepresentations to the trier of fact.  This only comes, however, at the expense of the potential assessment of substantial punitive damages.  It is one thing to advance an unfounded notion without consequence but quite another to be held fully accountable for the presentation of nonsense.

It is worth to continually note that the Defendant has not compensated, nor has attempted to address the issue of compensation, all throughout the period of impasse.  This absurdity of fact goes a long way toward bringing clarity to the unscrupulous posture of the Defendant.  Even if Defendant's fantastical and fraudulent notions of filling its payment obligations are of merit (and Plaintiffs scream they are NOT) the Defendant would still be mandated to make payments to the Plaintiffs for the second 5 million dollars of the 10 million dollar purchase price or about $15,625 per month.  Such non-addressment is worthy of punitive assessment.

A breach of contract claim in and of itself will not realize the full measure of damages in the current case.  A breach of contract claim would therefore remain sufficiently distinct from the claims of claims of unjust enrichment, quasi-contract, and breach of the duty of good faith and fair dealing.  As such the claims of unjust enrichment, quasi-contract, and breach of the duty of good faith and fair dealing should be preserved.

### Counter Position to Point III:

The Defendant lobbies that the claim of conversion should be dismissed because New York's economic loss doctrine bars non-contractual claims for economic losses that flow from a breach of contract. Here, however, the losses experienced by the Plaintiffs do not flow from the breach of contract claim. The losses here are independent and apart from the former contract. The conversion occurs in the absence of any contractual relationship. The losses experienced here flow from the Defendant's attempt to convert the Plaintiffs intellectual property into property of its own.

The Defendant has all along tried to present the impasse between the parties as some form of legitimate contractual dispute. Nothing can be farther from the truth. This case has been, beginning with the Defendant's breach of the agreement and right through when the Defendant refused to stop selling the Plaintiffs' intellectual property, all about converting the property of the Plaintiffs into the property of the Defendant. The Plaintiffs at trial will present to the trier of fact that the Defendant has been, in fact, attempting to steal Plaintiffs property. This theft, depicted for exactly what it is, permits the Plaintiffs to petition for the assessment of substantial punitive damages.

The Defendant at this point has simply and greedily absconded with 100% of the proceeds of Plaintiffs' property. Furthermore and to the point, the Defendant has not pursued legal action to clarify its own false claim of ownership to Sea-Monkeys® properties in much the same way that a thief would not choose to bring attention to property the thief has stolen. Instead, it has opted to wait out the Plaintiffs desperate attempt at legal intervention. Plaintiffs only option was and still is to seek out this Court's assistance for relief.

The conversion of Plaintiffs' intellectual property by the Defendant is therefore separate and distinct from any other claims that the Plaintiffs have made against the Defendant. As such the claim of conversion should be preserved.

**Counter Position to Point IV:**

The Defendant demonstrates its weakest position in its motion to dismiss with regard to its desire to dismiss the trademark and copyright infringement claims. Its posture relative to these claims also helps to shed light on its entire motion. The Defendant once again digresses into an "acknowledge" versus "adjudicate" rant. Here however, the use of the word acknowledgement with respect to the fact there was a breach of contract based upon the *prima facie* evidence presented of such in the Amended Complaint does not stray far from the definition of adjudication.

It may well be that the Defendant wishes the Court to adjudicate the validity of its defense to the action. However, it is notable that the Defendant has not proffered a singular logical position to justify or otherwise defend its dishonest behavior.

As noted all throughout the papers filed for the current action, Plaintiffs assert and the evidence confirms that the Defendant has been insincere all along. The evidence before the Court illustrates clearly that the royalty payments and the payments made for the pouches were separate and distinct payments.[6] The evidence before the Court shows that the contract between the parties was terminated due to non-payment by Defendant. The evidence shows that the contract was terminated in accordance with the terms of the contract. The evidence shows that Defendant was given notice of default, that the Defendant did not operate to cure the default, and that the contractual agreement was effectively annulled.

---

[6] The absurdity of the Defendant's defense argument is addressed in full in Plaintiffs' petition for preliminary equitable relief.

Defendant's assertion that the trade secret pouch purchase payments are to be somehow applied toward the initial purchase price is fraudulent on its face.  The Defendant has conjured up the current impasse.  The Defendant deliberately misrepresents the plain meaning of the contract in its filings with the Court to mislead the Court into believing that there is more to the impasse than simply the Defendant's own corrupted spirit.  Defendant willfully and maliciously continues to maintain a position that it knows to be false.

Defendant is reliant upon its misrepresentation of the former agreement between the parties for its defense.  As such, despite its pretensions to the contrary, it has no sustainable defense to the action.  Such insolent, unsustainable posture exposes the Defendant to the punitive liabilities as contained within the multiple counts of Plaintiffs Amended Complaint.

The Defendant has not set forth a valid defense to its stranglehold on Plaintiffs' valuable intellectual  property.  As such Plaintiffs' claims for trademark and copyright infringement should be preserved.

**Counter Position to Point V:**

With regard to the Plaintiffs' claim for tortuous interference with prospective business relations the Plaintiffs' present and will seek to prove at trial that it had indeed been contacted by prospective third parties with respect to Plaintiffs' Sea-Monkeys® product as evidenced by the letter referenced by the Defendant and included as the last exhibit in the Amended Complaint.  It is abundantly foreseeable that third parties would not only seek to enter business relations with respect to Plaintiffs' Sea-Monkeys® product but would, in fact, enter into such relations.  Furthermore, the Plaintiffs are anxious to present to the trier of fact the full extent of the Defendant's corrupt and contemptible posture.  The Plaintiffs have not disclosed the identity of

the potential licensees out of privacy considerations but will fully disclose all such identities at trial.

The Defendant has wholly manufactured and is solely responsible for the current impasse between the parties. As noted in the Amended Complaint this impasse has the ill effect of preventing other parties from entering into contracts with the Plaintiffs. The Defendant continues to misappropriate profit from Plaintiffs Sea-Monkeys® product and, in effect, without seeking judicial intervention itself has dared the Plaintiffs to do something about it. This is the sole reason for this lawsuit. This lawsuit is the sole recourse for the Plaintiffs. Once again, the current action is based NOT upon a gentlemen's disagreement over the terms of an agreement. This action stems from the Defendant's deliberate and unrepentant attempt to abscond with the Plaintiffs' money and property.

The Plaintiffs have alleged and demonstrated both prospective relations with third parties and Defendant's interference with those relations. The facts all throughout the Amended Complaint detail that the Defendant via its unfounded position and ongoing misappropriations has used dishonest, unfair, and improper means to deliberately harm the Plaintiffs. Finally, the injury to the business relationship is overtly evident as a product of the impasse artificially created by the defendant.

As such Plaintiffs' claim for tortuous interference with prospective business relations should be preserved.

## **CONCLUSION**

The Plaintiffs beseech the Court to sustain the action and permit the current action to continue so as to rightfully and properly give redress to the grievances that the Plaintiffs, as caused by the Defendant, have brought to the attention of the Court. Plaintiffs have maintained all along that while there is no real *bona fide* issue or dispute of fact in the current action that there is, in fact,

an impasse that disproportionally visits severe harm on only one side of the legal docket.  A dismissal of the action without prejudice at this early juncture would simply necessitate the reformulation and refilling of the same action in the same US district.  The facts that form the basis for the action currently before the Court are all too real and excruciatingly painful for the Plaintiffs.  There are active festering ongoing harms here, concocted and unleashed by the Defendant, which will not go away on their own.

In the event that the Court feels that more clarity, definition, or conformity to settled principles of pleading needs to be incorporated into the causes of action as they are now stated in the Amended Complaint then the Plaintiffs respectfully request leave to file a more definite statement for each and every cause of action.

WHEREFORE, Plaintiffs respectfully request the following relief:
- (1) the DENIAL of Defendant's Motion to Dismiss;
- (2) in the alternative, leave to produce a more definite statement or leave to file an Amended Complaint;
- (3) in the proactive, after addressing the above, the advancing of the trial on the merits and consolidating it with the hearing on the motion for the preliminary injunction either on papers or at oral argument in accordance with FRCP 65(a)(2);
- (4) and any such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

By: *s/ William Timmons*
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
 (631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT

Dated:  March 4, 2014