UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――x
                                          :
TRANSCIENCE CORPORATION &                 :
YOLANDA VON BRAUNHUT (individual)         :
                    Plaintiffs            :
                                          :
        -against-                         :   Index No.:    13 CV 6642
                                          :
                                          :
BIG TIME TOYS, LLC                        :
                    Defendant.            :
―――――――――――――――――――――――――――x

## PLAINTIFFS' REPLY MEMORANDUM of LAW in SUPPORT of PLAINTIFFS' MOTION for EQUITABLE INJUNCTIVE RELIEF

### Preliminary Statement

This reply memorandum is respectfully submitted to the United States District Court for the Southern District of New York on behalf of Plaintiffs **Transcience Corporation & Yolanda Von Braunhut (individual)** in support of Plaintiffs' Motion for Preliminary Injunctive Relief and, in the alternative, for consolidation of the entire matter pursuant to Federal Rule Of Civil Procedure (FRCP) Rule 65.  This reply memorandum will petition the Court to GRANT Plaintiffs' motion with particular attention toward:

1. **what is stated in agent of the Defendant Mr. O'Rourke's affidavit**

2. **what is left out of agent of the Defendant Mr. O'Rourke's affidavit**

3. **the fact that, there are no triable issues of fact; that all necessary factual issues are settled or so one-sided they need not be tried**

### BACKGROUND

The background of the case has been addressed in great detail in prior submissions to the Court.  The Plaintiffs reverently incorporate all such prior assertions of fact into this reply.

**ARGUMENT**

1. **what is stated in agent of the Defendant Mr. O'Rourke's affidavit**

The Plaintiffs' wish to bring to the attention of the Court some of the choice wording used by the Defendant in the presentation of its defense. The Defendant through its agent in the affidavit of James O'Rourke attached as an exhibit to "Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Injunctive Relief" makes much to do about the United States Fish and Wildlife Service (**USFWS**) disruption with the Sea-Monkeys® business model but then rather trivially indicates in paragraph 17 that at some point shortly thereafter that "the **USFWS** issues appear to have been resolved". If the issue was truly a "material disruption" of the sort described in paragraph 9 of the same affidavit then it stands to reason that this issue will either have been resolved with clarity or will continue to be an issue. It should be noted that the Plaintiffs' wholly dismiss the gravity of the apparently now settled issues with the **USFWS**.

As noted throughout Plaintiffs' prior submissions to the Court the *force majeure* issue can be deemed to have been voided by the Defendant's contemporaneous claim that it had already satisfied its payment obligation in full. Nonetheless, it needs to be noted that upon first being offered more time to pay the Defendant (**see Exhibit a; Affidavit of Yolanda von Braunhut 3/6/14; paragraph 8**) does not pursue this angle with a negotiation as to the time parameters upon which it can reasonably correct the deficiency. More on point, the Defendant does not proffer that it even requested more time to correct the deficiency. Instead, the evidence indicates that the Defendant sought to use the **USFWS** issue as the basis to novate the agreement between the parties. Therefore it can be deduced on these grounds alone, notwithstanding the mutually exclusive argument as echoed above, that the Defendant has waived its right as a matter of law to properly invoke the defense of f*orce majeure*.

Also of note is the fact that rather than ceding to the controlling terms of the agreement between the parties the Defendant starts to pontificate as to what margin of profit the Plaintiffs may have made relative to the pouch payments as seen in paragraphs 21 and 22 of the affidavit of James O'Rourke.  If the Defendant's position is that the pouch payments are to be counted toward the realization of the "Initial Purchase Price" of 5 million dollars why then would it seek to justify this notion by exploring whether or not the Plaintiffs' "earn a significant profit element from the sale of each pouch to the defendant"?[1]  This is indicative of a guilty mind and, if nothing else, diminishes the credibility of the Defendant.

Also noteworthy, is the Defendant's correspondence contained in Exhibit B of the affidavit of James O'Rourke.  In an email sent to George Atamian, an agent of the Transcience Corporation, on November 27, 2012 Mr. O'Rourke writes,

> "If necessary I am prepared to propose to BTT to source the pouches in China using standard Artemia eggs and food which are plentiful and sort the rest out with you later".

This is disturbing on 2 levels.  For one, how could this positively address the then ongoing **USFWS** issue since to completely outsource the product to China would not be a solution to the immediate problem?[2]

Secondly, because this email was sent before the breach and before setting forth any sort of petition seeking to establish  proper legal title, the Defendant is dangerously close to exposing itself to criminal liability in violation of 18 U.S. Code § 2320 - Trafficking in counterfeit goods or services.  Certainly, if evidence is produced or obtained at any point that the Defendant had performed in such a manner, namely manufacturing without permission or consent the Plaintiffs'

---

[1] The Plaintiffs' wholly dismiss the Defendant's attempt to estimate the cost to produce the pouches.

[2] For the record, the pouches are made by Transcience in the USA and then are shipped to China where BTT adds them to the other parts of the product that were manufactured in China by BTT.  The finished product would then be shipped into the USA for retail sale.

trade secreted pouches in China, the Defendant will have a criminal investigation to deal with in addition to the proper adjudication of this civil lawsuit.  If nothing else, this is circumstantial evidence of the Defendant's state of mind; signifying a remorseless desire to maximize profit at whatever cost.

2. **<u>what is left out of agent of the Defendant Mr. O'Rourke's affidavit</u>**

Mr. O'Rourke, in his affidavit, chugs along in paragraph 23 to conclude that "express words in the Purchase Agreement" apply the "Minimum Royalty, pouches and lab fees" to the payment of the Purchase Price.[3]  Mr. O'Rourke notably retreats from making an assertion that he had all along believed the notion that the pouch payments were to be counted toward the purchase price.  Instead he hides behind the verbiage of a singular phrase in the agreement between the parties that when taken out of context can be pretended to mean something that it does not.  Yolanda in her March 6th affidavit attached to this reply in paragraphs 21 and 22 does not retreat from this central and pivotal issue.  She states, without equivocation, that

> "Both parties and their legal representatives knew then and know now that the pouch payments were, are, and will NOT to be counted as royalty payments."

At this point in the litigation, with the Defendant being fully aware of the case against it as presented by the Plaintiffs, the Defendant does not claim that it had misunderstood or relied upon what it now perceives to be an ambiguity in the agreement between the parties. Instead, the Defendant refers directly to the contract.  The Plaintiffs therefore petition the Court to read the portions of the contract put in play by Mr. O'Rourke and to come to its own conclusion.  If, and likely when, the Court comes to the righteous conclusion that the clause in question simply verifies the notion that the royalty payments (and only the royalty payments) are now to be

---

[3] It needs to be noted here that the lab fees were made directly to the lab and not to or through Transcience or Yolanda.  Even if the Defendant's ridiculous argument that the pouches are to be applied to the purchase price is pretended to be true, even the Defendant must realize at some point that it cannot apply all payments it made to 3rd parties to the purchase price.

applied to the "Initial Purchase Price" then the Plaintiffs beseech the Court to advance the trial on the merits and consolidate it with the hearing for the preliminary injunction.

> 3. **the fact that, there are no triable issues of fact; that all necessary factual issues are settled or so one-sided they need not be tried**

As noted all throughout the Plaintiffs' previous submissions to the Court there are no triable issues of fact here for a trier of fact to determine.  The Defendant's *force majeure* argument starts to crack when Yolanda asks the Defendant if it needed more time to pay and the Defendant responds "NO".  The *force majeure* argument completely crumbles when it is presented alongside the mutually exclusive "we have already paid in full" defense.  This second more encompassing and comprehensive defense, however, has no legs to it.  A reasonable trier of fact, upon a plain reading of the agreement between the parties, CANNOT come to any different conclusion.

The Court has before it all the necessary figures to fashion a fair and reasonable judgment at this time.  The calculation of damages from the trademark infringement equals the full measure of profit obtained by the infringing party.  While there is no measure in the Lantham Act for the assessment of punitive damages federal law does provide for the assessment of treble damages. (**see Exhibit b; 15 USC 1117 Recovery for violation of rights; profits, damages and costs; attorney fees; treble damages**)

Here there is the figure of 3.4 million gleaned from the original contract  (**see Exhibit A of the Amended Complaint; Paragraph 1, D, [vii]; Page 6**)  This figure represents the total sales the year before the Defendant became affiliated with the product.

Next, we have paragraph 10 from Yolanda's first affidavit of January 21st as attached to the motion and memorandum for equitable relief that establishes a wholesale marketer's gross profit margin resultant from sales of the Sea-Monkeys® product at between "30 and 40 percent".

If we deduct $500,000 off the 3.4 million mark in consideration of the Defendant's claims of losses due to the loss of markets in the European Union (and notably the Plaintiffs wholly discount this estimate) we arrive at 2.9 million dollars in annual sales.

As Yolanda notes in paragraph 23 of her affidavit as attached to this reply memo the Plaintiffs have been completely cut off from the proceeds of their product for what is now as of March 10th 16 months.  Thus 3.4M is to 12 months as 3.87M is to 16 months.

Thirty five percent of 3.87M is, of course, 1.36M.  Due to the egregious actions of the Defendant in taking advantage of Yolanda as demonstrated all throughout and, most particularly, with allowing the litigious process to initiate and continue without having a good faith defense, the Plaintiffs petition the Court to add 1.36M as punitive damages.  Punitive damages are recoverable after demonstrations of malice and genuine incivility, as demonstrated here, via some of the Counts as alleged against the Defendant in Plaintiffs' Amended Complaint. Alternatively, the damages established at 1.36M can be tripled via the Lantham Act. (**see Exhibit b**)  If the actual damages are only doubled then this amounts to a grand total of 2.71 million dollars in damages sustained by the Plaintiffs by the unclean hands of the Defendant.

## **CONCLUSION**

In the 1987 iconic movie "Wall Street" the leading character named Gordon Gekko played by Michael Douglas utters the line, "Greed, for lack of a better word, is good".  Greed is not necessarily evil as Mr. Gekko further elaborates in his noted speech.  At a certain breaking point, however, greed sheds all notions of civility and ethics and rears its very ugly head.

Here, for all practical purposes, the Defendant took a gamble that didn't pay off. There was in place between the parties an express written agreement. The Defendant in pursuit of a better deal preemptively breached the contract. There was and is nothing inherently wrong with that. However, the Defendant was aware of the Plaintiffs "fiscal fragility" (**see Exhibit a, paragraph 24**) The Defendant had calculated that it could lean on a vulnerable party and induce such party to accept less than it had originally contracted for. The Defendant had done so once before (referencing the difference between the 2007 and 2009 agreements) and sought a repeat performance.

The ugly head of greed, however, manifests itself in the current action when the Defendant does not simply "walk away" after its calculated risk had failed. It is a sorry state of circumstances, precipitated wholly by the Defendant's refusal to walk away, that have led the Plaintiffs to the current point in time 16 months past the point of the original breach.

This action is an epic battle between *Greed* and *Justice*. The Plaintiffs are confident and. if nothing else, hopeful that *Justice* will succeed to give redress to and comport the variety of *Greed* as expressed by the Defendant into the variety professed by Mr. Gekko; noting all the while that the variety professed by Mr. Gekko wasn't so "good" to begin with.[4]

WHEREFORE, Plaintiffs respectfully request the following relief:
  (1) The issuance of an Order of the Court subject to a period of Court ordered transition, effective for the duration of this lawsuit, requiring that the Defendant BIG TIME TOYS, LLC, its agents, and assignee immediately cease selling, marketing, and/or producing any of Plaintiffs' trademarked and copyrighted products, including but not limited to Sea-Monkeys® Properties;

---

[4] Please note that a NEW Proposed Order has been sent to judgments@nysd.uscourts.gov.

(2) The issuance of a preliminary injunction by the Court subject to a period of Court ordered transition, prohibiting any continuing use of Plaintiffs' trademarks or copyrights by the Defendant BIG TIME TOYS, LLC, its agents, and assignees for the duration of this lawsuit;

(3) in the alternative, the advancing of the trial on the merits and consolidating it with the hearing on the motion for the preliminary injunction either on papers or at oral argument in accordance with FRCP 65(a)(2);

(4) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.


Respectfully Submitted,

By: *s/ William Timmons*
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
 (631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT

Dated:  March 8, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
_____x
                                        :
TRANSCIENCE CORPORATION &               :
YOLANDA VON BRAUNHUT (individual)       :
                      Plaintiffs        :    Index No.:    13 CV 6642
                                        :
       -against-                        :
                                        :    CERTIFICATE OF SERVICE
                                        :
BIG TIME TOYS, LLC                      :
                      Defendant.        :
_____x
```

## CERTIFICATE OF SERVICE

I hereby certify that on March 10th of the year 2014, I caused a true and correct copy of **Memorandum in Opposition to Defendant's Motion to Dismiss** to be filed with the Clerk of the Court using the CM//ECF system, and have sent via FAX a true and correct copy of said **Memorandum in Opposition to Defendant's Motion to Dismiss** to the Defendant's counsel of record located at the following address:

Dakotiis, Fizpatrick & Cole
Attn:  John A. Stone & Jeffrey G. Kramer
Glenpointe Centre West
500 Frank W. Burr Boulevard, Ste.31
Teaneck, NJ 07666
FAX:  (201) 928-0588


Respectfully Submitted,


By: *s/ William Timmons*
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
 (631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT

Dated:  March 10, 2014