UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TRANSCIENCE CORPORATION and YOLANDA VON :
BRAUNHUT,                                                              :
                            Plaintiffs,                              :
                                                  :
               -against-                                  :        **OPINION AND ORDER**
                                                    :         13-CV-6642 (ER)
BIG TIME TOYS, LLC,                                              :
                                                  :
                          Defendant.                           :
------------------------------------------------------------------------x
Ramos, D.J.:

       Plaintiffs Transcience Corporation and Yolanda Von Braunhut (collectively, "Plaintiffs")

bring this action against Big Time Toys, LLC ("Defendant"), alleging, *inter alia*, breach of

contract and trademark and copyright infringement.  Plaintiffs are the owners of the "Sea-

Monkeys" product:  hybrid brine shrimp that hatch from eggs into "live micro-crustaceans."

Am. Compl. ¶ 16.  Plaintiffs allege that Big Time Toys, *inter alia*, breached a contract relating to

the licensing of the "Sea-Monkeys" product.

       Pending before the Court are Defendant's motion to dismiss the Amended Complaint

(Doc. 16), and Plaintiffs' motion for a preliminary injunction (Doc. 19).  For the reasons

discussed below, Defendant's motion to dismiss is GRANTED in part and DENIED in part, and

Plaintiffs' motion for a preliminary injunction is DENIED.  Plaintiffs are granted leave to

replead the breach of contract claim within thirty (30) days of the date of this Order.

    **I.**    **Factual Background**

       Transcience Corporation and its Chief Executive Officer, Yolanda Von Braunhut, are the

sole and exclusive owners of methods, materials, and properties for designing, hatching,

growing, and sustaining a hybrid brine shrimp known and sold under the United States registered

trademark "Sea-Monkeys."  Am. Compl. ¶ 16.  Plaintiffs are also the exclusive manufacturers of

the trade secret pouches[1] upon which the Sea-Monkeys product is based.  *Id.* ¶ 35.  Plaintiffs own various copyrights registered with the United States Copyright Office relating to Sea-Monkeys, including an instruction book entitled "It's Fun to Raise Pet Sea-Monkeys."  *Id.* ¶¶ 17, 18.

In June 2007, Plaintiffs entered into a license agreement with Big Time Toys (the "2007 Agreement"), that granted Defendant the right to produce, market, and sell Sea-Monkeys.  *Id.* ¶¶ 29, 30.  Under the 2007 Agreement, Defendant agreed to pay Transcience a royalty of ten percent (10%) of the gross sales of Sea-Monkeys.  *Id.* ¶ 31.[2]  In addition to the royalty payments, Big Time Toys was required to pay a "supplemental laboratory fee" of $750 per week for the maintenance of their laboratory and research facility.  *Id.* ¶ 40.  The 2007 Agreement further provided that Plaintiffs would continue to manufacture and produce the trade secret pouches, and sell them to Big Time Toys.  *Id.* ¶ 36.  However, Defendant would procure and otherwise produce the other parts of the final Sea-Monkeys product from outside sources.  *Id.* ¶ 37.

The 2007 Agreement also gave Defendant the right to purchase the Sea-Monkeys product for an amount not to exceed $10 million.  *Id.* ¶ 41.  The Agreement provided that the purchase price would be made in two segments:  (i) an initial lump sum payment of $5 million, and (ii) payments of a five percent (5%) annual royalty from merchandising sales and a percentage of entertainment-related revenue, until the remaining $5 million sum was achieved.  *Id.* ¶ 42. Under the 2007 Agreement, upon payment of the first $5 million, Plaintiffs would turn over to

---

[1] According to Defendant, the Sea-Monkeys product (or "kit") contains two principal components:  (i) a small plastic tank manufactured at Big Time Toys' direction in China, and (ii) a set of three pouches, each slightly larger than a sugar packet, containing eggs.  Def. Mem. L. 3.  The pouches are manufactured and packaged by Plaintiffs in the United States.  *Id.*

[2] The parties agreed that the royalty payments would be made on a monthly basis.  *See* Am. Compl. ¶ 121.

Defendant the production and manufacture of the pouches, as well as the related trade secrets. *Id.* ¶ 43.

In May 2009, the parties modified the 2007 Agreement (the "2009 Agreement"). *Id.* ¶ 45. The 2009 Agreement, which modified the 2007 Agreement only where expressly indicated, increased the percentage of royalties owed to Plaintiffs. *Id.* ¶ 46. Specifically, the 2009 Agreement required Big Time Toys pay to Plaintiffs a royalty of twenty percent (20%) of gross sales. *Id.* ¶ 47. The 2009 Agreement also modified the procedure by which Big Time Toys could purchase the Sea-Monkeys product. First, the 2009 Agreement specified that the total purchase price for the Sea-Monkeys product would be $10 million, as opposed to an amount not to exceed $10 million. *Id.* ¶ 48. The 2009 Agreement further provided that the initial purchase price of $5 million would be realized through: (i) a $500,000 lump sum payment upon execution of the agreement, and (ii) the payment of $4,500,000 from the royalties discussed above. *Id.* ¶ 50.[3]

In December 2012, Defendant informed Plaintiffs of its intention to forgo its monthly royalty payment and breach the parties' agreements. *Id.* ¶¶ 53, 54. Defendant did not make the scheduled royalty payment on December 10, 2012, and similarly ceased making laboratory fee payments at the end of 2012. *Id.* ¶¶ 56, 57.

Under the 2009 Agreement, in the event of a failure to make a royalty payment, Big Time Toys would have 15 days from the receipt of notice of its failure to cure the default. *Id.* ¶ 59. The 2009 Agreement further provided that Plaintiffs could, in the event of Big Time Toys' failure to cure any default relating to royalty payments, (1) declare the agreement terminated; (2)

---

[3] Under the 2009 Agreement, the realization of the initial purchase price would trigger the termination of the 2007 Agreement and the release of title to, *inter alia*, the trade secrets, trademarks, and copyrights relating to the Sea-Monkeys product. *See* 2009 Agreement, § 3.4(a).

commence an action for equitable relief, including injunctive relief, prohibiting any continued use of licensed trademarks and copyrights; and (3) require that Defendant immediately cease selling, marketing, or producing the licensed products. *Id.* ¶ 78. Additionally, any rights granted under the contract would be deemed null and void. *Id.* Accordingly, on December 20, 2012, Transcience sent to Defendant a notice of default. *Id.* ¶ 60. After Big Time Toys failed to cure the default, Transcience sent a letter to Defendant, dated January 18, 2013, declaring that the parties' agreements were "null and void and of no further force or effect." *Id.* ¶ 61.

The Amended Complaint further alleges that, despite the breach of the agreements, Big Time Toys continued to "prominently feature[]" the Sea-Monkeys product on the homepage of its website from January 18, 2013 through November 25, 2013. *Id.* ¶¶ 81, 82.

Plaintiffs allege that Big Time Toys breached its obligations under the agreements and infringed certain of their trademarks and copyrights by continuing to sell Sea-Monkeys without Plaintiffs' authorization. In addition to the breach of contract and intellectual property claims, Plaintiffs bring the following causes of action: breach of the implied covenant of good faith and fair dealing; unjust enrichment; breach of the implied contract; conversion; and tortious interference with business relationships.[4]

---

[4] Both the 2007 Agreement and the 2009 Agreement contain a mandatory arbitration clause. Each clause states that "[i]n the event of a disagreement between the parties with respect to this Agreement, either party, if they wish to adjudicate such disagreement, *shall submit the issue in dispute for arbitration* under the rules of the American Arbitration Association, the election to be by written notice to the other party." *See* 2007 Agreement, § 19 (emphasis added); 2009 Agreement, § 13(a). The only role contemplated for a federal court under these agreements is to enforce the decision of the arbitrator. *See id.*

Despite the clear language directing the parties to arbitration, Plaintiffs note that they considered pursuing arbitration but determined that arbitration would not be available because of, *inter alia*, "the effective termination of the agreement between the parties [such that] the clause was no longer applicable." Pls. Opp. Mem. L. 9. Defendant, on the other hand, has pleaded that "this Court lacks jurisdiction because the parties agreed to arbitrate this matter . . . ." Answer ¶ 6. Defendant also disputes Plaintiffs' contention that an arbitration clause is without further effect following the termination of a contract. Def. Reply Mem. L. 1. The Court agrees with Defendant. *See*

## II.    Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all

factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's

favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also, e.g.*, *Ruotolo v.*

*City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).  However, the Court is not required to credit

"mere conclusory statements" or "threadbare recitals of the elements of a cause of action."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible

on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  More

---

*Butchers, Food Handlers & Allied Workers Union of Greater N.Y. & N.J., Local 174, United Food & Commercial Workers Union v. Hebrew Nat'l Kosher Foods, Inc.*, 818 F.2d 283, 286 (2d Cir. 1987) ("If the contract contains a clause requiring the parties to submit disputes to arbitration, the court should resolve any doubt as to whether a particular dispute falls under that clause in favor of ordering arbitration."); *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 494 (S.D.N.Y. 2013) (ruling that parties must arbitrate their disputes in view of "the presumption that arbitration provisions generally survive termination" even though the arbitration clause was not among the contract provisions expressly identified as surviving termination).

Under the Federal Arbitration Act ("FAA"), a district court must stay the proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the proceedings.  *See* 9 U.S.C. § 3.  "The FAA leaves no discretion with the district court in the matter."  *McMahon Sec. Co. v. Forum Capital Mkts. L.P.*, 35 F.3d 82, 86 (2d Cir. 1994).  The FAA provides that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . ., shall *on application of one of the parties* stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3 (emphasis added).  To date, however, no party has moved to compel arbitration.  *Cf. Trustees of the Local I.B.T. Ins. Trust Fund v. Chinatown Carting Corp.*, No. 1:06-cv-05967 (NGG), 2008 WL 5111108, at *2 (E.D.N.Y. Dec. 4, 2008).  Accordingly, and despite the Court's view that the arbitration clauses here are meant to survive termination of the contracts, the Court cannot compel arbitration at this time.  *Cf. S. New Eng. Tel. Co. v. Global Naps, Inc.*, No. 304 cv 2075 (JCH), 2005 WL 2789323, at *8 (D. Conn. Oct. 26, 2005) (noting that the existence of a binding arbitration clause does not bear on the sufficiency of the plaintiff's claims and that the defendant remains free to move to compel arbitration under 9 U.S.C. § 4).

specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.   Discussion

### A. Copyright Infringement

Plaintiffs allege that Defendant's continued use of their copyrights for the Sea-Monkeys product constitutes copyright infringement. To state a claim for copyright infringement, a plaintiff must demonstrate ownership of a valid copyright and infringement of that copyright by the defendant. *Am. Broad. Cos. v. Flying J, Inc.*, 06 Civ. 2967 (DAB), 2007 WL 583176, at *4 (S.D.N.Y. Feb. 22, 2007). Courts in the Southern District of New York have held that to meet the requirements of Rule 8(a), a complaint must plead with specificity the acts by which a defendant has committed copyright infringement. *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000); *see also McCarthy v. Stollman*, 06 Civ. 2613 (DAB), 2009 WL 1159197, at *3 (S.D.N.Y. Apr. 29, 2009); *Carell v. Shubert Org., Inc.,* 104 F. Supp. 2d 236, 250-51 (S.D.N.Y. 2000). Specifically, a plaintiff must allege (1) which specific original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts during what time the defendant infringed the copyright. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd sub nom. Kelly v. L.L. Cool J*, 23 F.3d 398 (2d Cir. 1994) (citing *Franklin Elec. Publishers v. Unisonic Prod. Corp.,* 763 F.Supp. 1, 4 (S.D.N.Y. 1991)); *Calloway v.*

6

*Marvel Entm't Grp.*, 82 Civ. 8697 (RWS), 1983 WL 1141, at *3 (S.D.N.Y. June 30, 1983); *Gee v. CBS, Inc.,* 471 F.Supp. 600, 643 (E.D.Pa. 1979), *aff'd,* 612 F.2d 572 (3d Cir. 1979)).

Plaintiffs have adequately pleaded each of these elements.  Plaintiffs state that they are the owners of all copyrights for the Sea-Monkeys product and specifically identify each copyright.  *See* Am. Compl. ¶ 168.  The Amended Complaint further alleges that all such copyrights are registered with the United States Copyright Office.  *Id.* ¶ 169.  And Plaintiffs plead that Big Time Toys featured the copyrighted Sea-Monkeys on their website from at least January 18, 2013 to November 25, 2013, thus "present[ing] to the world an assumed right and/or authorization to sell the copyrighted [products]."  *Id.* ¶¶ 172, 173.  Accordingly, Defendant's motion to dismiss the copyright infringement claim is DENIED.

## B. Trademark Infringement

Plaintiffs allege that Defendant's continued use of the trademarks for Sea-Monkeys constitutes trademark infringement.  To prevail on a trademark infringement claim for registered trademarks, a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).  "In addition, the plaintiff must show that defendant's use of that mark 'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'"  *Id.* (quoting 15 U.S.C. § 1125(a)(1)(A)).  However, the likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss.  *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006); *see*

7

*also Deere & Co. v. MTD Prods, Inc.*, No. 00 Civ. 5936 (LMM), 2001 WL 435613, at *1 (S.D.N.Y. Apr. 30, 2001) (noting that likelihood of confusion is not an appropriate inquiry on a motion to dismiss because the court must accept the allegations in the complaint as true).

Here, Plaintiffs have pleaded that they own all trademarks for the Sea-Monkeys product, and have specified the trademarks registered with the United States Trademark and Patent Office. *See* Am. Compl. ¶¶ 148-49. Plaintiffs further allege that Big Time Toys prominently featured the trademarked products on its website following the termination of the license agreements, and "continues to present to the world an assumed right and/or authorization to sell [the products] on [its] website." *Id.* ¶ 153.[5] In moving to dismiss, Defendant does not address the merits of the trademark infringement claim, but rather contends that because Plaintiffs have requested only an adjudication of damages on the contract claim, *see* note 6, *supra*, the contract between the parties remains intact and Big Time Toys therefore cannot be liable for copyright or trademark infringement. Def. Mem. L. 14. The Court disagrees. Plaintiffs have pleaded that the 2007 Agreement was terminated, and the Court is required to accept that fact as true at this stage of the litigation. Therefore the continued use of Plaintiffs' trademarks by Defendant as alleged would be without the benefit of a license. Accordingly, Defendant's motion to dismiss the trademark infringement claim is DENIED.

## C. Breach of Contract

Plaintiffs claim that Big Time Toys breached the parties' contracts when it failed to cure its default on the royalty payments. Am. Compl. ¶ 88. As an initial matter, the continued use of a licensed trademark after termination of a license agreement can be actionable as both breach of

---

[5] *Cf. Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 129 (2d Cir. 2009) (finding Google's display and sale of plaintiff's trademark on its website satisfied Lanham Act's "in commerce" requirement).

contract and trademark infringement.  *See, e.g.*, *Baskin-Robbins Ice Cream Co. v. D & L Ice Cream Co.*, 576 F. Supp. 1055, 1060 (E.D.N.Y. 1983) (holding that the continued use of licensed trademark after termination of franchise agreement constituted trademark infringement and breach of contract); *Ryan v. Volpone Stamp Co.*, 107 F. Supp. 2d 369, 381 (S.D.N.Y. 2000) (denying motion to dismiss trademark infringement claim based on continued use of licensed products where breach of contract claim was also pleaded).

Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach.[6]  *See, e.g.*, *Beautiful Jewellers Private*

---

[6] According to the Amended Complaint, "Plaintiffs seek the Court to *acknowledge, but not adjudicate, the issue* of whether or not there was a breach of contract . . . ."  Am. Compl. ¶ 75 (emphasis added).  In opposition to the motion to dismiss, Plaintiffs attempt to clarify that because the breach is—in their view—clear on its face, the Court need only rule on the issue of damages in connection with this claim.  Pls. Opp. Mem. L. 6.

Plaintiffs' request is improper because it assumes liability has been established.  As the Second Circuit has expressed, "[t]o avoid a possible tendency to seek declaratory judgments or advisory opinions on matters hypothetical, the role of the courts under Article III is confined to passing upon an actual 'case or controversy.'"  *Evans v. Lynn*, 537 F.2d 571, 596 (2d Cir. 1975), *cert. denied*, 429 U.S. 1066 (1977); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (stating that a lawsuit must be definite and concrete and involve "a real and substantial controversy" in order to be cognizable in federal court).  "An advisory opinion constitutes a decision of law concerning a set of facts which are hypothetical or speculative, facts which do not now exist and whose existence is not imminent."  *Guttmacher Inst. v. McPherson*, 616 F. Supp. 195, 200 (S.D.N.Y. 1985), *aff'd as modified*, 805 F.2d 1088 (2d Cir. 1986).  Because Plaintiffs' claim requires analysis of the four elements of a breach of contract under New York law to determine liability—a determination that, based on Plaintiffs' demand, would need to be made by a jury—any analysis of damages at this stage would be premature.

Similarly, in *Asher Associates, L.L.C. v. Baker Hughes Oilfield Operations, Inc.*, No. 07-cv-01379-WYD-CBS, 2009 WL 1468709, at *2 (D. Colo. May 20, 2009), the defendant requested on summary judgment that the court prohibit plaintiffs from seeking certain categories of damages on their contract claims.  The court dismissed the defendant's motion as raising a "hypothetical scenario" and noted that the defendant was "essentially asking [the court] make an advisory opinion."  *Id.*  The court observed that if the defendant were to prevail at trial on the issue of liability, it would be unnecessary for the court to address the issue of damages.  *Id.*  So too here, Plaintiffs' request for an adjudication of damages only is improper.  *See also Cummings v. Allstate Ins. Co.*, Civ. No. 11-02691, 2011 WL 4528366, at *9 (E.D. Pa. Sept. 30, 2011) (ruling that an assessment of the extent of damages available on breach of contract claim "would be purely speculative at this juncture (on a motion to dismiss), given that it has yet to be determined that a breach occurred").

*Ltd. v. Tiffany & Co.*, 438 F. App'x 20, 21-22 (2d Cir. 2011). Here, Defendant contends—and Plaintiffs concede—that the Amended Complaint fails to allege that Plaintiffs adequately performed under the parties' agreements. *See* Def. Mem. L. 8; Pls. Opp. Mem. L. 7-8.[7]

"A claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11-CV-1534 (JG) (JMA), 2011 WL 5238658, at *3 (E.D.N.Y. Nov. 1, 2011); *see also R.H. Damon & Co., Inc. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) (noting that a breach of contract claim must contain some allegation that plaintiffs actually performed their obligations under the contract); *CreditSights, Inc. v. Ciasullo*, No. 05 Civ. 9345 (DAB), 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008) (ruling that counterclaim plaintiff could not state a claim for breach of contract because he did not allege adequate performance). Accordingly, Plaintiffs' breach of contract claim is DISMISSED without prejudice.[8]

### D.  Implied Covenant of Good Faith and Fair Dealing

---

[7] Plaintiffs attempted to plead adequate performance in the Original Complaint. *See* Compl. ¶ 80 ("Plaintiffs were in compliance with the terms of the agreement between the parties over the lifespan of the now terminated agreement."). However, Plaintiffs acknowledge in opposition to the instant motion that the Amended Complaint "somewhat inexplicably leaves this paragraph out." Pls. Opp. Mem. L. 7. Plaintiffs even request in opposition to the instant motion that the Court deem the Original Complaint, which is attached as an exhibit to *the affidavit in support of Defendant's motion to dismiss*, incorporated by reference in the Amended Complaint. *Id.* at 7-8. Plaintiffs cite no authority in support of this request.

[8] *Cf. Patel v. Baluchi's Indian Rest.*, No. 08 Civ. 9985 (RJS), 2009 WL 2358620, at *8 (S.D.N.Y. July 30, 2009) (granting plaintiffs leave to amend breach of contract claim because of the "potentially technical nature" of plaintiffs' failure to allege satisfaction of a condition precedent); *S.O. Textiles Co. v. A & E Prods. Grp.*, 18 F. Supp. 2d 232, 238 (E.D.N.Y. 1998) (granting leave to amend breach of contract claims to allege adequate performance in order to adhere to court's duty to construe pleadings to do substantial justice); *Global Crossing Bandwidth, Inc. v. PNG Telecomms., Inc.*, No. 06-CV-6415T, 2007 WL 174094, at *2 (W.D.N.Y. Jan. 22, 2007) (granting leave to replead breach of contract claim to include allegation of adequate performance because of the "liberal re-pleading rules of the Federal Rules of Civil Procedure"); *see also Stern v. Gen Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead . . . .").

Plaintiffs allege that Big Time Toys breached the implied covenant of good faith and fair dealing.  Am. Compl. ¶ 110.  Defendant contends that this claim must be dismissed because New York law bars implied covenant claims when they are insufficiently distinct from contractual claims.  *See* Def. Mem. L. 9.  Indeed, New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pleaded.  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  "Instead, an alleged breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim."  *Reed v. Delta Airlines, Inc.*, No. 10 Civ. 1053 (JGK), 2011 WL 1085338, at *5 (S.D.N.Y. Mar. 23, 2011).  Here, Plaintiffs allege that Defendant is liable for breach of the implied covenant of good faith and fair dealing because it acted in bad faith by, *inter alia*, failing to make timely royalty payments and continuing to sell Sea-Monkeys without the authority to do so.  Am. Compl. ¶ 191.  Accordingly, Plaintiffs' implied covenant claim cannot be sustained because it is based on the same facts as those underlying the contract claim.  *Cf. Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13 Civ. 3956, 2014 WL 837050, at *6 (S.D.N.Y. Mar. 3, 2014) (granting motion to dismiss implied covenant claim as duplicative where plaintiff alleged contract was breached in bad faith and without commercial justification); *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013) (relying on *Quail Ridge Associates v. Chemical Bank*, 558 N.Y.S.2d 655, 657 (3d Dep't 1990), for the proposition that bad faith in connection with contract claim does not provide an independent basis for recovery and dismissing implied covenant claim as redundant of contract claim).  Defendant's motion to dismiss the implied covenant of good faith and fair dealing claim is therefore GRANTED.

**E.  Unjust Enrichment**

Plaintiffs claim that Big Time Toys has been unjustly enriched by the now quasi-contractual nature of the parties' relationship.  *See id.* ¶ 126.  In particular, Plaintiffs contend that Defendant has been unjustly enriched by the unauthorized sales of Sea-Monkeys since Big Time Toys' final royalty payment in November 2012.  *See id.* ¶¶ 125, 126.  Defendant claims that the unjust enrichment claim must be dismissed as insufficiently distinct from the breach of contract claim.  Def. Mem. L. 11.

   "[W]here there is an enforceable written contract governing the particular subject matter, claims based on quasi-contract theories like unjust enrichment do not provide a distinct basis for recovery."  *Vitrano v. State Farm Ins. Co.*, No. 08 Civ. 00103 (JGK), 2008 WL 2696156, at *3 (S.D.N.Y. July 8, 2008); *see also Spanierman Gallery, PSP v. Love*, No. 03 Civ. 3188 (VM), 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003) ("The New York Court of Appeals has held that the 'existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 521 N.Y.S.2d 653, 656 (N.Y. 1987))).  However, even though Plaintiffs may not ultimately *recover* under both the breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to *plead* such claims in the alternative.  *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (noting that plaintiff is allowed to plead both contract and quasi-contract claims even though he may only recover on one such ground); *Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007) (citing *Maalouf* and Rule 8(a) of the Federal Rules of Civil Procedure for the principle that plaintiff may plead breach of contract and unjust enrichment claims alternatively despite defendant's contention that a valid and enforceable contract governed the dispute);

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867 (BSJ) (HBP), 2006 WL 6217754, at *7 (S.D.N.Y. Mar. 31, 2006) (observing that the argument that quasi-contract claim was barred as duplicative of contract claim was "misguided at the pleading stage"). Accordingly, the unjust enrichment claim cannot be dismissed on this basis.

To state a claim for unjust enrichment under New York law, a plaintiff must provide proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 685 N.Y.S.2d 381, 381 (4th Dep't 1999)).

Here, Plaintiffs claim that Big Time Toys was unjustly enriched at their expense through the unauthorized sales of the previously licensed Sea-Monkeys product, and that Plaintiffs were harmed accordingly. Am. Compl. ¶¶ 126, 127. Because Plaintiffs have alleged that Defendant unjustly benefited from unauthorized sales of Sea-Monkeys, the Amended Complaint states a claim for unjust enrichment under New York law. *Cf. C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 248 (S.D.N.Y. 2013) (dismissing unjust enrichment claim because plaintiff failed to allege that defendant received gains from enrichment by actually selling plaintiff's products). However, the unjust enrichment claim is preempted to the extent it seeks to protect Plaintiffs' copyrights.[9]

---

[9] The Amended Complaint states, *inter alia*, that "Plaintiffs own *all* copyrights for the Sea-Monkeys product," and otherwise references "the copyrighted Sea-Monkeys product." Am. Compl. ¶¶ 168, 171. However, the only copyright specifically identified in the exhibits to the 2007 Agreement is Plaintiff Von Braunhut's copyright for the instruction book entitled "It's Fun to Raise Pet Sea-Monkeys." *See* 2007 Agreement, Ex. C.

Section 301 of the Copyright Act preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act. *See* 17 U.S.C. § 301(a); *Berry v. Deutsche Bank Trust Co. Ams.*, No. 07 Civ. 7634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008), *aff'd*, 378 F. App'x 110 (2d Cir. 2010). The Copyright Act preempts claims when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law. *Id.* (quoting *Briarpatch*, 373 F.3d at 305). In order for a state cause of action to survive preemption, it must "have an 'extra element' beyond reproduction, preparation of derivative works, *distribution*, performance or display, which 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Gusler v. Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2009) (emphasis added) (quoting *Computer Assocs. Int'l Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)). "An action 'will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature.'" *Id.* (quoting *Computer Assocs.*, 982 F.2d at 717).

In *Briarpatch*, the Second Circuit ruled that the Copyright Act preempted an unjust enrichment claim relating to adaptation rights for a screenplay. 373 F.3d at 306. The court noted that while the enrichment element of the unjust enrichment claim is not required for a copyright infringement action, it does not go "far enough to make the unjust enrichment claim qualitatively different from a copyright infringement claim." *Id.* Indeed, because the enrichment element left the fundamental nature of the copyright infringement claim unaltered, the court upheld the dismissal of the unjust enrichment claim. *Id.*

Despite the conclusion reached in *Briarpatch*, the Copyright Act does not fully preempt

14

state law claims where the claims also seek to protect trademark rights.[10]  In *MyPlayCity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615 (CM), 2012 WL 1107648, at *23 (S.D.N.Y. Mar. 30, 2012), *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012), a video game publisher brought an unjust enrichment claim under New York law in connection with defendant's alleged distribution of the publisher's copyrighted games and trademark.  The court found the portion of the unjust enrichment claim based on the purported distribution of the publisher's copyrighted products to be preempted.  *Id.* at *24.  However, because the Lanham Act does not preempt state law, the court ruled that the unjust enrichment claim was not preempted to the extent it asserted a violation of the plaintiff's trademark rights.  *Id.*  Similarly, in *RBC Nice Bearings, Inc. v. Peer Bearing Co.*, 676 F. Supp. 2d 9, 34 (D. Conn. 2009), *aff'd*, 410 F. App'x 362 (2d Cir. 2010), plaintiffs brought federal trademark and copyright claims as well as claims under Connecticut law relating to ball bearings.  The court observed that the plaintiffs' state law claims were based on the same allegations supporting their federal trademark and copyright claims.  *Id.*  The court relied on *Briarpatch* to find the state law claims preempted by the Copyright Act insofar as they relied upon the actions at issue in the copyright claim: defendant's alleged copying from plaintiffs' copyrighted ball bearing catalogs.  *Id.*  However, the court found that the state law claims were not preempted to the extent they asserted a violation of plaintiffs' alleged trademark rights.  *Id.*[11]

Plaintiffs explicitly state that the unjust enrichment claim is premised on Big Time Toys'

---

[10] Under the 2007 Agreement, Plaintiffs agreed to license to Big Time Toys trademarks relating to, *inter alia*, the Sea-Monkeys product; the hatched egg design for Sea-Monkeys; and the Ocean-Zoo aquarium made for Sea-Monkeys products.  *See* 2007 Agreement, Ex. B.

[11] *See also Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 619 (S.D.N.Y. 2012) (citing *MyPlayCity* and denying defendant's summary judgment motion on unjust enrichment claim involving trademark rights).

"continuing and ongoing unauthorized sales of the previously licensed Sea-Monkeys product."

Am. Compl. ¶ 126.  Accordingly, the unjust enrichment claim is preempted, but only to the

extent it relies on Plaintiffs' copyrighted works;[12] the unjust enrichment claim may otherwise

proceed.[13]  *Cf. Berry*, 2008 WL 4694968, at *6 (granting motion to dismiss unjust enrichment

claim based on defendant's rejection of a license agreement for copyrighted software); *Gusler*,

580 F. Supp. 2d at 316 (dismissing unjust enrichment claim on Rule 12(b)(6) motion because, as

in *Briarpatch*, plaintiff sought to protect the same rights as those protected by the Copyright

Act); *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 618 (S.D.N.Y. 2010) (granting

motion to dismiss unjust enrichment claim as preempted where it was premised on defendant's

alleged breach of license agreement).

## F.  Implied Contract

Plaintiffs allege that an implied contract formed "by implication of fact" after Big Time

Toys' willful termination of the parties' express contract.  *See* Am. Compl. ¶ 110.  Under New

York law, absent a written agreement between the parties, a contract may be implied where

inferences may be drawn from the facts and circumstances of the case and the intention of the

parties as indicated by their conduct.  *Bader v. Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d

---

[12] The Court reaches this conclusion despite the parties' failure to raise preemption in their submissions to the Court. *Cf. Einiger v. Citigroup, Inc.*, No. 1:14-cv-4570-GHW, 2014 WL 4494139, at *7 (S.D.N.Y. Sept. 12, 2014) (relying on *Briarpatch* to dismiss unjust enrichment and quantum meruit claims *sua sponte* as "completely preempted by the Copyright Act"; gravamen of claims was that defendant unjustly benefited from the unauthorized use of plaintiff's intellectual property); *Affiliated Records Inc. v. Taylor*, No. 09 Civ. 9938 (KBF), 2012 WL 1675589, at *5 (S.D.N.Y. May 14, 2012) (dismissing unjust enrichment claim *sua sponte* as preempted by the Copyright Act because the unjust enrichment claim sought to vindicate plaintiff's exclusive right to distribute copyrighted music).

[13] The Amended Complaint seeks punitive damages but does not specify the claims on which Plaintiffs would be entitled to recover such a remedy.  Plaintiffs state in opposition to the instant motion that punitive damages would be recoverable under, *inter alia*, the unjust enrichment claim. Pls. Opp. Mem. L. 10.  As Defendant correctly notes, however, New York law does not allow punitive damages on unjust enrichment claims.  *See* Def. Reply Mem. L. 2; *M'Baye v. World Boxing Ass'n*, No. 05 Civ. 9581 (DC), 2007 WL 844552, at *5 (S.D.N.Y. Mar. 21, 2007).

397, 413 (S.D.N.Y. 2011) (quoting *Bear Stearns Inv. Prods., Inc. v. Hitachi Auto. Prods. (USA), Inc.*, 401 B.R. 598, 615 (S.D.N.Y. 2009).  "An implied-in-fact contract is 'just as binding as an express contract arising from declared intention, since in law there is no distinction between agreements made by words and those made by conduct.'"  *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 409 (S.D.N.Y. 1998), *aff'd*, 172 F.3d 37 (2d Cir. 1999) (quoting *Jemzura v. Jemzura*, 369 N.Y.S.2d 400, 408 (N.Y. 1975)).  However, a contract may not be implied in fact from the conduct of the parties where it appears that they intended to be bound only by a formal written agreement.  *Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 513 (S.D.N.Y. 2001) (citing *Valentino v. Davis*, 703 N.Y.S.2d 609, 612 (3d Dep't 2000)); *see also Bader*, 773 F. Supp. 2d at 413 (stating the principle that a contract cannot be implied in fact where the facts are inconsistent with its existence or where there is an express contract covering the subject matter involved).  "Thus, 'the theories of express contract and of contract implied in fact . . . are mutually exclusive.'"  *Id.* at 414 (quoting *Bowne of N.Y., Inc. v. Int'l 800 Telecom Corp.*, 576 N.Y.S.2d 573, 574 (1st Dep't 1991)).

While the Amended Complaint alleges that there was a valid express contract, Plaintiffs have not pleaded facts and circumstances from which inferences may be drawn that the parties actually intended to be bound by an implied contract after the alleged breach.  Instead, Plaintiffs allege that the express contract was terminated by the breach, and have not provided any suggestion that there was mutual assent between the parties following Big Time Toys' failure to cure its default.  *See Nadel v. Play-By-Play Toys & Novelties*, 208 F.3d 368, 382 (2d Cir. 2000) (noting that mutual assent is an element required for both express and implied contracts).  In fact, the Amended Complaint explicitly states in connection with the implied contract claim that Plaintiffs "have no desire to reform or otherwise reenter into any contractual relationship with

17

Defendant . . . ."  Am. Compl. ¶ 112.  Accordingly, Plaintiff's implied contract claim cannot be sustained.  Defendant's motion to dismiss the implied contract claim is therefore GRANTED.[14]

### G.  Conversion

Plaintiffs bring a claim for conversion based on their "clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship" between the parties. Am. Compl. ¶ 134.  Under New York law, conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. v. Hous. Auth.*, 637 N.Y.S.2d 342, 347 (N.Y. 1995)).  "For an action in conversion to lie when the original possession of the property is lawful, a plaintiff must make a demand for the allegedly converted property and the possessor must refuse."  *AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04 Civ. 8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007).

Whereas courts in this Circuit allow for alternative pleading of unjust enrichment and contract claims, conversion claims are routinely dismissed on Rule 12(b)(6) motions where duplicative of breach of contract claims.  *See Kalimanto GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 416 (S.D.N.Y. 2013) (granting motion to dismiss conversion claim as not qualitatively different from breach of contract claim); *Prudential Inv. Mgmt. Servs. LLC v. Forde*, No. 12 Civ. 5168 (LAP), 2013 WL 3199098, at *4 (S.D.N.Y. June 25, 2013) (granting

---

[14] Even though the Federal Rules of Civil Procedure allow for alternative pleading, courts in this Circuit have granted motions to dismiss implied contract claims where an express contract governs the same subject matter as the implied contract.  *See Bader*, 773 F. Supp. 2d at 414 (granting motion to dismiss former employees' implied contract claims because written employment contracts governed the claims at issue); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 359 (S.D.N.Y. 2012) (granting motion to dismiss implied contract claim where the parties intended to be bound by terms of the agreement only upon its execution).

motion to dismiss conversion claim where it arose from the same facts as those underlying the breach of contract claim); *Jain v. T & C Holding Inc.*, No. 10 Civ. 1006 (RMB), 2011 WL 814659, at *6 (S.D.N.Y. Mar. 3, 2011) (granting motion to dismiss conversion claim as a "mere duplication" of the contract cause of action); *see also Zhao v. Wang*, 558 F. App'x 41, 43 (2d Cir. 2014) (affirming dismissal of conversion claim on summary judgment because the claim "turns entirely on the issue of breach" and therefore sounds in contract, not conversion); *Wolf v. Nat'l Council of Young Isr.*, 694 N.Y.S.2d 424, 425 (2d Dep't 1999) (stating that conversion counterclaim was properly dismissed because it did not stem from a wrong independent of the alleged breach of contract).  Accordingly, because Big Time Toys' possession of Plaintiffs' property here would have been lawful if not for the alleged breach of contract, the conversion claim cannot be sustained.  Defendant's motion to dismiss the conversion claim is therefore GRANTED.

## H. Tortious Interference with Business Relationships

Plaintiffs further allege that Big Time Toys has tortiously interfered with Plaintiffs' business relationships.[15]  Under New York law, the elements of a claim for tortious interference with prospective business relations are (1) business relations with a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and (4) injury to

---

[15] Plaintiffs' eighth cause of action is entitled "Tortious Interference With Contract and/or Business Relationships." Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  Because Plaintiffs have failed to identify the existence of any contract between them and a third party, and have instead couched this cause of action in terms of prospective business contracts, the Court will construe Count VIII of the Amended Complaint as a claim for tortious interference with prospective business relationships only.

the business relationship.  *See Nadel*, 208 F.3d at 382.  Defendant contends that this claim must

be dismissed because Plaintiffs have not alleged any relationships with a third party, only the

potential for such relationships.  Def. Mem. L. 16.  Indeed, Plaintiffs acknowledge that they

"have not disclosed the identity of the potential licensees [with whom they have had contact] out

of privacy considerations but will fully disclose all such identities at trial."  Pls. Opp. Mem. L.

14-15.  Such an assertion cannot serve to cure the deficiency in the Amended Complaint.  *See*

*Burkes v. N.Y. State Dental Ass'n*, No. 12 Civ. 2593 (GBD), 2013 WL 3784143, at *4 (S.D.N.Y.

July 18, 2013) (finding the absence of a specific allegation that defendants interfered with a

*specific business relationship* fatal to the tortious interference claim).  Defendant's motion to

dismiss the claim for tortious interference with prospective business relationships is therefore

GRANTED.

**IV.    Preliminary Injunction**

Plaintiffs request a preliminary injunction prohibiting any continuing use of Plaintiffs'

trademarks or copyrights by Big Time Toys, its agents, or assignees for the duration of the

instant litigation.  *See* Pls. Mem. L. 27.  To obtain a preliminary injunction, the moving party

must demonstrate (1) irreparable harm absent injunctive relief; (2) either a likelihood of success

on the merits, or a serious question going to the merits to make them a fair ground for trial, with

a balance of hardships tipping decidedly in the movant's favor; and (3) that the public's interest

weighs in favor of granting an injunction.  *Red Earth LLC v. United States*, 657 F.3d 138, 143

(2d Cir. 2011) (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d

Cir. 2010)).  Plaintiffs do not meet this standard.

First, as Defendant notes, Plaintiffs' delay in moving for injunctive relief is "compelling

evidence" that there is no irreparable harm.  Def. Opp. Mem. L. 11.  Indeed, "[u]nreasonable

delay in bringing suit is strong evidence that immediate injunctive relief is not required to prevent irreparable harm." *Andersen Consulting LLP v. Am. Mgmt. Sys., Inc.*, No. 95 Civ. 5428 (KTD), 1995 WL 510042, at *4 (S.D.N.Y. Aug. 28, 1995).  It is well-established in this Circuit that delays in moving for injunctive relief to protect copyrights and trademarks from further unauthorized use weigh heavily against the movant.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (noting that significant delay in applying for injunctive relief in trademark case tends to neutralize any presumption that the infringement alone will cause irreparable harm, and that such delay may justify denial of preliminary injunction); *Bus. Trends Analysts v. Freedonia Grp.*, 650 F. Supp. 1452, 1459 (S.D.N.Y. 1987) (stating that plaintiff failed to demonstrate irreparable harm based "on grounds of delay alone" where six months passed between discovery of competitor's business and filing of complaint); *Andersen Consulting LLP*, 1995 WL 510042, at *4 (finding it "incredible" that trade secrets were valuable enough to cause irreparable injury where plaintiff waited more than a year after obtaining document that would have indicated infringement to file complaint).

In *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006), the court denied a preliminary injunction motion in an antitrust action because, *inter alia*, plaintiffs were aware of defendants' alleged misconduct seven months before the filing of the litigation.  The court found that this delay, especially in light of the fact that the defendants terminated the distributorship contract five months before the commencement of the action, "negat[ed] the alleged urgency of the plaintiffs' financial conditions . . . ." *Id.*  The court concluded that the plaintiffs were therefore unable to demonstrate irreparable harm as a matter of law.  *Id.*  Here, Plaintiffs were on notice of Big Time Toys' alleged breach as early as December 2012.  However, they waited nine months—until September 19, 2013—to commence the instant

21

litigation.  And it was not until January 2014—more than four months after the filing of the

original complaint, and more than one year after the alleged breach—that Plaintiffs requested

leave to file a motion for injunctive relief.  *See* January 31, 2014 Letter of William Timmons.

This delay—if not dispositive—weighs strongly in Defendant's favor.

Second, the Second Circuit has concluded that "[a] harm that can be remedied by a

money judgment or at the end of trial is *not* an irreparable harm."  *Lee v. Choi*, 140 F. App'x

299, 300 (2d Cir. 2005) (emphasis added); *see also Freedom Holdings, Inc. v. Spitzer*, 408 F.3d

112, 115 (2d Cir. 2005) ("At the preliminary injunction stage, the only cognizable harms are

those that *cannot be remedied at the end of trial if the movant were to prevail*."); *Polymer Tech.*

*Corp. v. Mimran*, 37 F.3d 74, 82 (2d Cir. 1994) (finding no irreparable injury because plaintiff

could be adequately compensated with money damages).  Here, however, it is clear that the harm

alleged is monetary in nature.  Indeed, according to Plaintiffs, "[t]he sudden abbreviation of

compensation [in December 2012] severely compromised the financial posture of both

Transcience and its CEO, Yolanda Von Braunhut."  Pls. Mem. L. 9-10.

Therefore, even if Plaintiffs could prove a likelihood of success on the merits,[16] they

have failed to demonstrate the irreparable harm required for a preliminary injunction.

Accordingly, Plaintiffs' motion for a preliminary injunction is therefore DENIED.

---

[16] The Court notes that Plaintiffs' need to replead the breach of contract cause of action—a central claim here—
further weighs against injunctive relief.  *Cf. Chateau Hip, Inc. v. Gilhuly*, No. 95 Civ. 10320 (JGK), 1996 WL
437929, at *2 (S.D.N.Y. Aug. 2, 1996) ("[I]t is imprudent for a preliminary injunction to issue on the basis of a
complaint that will shortly be superseded by a pleading that will remedy what are conceded to be fundamental flaws
in the present complaint.").

**Conclusion**

For the reasons set forth above:

- Defendant's motion to dismiss the copyright infringement and trademark infringement claims is DENIED.

- Plaintiffs' breach of contract claim is DISMISSED without prejudice.  Plaintiffs are granted leave to replead within thirty (30) days of the date of this Order.

- Defendant's motion to dismiss the implied covenant of good faith and fair dealing, implied contract, conversion, and tortious interference with business relationships claims is GRANTED.

- Plaintiffs' unjust enrichment claim is preempted, but only to the extent it relies on Plaintiffs' copyrighted works;

- Plaintiffs' motion for a preliminary injunction is DENIED.

The Clerk of the Court is respectfully directed to terminate the motions.  Docs. 16, 19.

It is SO ORDERED.


Dated:    September 23, 2014
          New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.