**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
                                              :

TRANSCIENCE CORPORATION &       :
YOLANDA VON BRAUNHUT (individual)  :
                        Plaintiffs   :      Index No.:     13 CV 6642
                                      :
       -against-             :
                                      :      **2ⁿᵈ AMENDED COMPLAINT**
                                      :

BIG TIME TOYS, LLC                 :
                         Defendant.  :
———————————————————————x

**DEMAND FOR INJUNCTIVE RELIEF and CLAIM FOR MONEY DAMAGES**

Plaintiffs TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT (individual) by and through their attorney William Timmons, Esq., with offices located in Sayville, New York, hereby file this 2ⁿᵈ AMENDED COMPLAINT in this Demand for Injunctive Relief and Claim for Money Damages, and allege the following in support thereof:

**JURISDICTION AND VENUE**

1.  The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

2.  This action is a civil action based upon Defendant's infringement of Plaintiffs' US trademarked and US copyrighted intellectual property rights.

3.  In accordance with 28 U.S.C. § 1367, the Court has supplemental jurisdiction over the entire matter pursuant to "all other claims that are so related . . . that they form part of the same case or controversy" (§ 1367(a)).

4.  Alternatively, the Court has subject matter jurisdiction over the case pursuant to diversity jurisdiction under 28 U.S.C. § 1332: US Code - Section 1332: *Diversity of citizenship;*

Page 1

*amount in controversy; costs.*

5.  The matter in controversy in the current instance exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  The action in the current instance is between citizens/corporations of different states.

7.  The Court has personal jurisdiction over the parties of the case pursuant to the parties' substantial and recurring economic contacts with the State of New York.

8.  In addition, the parties have consented to the jurisdiction of the federal courts in the County of New York of the State of New York with respect to any remedies available to the parties in aid of arbitration pursuant to the now terminated "License Agreement" of 2007 and the "Purchase Agreement and Amendment to License Agreement" dated May 1, 2009. (**see Exhibits A & B**)

9.  Plaintiffs maintain that *prima facie* evidence of termination of the "License Agreement" of 2007 and the "Purchase Agreement and Amendment to License Agreement" of 2009 is presented throughout this Complaint.

10.  Plaintiffs maintain that the within action seeks relief for damages sustained and damages ongoing caused by the Defendant after the *prima facie* termination of the contractual agreement between the parties.

11.  Venue is proper because the third party to the terminated contract, namely Escrow Holder Sichenzia Ross Friedman Ference, LLP, as provided for in the said terminated contract maintains offices at 61 Broadway, 32nd Floor, New York, NY 10006.

## PARTIES

12.  Plaintiff TRANSCIENCE CORPORATION (hereinafter and above, together with Plaintiff YOLANDA VON BRAUNHUT, "Plaintiffs") is a Maryland corporation with offices and

a principle place of business located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.

13.  Plaintiff YOLANDA VON BRAUNHUT (hereinafter and above, together with Plaintiff TRANSCIENCE CORPORATION, "Plaintiffs") is an individual with an address located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.  YOLANDA VON BRAUNHUT is the Chief Executive Officer (CEO) and chief acting agent of the TRANSCIENCE CORPORATION.

14.  Defendant BIG TIME TOYS, LLC (hereinafter, together with its agents acting on its behalf, "Defendant") is a Tennessee Limited Liability Company (LLC) with an office located at 2823 Dogwood Place, Nashville, TN 37204 and an office formerly located at 708 Berry Road, Nashville, TN 37204.  **SAM HARWELL** is a resident of the State of Tennessee and is the owner and CEO of Defendant BIG TIME TOYS, LLC.  **JAMES O'ROURKE** is a resident of the State of Tennessee and is the President and is an agent of Defendant BIG TIME TOYS, LLC.

## FACTUAL ALLEGATIONS

15.  Plaintiffs are the sole and exclusive owners of trade secreted methods, materials, and properties (including intellectual properties) for designing, hatching, growing, and sustaining live micro-crustaceans (*Artemia NYOS*); a hybrid brine shrimp known and sold under the United States (US) registered trademark "Sea-Monkeys®".

16.  Plaintiffs are the sole and exclusive owners of the United States (US) registered trademark "Sea-Monkeys®".

17.  Plaintiffs are each owners of certain copyrights registered in the United States Copyright Office (USCO) and others unregistered.

18.  Plaintiff Yolanda von Braunhut is the copyright owner of an instruction book titled

"It's Fun To Raise Pet Sea-Monkeys".

19.  Noted American inventor and marketer Harold von Braunhut held 196 patents for various products, many of which have become cultural icons, with the United States Patent and Trademark Office (USPTO).

20.  Harold von Braunhut invented and registered with the USPTO the brine shrimp product, initially called "Instant Life", in 1957. (**see Exhibit A; sub-exhibits A thru D**)

21.  Harold changed the name to "Sea-Monkeys®" and registered such with the USPTO in the year 1962. (**see Exhibit A; sub-exhibits A thru D**)

22.  Harold started a corporation named "Transcience Corporation" (Transcience) and transferred to it ownership of various products he had invented over the years.

23.  Transcience relies upon direct sales and licensing agreements relating to its Sea-Monkeys® product to account for most of its profits.

24.  The Transcience Corporation is a Maryland corporation with offices and a principle place of business located at 6200 Chapman's landing Road, Indian Head, Maryland 20640.

25.  Harold married Yolanda Signorelli (now known as: Yolanda von Braunhut) in the year 1980.

26.  Harold was the CEO of Transcience until his untimely death in 2003.

27.  Upon his death Yolanda became the CEO of Transcience.

28.  Yolanda has been the CEO of Transcience ever since.

29.  In June of the year 2007, Plaintiffs entered into a License Agreement with the Defendant Big Time Toys, LLC. (**see Exhibit A**)

30.  The 2007 License Agreement granted Defendant rights to produce (in part), market, and sell the Sea-Monkeys® product owned by Plaintiffs.

31. The 2007 License Agreement provided that Defendant Licensee "pay to the Licensor a royalty of ten percent (10%) of 'Gross Sales' of Licensed Products sold by Licensee to third parties". (**see Exhibit A; page 8**)

32. The 2007 License Agreement provided that the royalty payments were due on the 10th of each month over the duration of the contract. (**see Exhibit A; page 8**)

33. The 2007 License Agreement provided that the agreement would commence on January 1st 2008 and expire on December 31, 2012 unless otherwise terminated, renewed, or extended by terms as provided therein.

34. The Sea-Monkeys® product is dependent upon the manufacture of pouches that provide for and/or contain (among other things) water quality, dormant organisms, and continuing sustenance.

35. Trade secrets relating to Plaintiffs' Sea-Monkeys® product, and in particular to the trade secreted Sea-Monkeys® pouches, were generated over many years of trial and error by the Plaintiffs.

36. The Plaintiffs' trade secrets, as provided for in the 2007 and 2009 agreements between the parties, are held in escrow by Escrow Holder Sichenzia Ross Friedman Ference, LLP.

37. The 2007 License Agreement provided that the Plaintiffs will continue to manufacture, produce, and sell (at a controlled and reduced cost) to the Defendant the trade secreted pouches upon which the Sea-Monkeys® product is based. (**see Exhibit A; paragraph pages 9-10; 16-18**).

38. The 2007 License Agreement provided that the Licensees would procure and otherwise produce other parts of the final Licensed Product, including but not limited to the

water tank and packaging materials, from outside sources.

39. The cost of manufacture and production (including but not limited to labor, purchase of raw materials, and factory expenses) of the trade secreted pouches upon which the Sea-Monkeys® product is based is incorporated into the price paid for the purchases of the pouches.

40. The 2007 License Agreement provided that Licensee would pay to Licensor's designee a supplemental laboratory fee of $750 per week for "Laboratory and Research Facility Maintenance". (**see Exhibit A; Paragraph 10-A; page 17**)

41. The 2007 License Agreement gave Defendant Licensee the right to purchase the entire Licensed Product "for an amount not to exceed 10 million dollars". (**see Exhibit A; paragraph 17A, page 23**)

42. The 2007 License Agreement provided that the 10 million dollar purchase price would be realized in 2 segments; namely an initial lump sum 5 million dollar payment followed by an application of a 5% royalty payment per year from merchandising sales (and a per year percentage of entertainment related revenue) from that point thereafter until the remaining 5 million dollar sum was attained.

43. The 2007 License Agreement provided that after realization of the first 5 million dollars of the 10 million dollar purchase amount that the Licensor would turn over to Licensee the production **and** manufacture of the pouches; including the trade secrets upon which the Sea-Monkeys® product is based. (**see Exhibit A; page 23**)

44. The Escrow Holder, as provided for in the 2007 agreement, was obligated to release Plaintiffs' trade secrets to the Defendant after an independent Initial Purchase Price of $5,000,000 was paid to the Plaintiffs.

45. In May of the year 2009 Plaintiffs and Defendant modified their existing agreement

as evidenced by "Purchase Agreement and Amendment to License Agreement". (**see Exhibit B**)

46.  The 2009 Amendment Agreement modified the 2007 License Agreement only where expressly indicated leaving those provisions not expressly indicated intact. (**see Exhibit B; Section 5; page 12**)

47.  The 2009 Amendment Agreement provided that Defendant Licensee "pay to the Licensor a royalty of twenty percent (20%) of 'Gross Sales' of Licensed Products sold by Licensee to third parties" (**see Exhibit B; pages 3 & 4**).

48.  The 2009 Amendment Agreement expressly provided that the royalty payments would be applied to the "Initial Purchase Price" to realize the first 5 million dollars of the 10 million dollar purchase price. (**see Exhibit B; pages 3 & 4**).

49.  The 2009 Amendment Agreement "expressly agreed that all such payments due on and after the Effective Date shall be applied to the payment of the Purchase Price." (**see Exhibit B; page 4**).

50.  Furthermore, the 2009 Amendment Agreement expressly provided that the "Initial Purchase Price" of 5 million dollars "shall be paid as follows:  (i) $500,000 shall be paid upon execution of this Agreement" and "(ii) $4,500,000 shall be paid in the form of royalties payable under the License Agreement." (**see Exhibit B; page 3; Section 2.2. <u>Purchase Price</u> (a) (i) & (ii)**)

51.  Plaintiffs note that 500,000 + 4,500,000 equals the sum of 5,000,000.

52.  The Escrow Holder, as modified in the 2009 agreement, was obligated to release Plaintiffs' trade secrets to the Defendant after the Initial Purchase Price of $5,000,000 was paid to the Plaintiffs in the form of royalty payments.

53.  Several pages in the 2007 agreement and several pages in the 2009 agreement are

devoted to the issue of Plaintiffs' trade secrets, including but not limited to, how and where the trade secrets would be held and how and when and under what conditions the trade secrets would be released to the Defendant.

54.  The trade secreted pouches upon which the Sea-Monkeys® product is based, as provided for in the 2007 and 2009 agreements between the parties, were to be manufactured exclusively by the Plaintiffs until the Defendant realized the Initial Purchase Price.

55.  The Defendant agreed, in accordance with both the 2007 and 2009 agreements between the parties, to NOT manufacture the pouches without having first received the trade secrets held in escrow.

56.  Plaintiffs' trade secrets relating to Plaintiffs' Sea-Monkeys® product are essential to the long term success of the product.

57.  The Defendant never gave notice to the Plaintiffs of Defendant's intent to manufacture the pouches without having first received the trade secrets held in escrow.

58.  The 2007 License Agreement provided that the "agreement shall be governed by the laws of the State of New York." (**see Exhibit A; page 26; paragraph 21**)

59.  On or about the date of December 6th 2012 Defendant, through its agents, called Yolanda von Braunhut on the telephone.

60.  On or about the date of December 6th 2012, a few days before the December 10th 2012 royalty payment was due, Defendant, through its agents, called Yolanda von Braunhut on the telephone and informed Plaintiffs of Defendant's intention to NOT provide the royalty payment on the December 10th due date.

61.  On or about the date of December 6th 2012 Defendant, through its agents, indicated to Plaintiffs at that time and on that same phone call a desire to restructure and/or reformulate the

agreement between the parties.

62.  Defendant did not provide written notice at that time (on or within a month before or after 12-10-12) to Plaintiffs of Defendant's claim that it had purchased Plaintiffs' intellectual property.

63.  Defendant did not provide written notice at that time (on or within a month before or after 12-10-12) to Plaintiffs that Defendant needed more time to pay the royalty payment due on December 10th 2012.

64.  Defendant did NOT pay to Plaintiffs a royalty payment on December 10th 2012.

65.  Defendant ceased to make laboratory fee payments near the end of the year 2012.

66.  Defendant has not made any royalty payments to Plaintiffs since before the date of December 1st of the year 2012.

67.  The 2009 Amendment Agreement, namely *Section 2.4.(a)* Remedies for BTT failure to Pay Royalties (**see Exhibit B; page 6**), provided that, in the event of a failure to make a royalty payment that the Licensee shall have 15 days from the date of receipt of notice of failure to make a royalty payment to cure any such default.

68.  Plaintiff sent notice to Defendant of the failure of Defendant to make a royalty payment in the form of a letter entitled "NOTICE OF DEFAULT" sent to the main offices of Defendant on December 20, 2012. (**see Exhibit C**)

69.  Plaintiff declared,[1] 15 days after the receipt of the "NOTICE OF DEFAULT" by Defendant without cure of the default, the 2009 Amendment Agreement and the 2007 License Agreement "null and void and of no further force of effect" in a letter sent to the Defendant dated January 18, 2013. (**see Exhibit D**)

---

[1]  The declaration of termination is consistent with *Section 2.4.(a)(i)* of the 2009 Amendment Agreement. (**see Exhibit B; page 6**)

70.  Defendant, through its agents, sent a letter to Plaintiffs' counsel dated January 22, 2013. (**see Exhibit E**)

71.  The letter, referenced as **Exhibit E**, sets forth a notion that the pouch payments for the purchase of the Sea-Monkeys® pouches should be counted toward the realization of the first 5 million dollars or "Initial Purchase Price" of the 10 million dollar total purchase price of Sea-Monkeys® Properties.

72.  The letter, referenced as **Exhibit E**, represents the first time in written form that the Defendant has claimed that the pouch payments for the purchase of the Sea-Monkeys® pouches should be counted toward the realization of the first 5 million dollars or "Initial Purchase Price" of the 10 million dollar total purchase price of Sea-Monkeys® Properties.

73.  Such a notion as set forth in the letter, referenced as **Exhibit E**, is nowhere to be found or can be held to be anywhere implied in either the 2007 License Agreement or the 2009 Amendment to License Agreement.

74.  Such an unfounded notion in the letter, referenced as **Exhibit E**, is fraught with malice.

75.  The payments that the Defendant made to Plaintiffs for the purchase of the trade secret Sea-Monkeys® pouches were NOT royalty payments.

76.  The phrase "all such payments" in the last line of Section 2.2(a) of the 2009 Amendment Agreement refers to all such royalty payments, and no other payment, being now (relative to the initial 2007 License Agreement) applicable to the realization of the 5 million dollar "Initial Purchase Price". (**see Exhibit B; page 4**)

77.  Plaintiffs allege that from December 2012 through to the Spring of 2013 that the Defendant, through its agents, attempted to persuade Plaintiffs to accept a lower purchase price

for the sale of "Sea-Monkeys® Properties".

78.  Plaintiffs did NOT agree with Defendant to accept a lower purchase price for the sale of "Sea-Monkeys® Properties".

79.  Plaintiffs reconfirmed the declaration of termination of the 2009 Amendment Agreement and the 2007 License Agreement in a letter sent to the Defendant dated January 29, 2013. (**see Exhibit F**)

80.  Plaintiffs sent further correspondence to Defendant in attempts to resolve the issues in as civil a manner as possible and avoid the need for unnecessary and frivolous litigation. (**see Exhibit G**)

81.  Plaintiffs allege that Defendant, through its agents, responded with counter offers. (**see Exhibit H**)

82.  Plaintiffs allege that Defendant further responded by threatening to initiate litigation against Plaintiffs should Plaintiffs attempt to enter into agreement(s) with third parties to license the Sea-Monkeys® product to anyone else.

83.  Plaintiffs allege that Defendant did not initiate legal process of any sort against Plaintiffs between December 10th of the year 2012 and the current date.

84.  Plaintiffs allege that Defendant at no point up to the current date did Defendant set forth a written request to the Escrow Holder to release the trade secreted intellectual property held by the Escrow Holder into Defendant's custody.

85.  Plaintiffs allege that Defendant at no point up to the current date did Defendant initiate legal process to compel the Escrow Holder to release the trade secreted intellectual property held by the Escrow Holder into Defendant's custody.

86.  The Defendant continued and continues to sell the Sea-Monkeys® product.

87.  The Defendant continued and continues to sell Plaintiffs' Sea-Monkeys® product.

88.  The Defendant depicted notice of Plaintiffs' trademarks on the packaging of the Sea-Monkeys® product manufactured by Defendant that the Defendant continued to sell after December of the year 2012.

89.  The Defendant continues to depict (up to the present moment in time) notice of Plaintiffs' trademarks on the packaging of the Sea-Monkeys® product manufactured by Defendant that the Defendant continues to sell.

90.  The Defendant listed Plaintiffs' address and point of contact on the packaging of the Sea-Monkeys® product manufactured by Defendant that the Defendant continued to sell after December of the year 2012.

91.  The Defendant continues to list (up to the present moment in time) Plaintiffs' address and point of contact on the packaging of the Sea-Monkeys® product manufactured by Defendant that the Defendant continues to sell.

92.  Uncontroverted *prima facie* evidence of breach of the 2009 Amendment Agreement and the 2007 License Agreement by Defendant is detailed within this Complaint.

93.  The contract between Plaintiffs and the Defendant was effectively terminated upon Plaintiffs declaration of such after Defendant's failure to cure the default after receiving proper notice of default. (**see Exhibit B; page 6; see also Exhibits D & F**)

94.  Pursuant to *Section 2.4.(a)* Remedies for BTT failure to Pay Royalties of the 2009 Amended Agreement the remedies for failure to pay the royalty after notice of default and failure to cure default provide, among other things, that Plaintiffs be entitled to:  1) declare the agreement terminated with "no further force or effect", 2) "commence an action for equitable relief, including but not limited to, injunctive relief prohibiting any continued use of the Licensed

Trademarks and Licensed Copyrights", 3) require that Defendants "immediately cease selling, marketing, or producing the Licensed Products and Sea-Monkeys® Properties", and finally, 4) that "any rights granted" under the contract to Defendant be "deemed null and void". (**see Exhibit B; pages 6 & 7**)

95.  Plaintiffs allege that Defendant agreed to pay to Plaintiffs $4,500,000 in the form of royalty payments.

96.  Plaintiffs allege that Defendant did NOT pay to Plaintiffs $4,500,000 in the form of royalty payments.

97.  Defendant, all throughout the days between January 18, 2013 and the date of November 25th 2013, prominently featured the Sea-Monkeys® product on the homepage of the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K, L, M & N**)

98.  Plaintiffs allege that Defendant continues through to the present to prominently feature the Sea-Monkeys® product on the homepage of the *Big Time Toys* website.

99.  Plaintiffs have been harmed by Defendant's interference with Plaintiffs' ability to generate profits from the Sea-Monkeys® product.

100.  *Educational Insights* was a former licensee of Plaintiffs' Sea-Monkeys® product.

101.  Sales of the Sea-Monkeys® product by *Educational Insights* over the twelve months ending on December 31, 2006 exceeded $3,400,000. (**see Exhibit A; Page 6 paragraph 1 (D) (vii) of the 2007 Agreement**)

102.  The 2009 agreement between the parties provided an option for Plaintiffs to terminate the agreement between the parties if the Gross Sales of Licensed Product of Plaintiffs' Sea-Monkeys® product went below the amount of $3,000,000 in any calendar year before the realization of the Initial Purchase Price OR the Additional Purchase Price. (**see Exhibit B; Page**

**5 paragraph 2.3 of the 2009 Agreement**)

103.  Plaintiffs now seek the Court's assistance:  1) to recover damages resultant from Defendant's past, ongoing, and continuing unauthorized use of Sea-Monkeys® Properties and 2) to prevent further future harm to the Plaintiffs by the actions of the Defendant.

<u>**COUNT ONE**</u>
<u>**Damages Sustained from Defendant's Breach of Contract**</u>

104.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

105.  Plaintiffs maintain that a valid contract existed between the parties as evidenced from the 2007 License Agreement and the 2009 Amendment to License Agreement (**see Exhibits A & B**).

106.  Plaintiffs were in compliance with the terms of the agreement between the parties.

107.  Plaintiffs performed the contractual obligations it was obliged to perform with respect to the contractual relationship formed between the parties.

108.  Defendant did not at any time over the duration of the agreement between the parties send to Plaintiffs a written notice to Plaintiffs that Plaintiffs were in breach of the agreement between the parties.

109.  Defendant failed to produce the royalty payment due on December 10th 2012.

110.  Defendant has not made any royalty payments to Plaintiffs after the date of December 10th 2012.

111.  Defendant has NOT made a single laboratory fee payment since Defendant's breach of contract in December of 2012.

112.  Defendant has not made any payments of any kind to Plaintiffs after the date of December 10th 2012.

113.  Defendant was sent a notice of default dated December 20, 2012 (**see Exhibit C**) and was given 15 days to cure the default.

114.  Defendant did not cure the default.

115.  Defendant failed to correct the default within 15 days after receipt of notice of default.

116.  Plaintiffs declared the agreement between the parties "null and void with no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 18th 2013. (**see Exhibit D**)

117.  Defendant continues to sell the Sea-Monkeys® product.

118.  Defendant continues to sell Plaintiffs' Sea-Monkeys® product.

119.  Defendant continues to receive benefits from and continues to be enriched from continuing and ongoing sales of the Sea-Monkeys® product.

120.  If the Defendant is found to have begun manufacturing the trade secreted pouches without first having obtained the trade secrets from the Escrow Holder then the Defendant, on those grounds alone, can be found to be in breach of the agreement between the parties.

121.  If the Defendant is found to have generated Gross Sales of the Sea-Monkeys® Licensed Product below the amount of $3,000,000 in any calendar year before the realization of the Initial Purchase Price OR the Additional Purchase Price (**see Exhibit B; Page 5 paragraph 2.3 of the 2009 Agreement**) then the Plaintiffs, on those grounds alone, can move to terminate the agreement between the parties.

122.  As a result of the aforementioned breach of contract Plaintiffs have suffered damages resultant from Defendant's failure to produce the royalty payments and the supplemental laboratory fee payment as provided for in the 2009 Amendment to License

Agreement.

123.  The 2009 Amendment to License Agreement provided that Defendant pay a royalty of 20% of Gross sales of monies generated from sale to third parties of the previously licensed Sea-Monkeys® product.

124.  The 2009 Amendment to License Agreement provided a forecast of approximately $3,750,000 Gross sales per year of the Sea-Monkeys product and based upon that figure provided a minimum royalty payment payable by Defendant to Plaintiffs of $750,000 per year (payable in quantities of $62,500 per month). (**see Exhibit B; page 4 & 5**)

125.  As a result of Defendant's continuing sales of Plaintiffs' Sea-Monkeys® product to major mass market retailers (and other clients) the Plaintiffs have been prevented from selling to those same major mass market retailers (and other clients) without the risk of those major mass market retailers (and other clients) ceasing and discontinuing all sales of Plaintiffs' Sea-Monkeys® product from those outlets.

126.  Compensatory damages in the State of New York "place the non-breaching party in as good a position as it would have been had the contract been performed." *Brushton-Moira Cent. School Dist. v. Fred H. Thomas Assocs., P.C.,* 91 N.Y.2d 256, 261, 692 N.E.2d 551, 669 N.Y.S.2d 520 (N.Y. 1998).

127.  Damages are based on the accrual date of Plaintiffs' cause of action (*Rodriguez v Moore-McCormack Lines*, 32 NY2d 425, *supra*; *Simon v. Electrospace Corp.*, 28 NY2d 136, *supra*).

128.  Plaintiffs bring this action to compel the Defendant to cease selling Plaintiffs intellectual property and to receive the monies that Plaintiffs are entitled to receive.

129.  Plaintiffs note that interest is awarded pursuant to statutory mandate; most notably

CPLR 5001(a) providing that interest shall be recovered upon a sum awarded for a breach of contract and CPLR 5001(b) mandating that "interest shall be computed from the earliest date the cause of action existed". (**see Exhibit I**)

130.  As a result of the breach of contract, as described above, Plaintiffs have suffered money damages for royalty payments NOT PAID in the amount of $62,500.00 per month for each and every month (due on the tenth of each month) since Defendant's first failure to produce the royalty payment due on December 10th 2012.

131.  As a result of Defendant's breach of contract, as described above, Plaintiffs have suffered money damages for unpaid supplemental laboratory fee payments in the amount of $375.00 per week for each and every week since Defendant's first failure to pay this fee on or about December 10th 2012.

132.  As a result of Defendant's breach of contract, as described above, Plaintiffs continue to suffer money damages for royalty payments NOT paid in the amount $62,500.00 for each and every future month that goes by from the date of this Complaint forward; all resultant from Defendant's failure to produce the royalty payment due on the 10th of each month as specified in the breached agreement.

## COUNT TWO
## Defendant's Unjust Enrichment from Quasi Contract

133.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

134.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

135.  Defendant has been unjustly enriched by Defendant's continuing and ongoing unauthorized sales of the Sea-Monkeys® product.

136.   Defendant was enriched at the expense of the Plaintiffs and Plaintiffs were harmed accordingly:  1) by minimally the measure of the fair market value or *quantum meruit* of the benefit received by the Defendant from sales of Plaintiffs Sea-Monkey® product and 2) by maximally preventing and/or interfering with Plaintiffs' right to generate sales on Plaintiffs' own accord from sales or license agreements of the Sea-Monkeys® product to third parties.

137.   Defendant's non-accountability, delay, obstruction, and inability to account for the profits generated from past and continuing sales of the previously licensed Sea-Monkeys® product is inherently unjust.

138.   Defendant has no good faith basis or defense to justify or otherwise excuse their past and ongoing enrichment at the expense of the Plaintiffs.

139.   Defendant has no good faith basis or defense for its continuing, corruptible posture.

140.   Plaintiffs seek both remedies at law and remedies in equity for Plaintiffs unjust enrichment as stated throughout this Complaint in the form of:  1) money damages for monies that have otherwise been diverted from the Plaintiffs and 2) equitable relief in the form of injunctions that will prevent Defendant from visiting continuing future harm upon the Plaintiffs.

141.   As a result of Defendant's unjust enrichment, as described above, Plaintiffs have suffered substantial financial damages by the self-serving actions of the Defendant and will continue to suffer ongoing recurring future damages if Defendant is not otherwise prevented by Court Order from doing so.

## COUNT THREE
## Trademark Infringement

142.   Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

143.   Plaintiffs have clear and unequivocal title to the intellectual property that formed

the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (**see Exhibit A; sub-exhibits A thru D**)

144.  Plaintiffs declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement in January of 2013. (**see Exhibits D & F**)

145.  Plaintiffs own *all* trademarks for the Sea-Monkeys® product. (**see Exhibit A; sub-exhibits A thru D**)

146.  All of Plaintiffs' trademarks for the Sea-Monkeys® product are registered with the United States Trademark and Patent Office (**USPTO**). (**see Exhibit A; sub-exhibits A thru D**)

147.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

148.  Defendant, between the dates of January 18, 2013 and November 25th 2013 and thereafter, prominently featured/features the trademarked Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K, L, M, & N**)

149.  Defendant, between the dates of January 18, 2013 and November 25th 2013 and thereafter, identified/identifies the trademarked Sea-Monkeys® product as one of "***Our Home Run Toys***" on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibit M**)

150.  Defendant has presented and continues to present to the world an assumed right and/or authorization to sell the trademarked Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K & M**).

151.  Defendant has received and continues to receive benefits from continuing and ongoing sales of the Sea-Monkeys® product.

152.  Defendant has not compensated Plaintiffs for their past and ongoing unauthorized use of Plaintiffs trademarked Sea-Monkeys® product.

153.  Defendant willfully continues to profit from its use of Plaintiffs trademarked Sea-Monkeys® product.

154.  Defendant's profits come at the expense of Plaintiffs and precipitate harm upon the Plaintiffs.

155.  Defendant on its website represents to its partners/retailers that it has authorization to sell the trademarked Sea-Monkeys® product. (**see Exhibits K, M, & N**)

156.  Defendant has no authorization to sell Plaintiffs' Sea-Monkeys® product.

157.  Defendant has no authorization to manufacture Plaintiffs' Sea-Monkeys® product.

158.  Defendant has no authorization to manufacture the trade secreted pouches upon which Plaintiffs' Sea-Monkeys® product is based.

159.  Defendant's representation of authorization to sell the trademarked Sea-Monkeys® product on Defendant's web site has interfered with Plaintiffs ability to enter into 3rd party contractual relationships to profit from its Sea-Monkeys® product.

160.  Defendant, through its egregious and ongoing disingenuous conduct, has visited harm upon the market strength and veracity of Plaintiffs' trademarked intellectual property.

161.  The Lanham Act; enacted July 6, 1946, codified at 15 U.S.C. § 1051 et seq. (15 U.S.C. ch. 22; provides remedies that can be sought when a trademark is infringed in Subchapter III, Sections 42 and 43.

162.  These provisions are codified in 15 USC §1117; "Recovery for violation of rights; profits, damages and costs; attorney fees; treble damages". (**see Exhibit J**)

163.  Plaintiffs elect to be compensated, determinable at trial, by the greater of actual

damages, defining compensatory damages as all profits Defendant unrightfully obtained, or statutory damages as provided for by the Lanham Act and/or other laws of the USA.

164.  As a result of the trademark infringement, as described above, Defendant has profited and continues to profit from intellectual property to which Defendant has no claim.

**COUNT FOUR**
**Copyright Infringement**

165.  Plaintiffs repeat, reiterate, and re-allege each and every fact and/or allegation set forth above and incorporate such as if fully set forth herein.

166.  Plaintiffs have clear and unequivocal title to the intellectual property that formed the basis for the contractual relationship established between the Plaintiffs and the Defendant in 2007 and revisited in 2009. (**see Exhibit A; sub-exhibits A thru D**)

167.  Plaintiffs declared the agreement between the parties "null and void and of no further force or effect" pursuant to *Section 2.4.(a)(i)* of the 2009 Amendment Agreement on January 2013. (**see Exhibits D & F**)

168.  Plaintiffs own *all* copyrights for the Sea-Monkeys® product. (**see Exhibit A; sub-exhibits A thru D**)

169.  Plaintiffs' copyrights for the Sea-Monkeys® product are registered with the United States Copyright Office (**USCO**). (**see Exhibit A; sub-exhibits A thru D**)

170.  Plaintiffs have NOT received royalty payments from Defendant since Defendant's last royalty payment was received on or about November 10th 2012.

171.  Defendant, between the dates of January 18, 2013 and November 25th 2013 and thereafter, prominently featured/features the copyrighted Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K, L, M, & N**)

172.  Defendant, between the dates of January 18, 2013 and November 25th 2013 and

thereafter, identified/identifies the copyrighted Sea-Monkeys® product as one of "***Our Home Run Toys***" on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibit M**)

173.   Defendant has presented and continues to present to the world an assumed right and/or authorization to sell the copyrighted Sea-Monkeys® product on the *Big Time Toys* website located at http://www.bigtimetoys.com/. (**see Exhibits K & M**).

174.   Defendant has received and continues to receive benefits from continuing and ongoing unauthorized sales of the Sea-Monkeys® product.

175.   Defendant has not compensated Plaintiffs for their past and ongoing use of Plaintiffs copyrighted Sea-Monkeys® product.

176.   Defendant willfully continues to profit from its unauthorized use of Plaintiffs copyrighted Sea-Monkeys® product.

177.   Defendant's profits come at the expense of Plaintiffs and precipitate harm upon the Plaintiffs.

178.   Defendant on its website represents to its partners/retailers that it has authorization to sell the copyrighted Sea-Monkeys® product. (**see Exhibits K, M, & N**)

179.   Defendant has no authorization to sell Plaintiffs' Sea-Monkeys® product.

180.   Defendant has no authorization to manufacture Plaintiffs' Sea-Monkeys® product.

181.   Defendant has no authorization to manufacture the trade secreted pouches upon which Plaintiffs' Sea-Monkeys® product is based.

182.   Defendant's representation of authorization to sell the copyrighted Sea-Monkeys® product on Defendant's web site has interfered with Plaintiffs ability to enter into 3rd party contractual relationships to profit from its product.

183.  Exclusive rights in copyrighted works are defined and remedies for infringement are contained in Chapter 1 of Title 17 of the *United States Code* (USC). (**see Exhibit P**)

184.  Chapter 5 section 501 of Title 17 of the USC provides for an action of *Infringement of Copyright;* 17 USC § 501. (**see Exhibit P**)

185.  Plaintiffs assert that the copyrighted Sea-Monkeys® product is a protected work, that the Defendant copied the protected work, and that such copying of the protected work was an infringement of Plaintiffs copyright.

186.  Chapter 5 section 504 of Title 17 of the USC provides for remedies for copyright infringement; 17 USC § 504. (**see Exhibit Q**)

187.   Plaintiffs will elect to be compensated, before final judgment of the matter, by either actual damages, defining compensatory damages as all profits Defendant unrightfully obtained, or statutory damages as provided for by US Copyright Law.

188.  As a result of the copyright infringement, as described above, Defendant has profited and continues to profit from intellectual property to which Defendant has no claim.

## DEMAND FOR EQUITABLE RELIEF

WHEREFORE, the Plaintiff respectfully requests the following equitable relief:

(1) The issuance of a permanent injunction by the Court prohibiting any continuing use of Plaintiffs' trademarks or copyrights by the Defendant;

(2) The issuance of an Order of the Court requiring that the Defendant immediately cease selling, marketing, and/or producing any of Plaintiffs' Licensed Products, including but not limited to Sea-Monkeys® Properties;

(3) The issuance of a preliminary injunction by the Court prohibiting any continuing use of Plaintiffs' trademarks or copyrights by the Defendant for the duration of this lawsuit;

(4) The issuance of a preliminary Order of the Court effective for the duration of this lawsuit requiring that the Defendant immediately cease selling, marketing, and/or producing any of Plaintiffs' Licensed Products, including but not limited to Sea-Monkeys® Properties;

(5) The issuance of an Order of the Court requiring that the Defendant immediately return to Plaintiffs any and all unsold product, packets, tooling, packaging materials, and any other thing related to the previously Licensed Products as provided for in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(6) The issuance of a permanent Order of the Court prohibiting the Defendant from selling, marketing, and/or producing "knock-off" products related to Sea-Monkeys® Properties as defined in the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(7) Assessing against the Defendant punitive damages, in favor of Plaintiffs, to punish the Defendant for its egregious behavior and uncivil tortious actions which necessitated the bringing of this lawsuit;

(8) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.

## DEMAND FOR RELIEF AT LAW

WHEREFORE, in addition to the above stated equitable relief, the Plaintiff respectfully requests the following relief at law:

(1) Awarding the Plaintiffs the greater of 1) compensatory damages for royalty payments NOT paid in the amount of SIXTY TWO THOUSAND FIVE HUNDRED DOLLARS ($62,500.00 USD) multiplied by the number of months that minimum royalty payments

have NOT been paid (beginning on December 10th 2012)[2] **OR** 2) compensatory damages equaling 20% of Gross sales of monies generated from sale to third parties of the previously licensed Sea-Monkeys® product for the period that royalty payments have NOT been paid (beginning on December 10th 2012); for amounts past due pursuant to the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(2) Awarding the Plaintiffs compensatory damages for supplemental laboratory fees NOT paid in the amount of THREE HUNDRED AND SEVENTY FIVE DOLLARS ($375.00 USD) multiplied by the number of weeks that supplemental laboratory fees have NOT been paid (beginning on December 10th 2012)[3] for amounts past due pursuant to the now terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(3) Awarding the Plaintiffs interest thereupon due, in accordance with the now terminated 2007 "License Agreement" and the likewise terminated 2009 "Purchase Agreement and Amendment to License Agreement";

(4) An awarding of statutory damages or actual damages in the form of the full measure of profit obtained by Defendant at Plaintiffs expense at the election of the Plaintiffs, commensurate with interest, from Defendant to Plaintiffs for Defendant's willful and egregiously executed trademark and copyright infringements of Plaintiffs' intellectual property as detailed within this Complaint;

(5) An awarding of damages resultant from Defendant's ongoing tortious interference with Plaintiff's ability to form and enter into contracts with 3rd parties to profit from its

---

[2] The amount past due, using the minimum royalty payment as the measure of damages, as of September 10th 2013 is exactly SIX HUNDRED AND TWENTY FIVE THOUSAND DOLLARS (**$625,000.00 USD**). On October 10th 2013 and on the tenth of every month thereafter this amount will increase incrementally by SIXTY TWO THOUSAND FIVE HUNDRED DOLLARS (**$62,500.00 USD**).

[3] The amount past due as of September 6th 2013 is exactly FOURTEEN THOUSAND SIX HUNDRED AND TWENTY FIVE DOLLARS (**$14,625.00 USD**). Every week thereafter, from 9-6-13 forward, this amount will increase incrementally by THREE HUNDRED AND SEVENTY FIVE DOLLARS (**$375.00 USD**).

trademarked products or to otherwise mitigate damages that are resultant of the impasse created artificially by Defendant  upon which this Compliant is based;

(6) An awarding of punitive damages paid to Plaintiffs by the Defendant, proportional to the degree of Defendant's egregious behavior as determined by the trier of fact, based upon Defendant's presentation of deliberate untruth and insincere assertions to create and prolong the current impasse upon which this Compliant is based; and

(7) Awarding the Plaintiffs attorney's fees, costs, and disbursements of this action, and any such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38 Plaintiffs hereby demand a trial by jury on any issue triable of right by a jury.


Respectfully Submitted,

By: _s/ William Timmons_
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
 (631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT

Dated:  December 1, 2014