UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x
                                            :
TRANSCIENCE CORPORATION &                   :
YOLANDA VON BRAUNHUT (individual)           :
                          Plaintiffs        :
                                            :
            -against-                       :   Index No.:   13 CV 6642
                                            :
                                            :
BIG TIME TOYS, LLC                          :
                          Defendant.        :
_____ x


**PLANTIFFS' MEMORANDUM of POINTS and AUTHORITIES
in OPPOSITION to
DEFENDANT's MOTION TO AMEND ITS ANSWER TO ASSERT ADDITIONAL
COUNTERCLAIMS**

**AND**

**in QUALIFIED SUPPORT
OF DEFENDANT's MOTION TO DISMISS ONE OF THE PLAINTIFFS**


*Plaintiffs Transcience Corporation & Yolanda von Braunhut*


May 9, 2016

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………..…………………………..…………3

PRELIMINARY STATEMENT……………………………………………………………….....4

BACKGROUND …………………………………………………………………………....…..5


**FIRST PART ARGUMENT:**
**Defendant's motion to amend its Answer should be DENIED**

1. *Introduction*……………………………………………………………………………….6

2. *Trademark Assignment Abstract of Title shows Yolanda von Braunhut as owner*……………….7

3. *Defendant's previous indifference and complacency to chain of title issue*………………………9

4. *Futility, bad faith, and dilatory motive on the part of the movant*……………………………….10

5. *Conclusion*……………………………………………………………………………………11


**SECOND PART ARGUMENT:**
**Defendant's motion to dismiss should be a qualified dismissal**

1. *Defendant's motion to dismiss one of the Plaintiffs should also dismiss all counterclaims not jointly and severally attachable to the remaining Plaintiff*………………………………….....12

2. *An Order dismissing the corporation must therefore qualify that any claims based upon the performance or lack thereof of the corporation be likewise also dismissed from the action for failure to pierce the corporate veil* …………………………………………………………..13


CONCLUSION……………………………………………………………………………….....14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Foman v. Davis*, 371 U.S. 178, 182 (1962)……………………………………………..….……..9

*Mianese v. Rust-Oleum Corp.*, 244 F3d 104, 110 (2d Cir. 2001)……………………………..……10

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)……………………………….. 10

*Azurite Corp. v. Amster & Co.*, 844 F.Supp. 929, 939 (S.D.N.Y.1994)………………..………..…...10

*Foman v. Davis*, 371 U.S. 178, 182 1962)………………………………………………………….11

*Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)…………………………..13

**Other Authorities**

FRCP 15(a)(2)………………………………………………………………………......…..9

FRCP 12(b)(6)……………………………………………………………………………………..9

FRCP 56(c)……………………………………………………………………….………10

FRCP 19 (a)(1)(A)………………………………………………………………………………12

**Preliminary Statement**

This memorandum is respectfully submitted to the United States District Court (USDC) for the Southern District of New York (SDNY) on behalf of Plaintiffs Transcience Corporation & Yolanda Von Braunhut (individual) in opposition to the Defendant's motion to amend its Answer to assert additional counterclaims.  This memorandum will petition the Court to DENY the motion with particular attention toward:

1. *prima facie* evidence that indicates that Yolanda von Braunhut is the current owner of all of the intellectual property relating to the product known to the world as Sea-Monkeys®;

2. *prima facie* evidence that indicates that Yolanda von Braunhut was the owner of all of the intellectual property that formed the basis between the now terminated agreement between the parties at the time the former agreement was formed;

3. Evidence that indicates that the Defendant had notice and knowledge of the status of the chain of title of the trademarks, were indifferent, unaffected, or otherwise complacent, and elected to proceed with the agreement regardless;

4. Futility, bad faith, and dilatory motive on the part of the movant

This memorandum is also respectfully submitted to the USDC for the SDNY on behalf of Plaintiffs in support of a qualified Order of the Court dismissing one of the Plaintiffs from the action.  This memorandum will petition the Court for such with particular attention toward:

1. *prima facie* evidence that indicates that the named corporation in the action performed particular activities that acted to shield the individual in the action from alleged liabilities or damages resultant of the same activities;

2. an Order dismissing the corporation must therefore qualify that any claims based upon the performance or lack thereof of the corporation be likewise also dismissed from the action.

## BACKGROUND

Plaintiffs **Transcience Corporation** (TSC) and *Yolanda von Braunhut* (as the CEO of TSC) entered into a written contractual relationship with **Big Time Toys, LLC** (a Tennessee limited liability company) in the year 2007.  The contract licensed the premier brand name product and intellectual property protected **Sea-Monkeys®** product to Big Time Toys (hereinafter "BTT" or "Defendant") in exchange for a 10% royalty of gross worldwide sales of the product made by BTT.  This contract also afforded BTT the option to purchase the entire **Sea-Monkeys®** brand name for 10 million dollars broken into two 5 million dollar increments; namely an Initial Purchase Price (IPP) and an Additional Purchase price (APP).

Problems between the parties immediately ensued and the parties performed a novation of their original agreement in the year 2009.  This novated agreement increased the royalty rate payable to the Plaintiffs to 20% but also applied those 20% payments and the payments made "hereunder" the 2007 and 2009 agreements ($100,000 and $500,000 respectively) to the IPP.

In the month of January of the year 2013 the agreement between the parties was terminated pursuant to the terms of the agreement after BTT failed to pay monies due in accordance with the agreement.  Antagonistically, BTT, failed to stop selling the **Sea-Monkeys®** product.  The Plaintiffs were forced to initiate the action *Transcience et al. v. Big Time Toys, LLC* (13-cv-6642) that is currently pending before the Court to compel BTT to stop selling the Plaintiffs' **Sea-Monkeys®** product.

The status quo, however, did not stop there.  The **Sea-Monkeys®** product is dependent upon zealously guarded trade secrets.  Trade secrets relating to the **Sea-Monkeys®** product were generated over many years of trial and error.

The former agreement between the parties provided that BTT would manufacture the packaging and assorted peripherals of the **Sea-Monkeys®** product AND that TSC, as the licensee of *Ms. von Braunhut*, would be the sole and exclusive producer of the trade secreted contents of **Sea-Monkeys®** pouches.  The pouches were historically purchased by BTT and subsequently incorporated into the final version of the **Sea-Monkeys®** product that was sold to the public.  This ensured that *Ms. von Braunhut*, as the licensor to TSC, could control and maintain the high quality of the trade secreted formulation in the pouches that the public has come to know and trust.

Contemporaneous to being served notice of the federal lawsuit BTT took it upon itself to reverse engineer and counterfeit the contents of **Sea-Monkeys®** pouches in China. Counterfeited pouches are NOW being fitted into the **Sea-Monkeys®** product that is sold to the public.  Notably, BTT never had or in any way legally obtained or otherwise established the right, authority, or permission to manufacture (let alone counterfeit) **Sea-Monkeys®** pouches.

As a direct result of BTT's counterfeiting operation in China long time fans, customers, and buyers of the **Sea-Monkeys®** product are now being ripped off.  The current counterfeited version of **Sea-Monkeys®** product being manufactured and sold by BTT is damaging the goodwill of the **Sea-Monkeys®** brand that was built up over decades.

BTT has now moved the Court to give it permission to amend its Answer to include an additional counterclaim against the Plaintiffs.  This new counterclaim sought relates to the chain of title of the trademarks held by *Ms. von Braunhut*.  In addition, the Defendant desires to remove one of the Plaintiffs from the action.  The Plaintiffs respond as follows.

**FIRST PART ARGUMENT:   Defendant's motion to amend its Answer should be DENIED**

1) *Introduction*

A distinction has to be made between trademark registrations and trademark ownership. In the U.S. trademarks are created by use.  A use of the trademark creates a good will with the public and that is the underpinning of the trademark and the trademark law.

A registration that is recorded with the USPTO is a nice thing to have.  It gives *prima facie* positions with regard to ownership and other factors, but trademark registrations do not create trademarks.  Trademarks are generated pursuant to common law.  The registration is simply a registration of that common law right.  It's clear that these trademarks have been in existence since Harold von Braunhut created the company.  These marks have been used continuously.  There has been no lapse in the use of these marks.  Irrespective of the registrations, the continuing use of the marks has created, and continues to create, common law good will and trademark rights.

The owner of the common law rights in a trademark can be an individual, a company or corporation, a partnership, or any entity that is actually using the mark, which means placing the trademark on a product and selling it in interstate commerce.  It can also be anyone who has

licensed the mark to somebody else and is receiving a royalty for the right to use that trademark in interstate commerce.  In this case, there was continuous use since the inception of the product and the trademark.  There was no lapse.  Somebody was always using the marks.

### 2) *Trademark Assignment Abstract of Title shows Yolanda von Braunhut as owner*

Notwithstanding the foregoing, the Defendant, all throughout its motion seeking to amend its Answer to include an additional counterclaim, addresses incompletely the long history[1] of the trademarks in question as registered with the United States Patent and Trademark Office (**USPTO**).  The Defendant, whether deliberately or not, fails to address in its argument the *nunc pro tunc* assignments as recorded with the **USPTO** that clearly indicate that Yolanda von Braunhut (and no other) is the owner of all of the **Sea-Monkeys®** trademarks.

To that end Plaintiffs have included as Exhibits A through F the Trademark Assignment Abstract of Title for the U.S. trademarks in this case as maintained by the **USPTO** that indicate that Yolanda von Braunhut (and no other) is the owner of all the trademarks relating the product known to the world as **Sea-Monkeys®**.

Exhibits A through F correspond to the following marks:  A) "Sea-Monkeys", B) Ocean Zoo, C) Hatched Egg Design, D) Instant Life, E) Instant Pets, and F) Sea-Monkeys.  This information is readily available to the public at large via the Trademark Electronic Search System (**TESS**) that is maintained by the **USPTO**.  This information details the latest time stamped abstract of title on record by the **USPTO**.  This information was known to the Defendant in advance of its filing of its motion to amend its Answer.

**Exhibit A; "Sea-Monkeys"**
In this exhibit, Assignment #3 shows that on November 28, 2003 the partnership of Harold & Yolanda "ASSIGNS THE ENTIRE INTEREST" of the **USPTO** mark "SEA-MONKEYS" to the individual known as Yolanda von Braunhut.

**Exhibit B; Ocean Zoo**
In this exhibit, Assignment #2 shows that on November 28, 2003 the partnership of Harold & Yolanda "ASSIGNS THE ENTIRE INTEREST" of the **USPTO** mark "OCEAN ZOO" to the individual known as Yolanda von Braunhut.

---

[1] The oldest of the **Sea-Monkeys®** trademarks go back to the year 1963.

**Exhibit C; Hatched Egg Design**
In this exhibit, Assignment #3 shows that on November 28, 2003 the partnership of Harold & Yolanda "ASSIGNS THE ENTIRE INTEREST" of the **USPTO** mark "Hatched Egg Design" to the individual known as Yolanda von Braunhut.

**Exhibit D; Instant Life**
In this exhibit, Assignment #2 shows that on November 28, 2003 the partnership of Harold & Yolanda "ASSIGNS THE ENTIRE INTEREST" of the **USPTO** mark INSTANT LIFE to the individual known as Yolanda von Braunhut.

**Exhibit E; Instant Pets**
In this exhibit, Assignment #2 shows that on November 28, 2003 the partnership of Harold & Yolanda "ASSIGNS THE ENTIRE INTEREST" of the **USPTO** mark INSTANT PETS to the individual known as Yolanda von Braunhut.

**Exhibit F; Sea-Monkeys**
In this exhibit, Assignment #3 shows that on November 28, 2003 the partnership of Harold & Yolanda "ASSIGNS THE ENTIRE INTEREST" of the **USPTO** mark SEA-MONKEYS to the individual known as Yolanda von Braunhut.

Underlying all of the above assignments are previous assignments also included in the abstract of title as recorded with the **USPTO** (**see Exhibits A-F**) showing that prior to Yolanda's ownership all the marks were owned by the partnership of Harold & Yolanda. Working backward further the record shows that ½ of the marks came into the partnership through Harold von Braunhut's individual ownership and that the other ½ had come into the partnership via transfer from TSC.[2] More detailed information relating to the formation of the partnership, its operation, and its relationship to TSC can be found in Yolanda's affidavit as attached. (**see Exhibit G**)

As is undisputed in the record, the 2007 License Agreement (see Exhibit A of Plaintiffs 2nd Amended Complaint) was entered into on the date of June 26th 2007. This date is more than 3½ years after Yolanda had acquired title to ALL of the trademarks relating to the **Sea-Monkeys®** product. Yolanda von Braunhut is one of the 2 parties named in the former agreement between the parties. This information, as noted above, is available to the public 24/7 via **TESS** and on its face value puts to rest any and all concerns relating to the validity of the title of the trademarks held in the USA by Yolanda von Braunhut. It must also be noted here that all trademarks registered in foreign nations relating to the **Sea-Monkeys®** product have also been

---

[2] It is of note that the trademark identified as "TC & Design" in the Defendant's memo is the TSC design logo and has never been a part of the agreement between the parties or the current action.

subject to the same transference to Yolanda.  This is detailed in **Exhibit G** that shows that ALL of the intellectual property relating to the **Sea-Monkeys®** product was transferred from the partnership of Harold & Yolanda to Yolanda when Harold died in the year 2003. (**see Exhibit G; Page 4; Paragraph 36**)

      Continuous use of the marks in interstate commerce before the Defendant came into the picture and subsequent use by the Defendant since that time inured to the benefit of Yolanda von Braunhut.  This is so because she granted a license and the Defendant was using the marks with her authority and permission.  Under U.S. trademark law, it is well settled that any use by a licensee inures to the benefit of the licensor.  So those marks were owned by Yolanda, and continued to be owned by Yolanda, even by virtue of the former agreement until the agreement was terminated.

    **3)** *Defendant's previous indifference and complacency to the chain of title*

      A closer inspection of the Trademark Assignment Abstract of Title for each of these marks also reveals that **JEFFREY KRAMER** who is also the lead attorney of record in the current action for the Defendant BTT performed an assignment of a "Security Agreement" relating to each of the afore-noted marks on the date of May 25, 2010. (**see Exhibits A-F**)  This indicates at the very least that BTT had notice of the status of the chain of title for each of the marks as of that date.

      Moreover, common sense and due diligence mandates that BTT upon entering into an agreement upon which intellectual property is to form the foundation of the agreement could have, should have, and probably DID perform a review of the chain of title of all the marks that pertain to the agreement.  This suggests, if nothing else, that BTT likely knew of the details relating to the chain of title of all the marks they now bring into question at the time the contract was entered into. Notwithstanding the current motion before the Court, it also indicates that BTT had likely determined at the time of the formation of the agreement that there was no issue of invalidity or improper chain of title.  This is why the doctrine of licensee estoppel exists.

      Licensee estoppel is a doctrine under which a licensee of an intellectual property right, a trademark in the current instance, is estopped from challenging the validity of the licensed property.  The basis for the doctrine is the premise that a licensee should not be able to enjoy the benefit of an agreement and at the same time attack the validity of the intellectual property that forms the basis of the agreement.  BTT had the responsibility to look into the facts.  If Yolanda

von Braunhut doesn't own the marks, then who does? It isn't BTT. Someone has to own those trademarks because the marks are being used. There is good will out there and those marks are owned by somebody, and that somebody is Yolanda von Braunhut.

### 4) *Futility, bad faith, and dilatory motive on the part of the movant*

"The court should freely give leave when justice so requires." FRCP 15(a)(2)

"In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given'." *Foman v. Davis*, 371 U.S. 178, 182 (1962)

In the current instance the Defendant seeks to include an additional counterclaim that for all practical purposes is **futile** on its face. In its diatribe relating to the chain of title of the trademarks in this case as registered with the **USPTO** the Defendant puts blinders on and does not attempt to address in any way whatsoever the evidence that shows the chain of title leading clearly and unequivocally to *Ms. von Braunhut*. Instead the focus of its memorandum is the long and winded history of the marks in question. While anomalies in the chain of title do in fact occur they are completely overridden, overcome, and obviated by the chain of title that points to *Ms. von Braunhut*. The Defendant does not even attempt to address this central and controlling issue. As noted previously, the Defendant had this clear and overwhelming evidence in its possession *before* filing its motion to amend but chose to simply ignore its legal effect. As a result, the Defendant should be found to have waived its right to reply to that which it had blatantly chosen to overlook and disregard the first time around.

The Defendant fails to pass the test for futility of either of the rules set forth in *Mianese v. Rust-Oleum Corp*., 244 F3d 104, 110 (2d Cir. 2001) namely:

"… leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief. *see Ricciuti v. N.Y.C. Transit Auth*., 941 F.2d 119, 123 (2d Cir.1991)

or alternatively;

"…the court may deny the amendment as futile when the evidence in support of the…proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)." *see Azurite Corp. v. Amster & Co*., 844 F.Supp. 929, 939 (S.D.N.Y.1994)

In the current instance the Defendant in its proposed additional counterclaim pleads facts that when taken out of their very narrow context do not address the reality of the situation. It is somewhat akin to arguing that a roadway that was once dimly lit at some point in the past was at some point in the past dimly lit, well after the roadway having been fit with lighting has been fully illuminated. There is no argument there. These are not facts that would entitle the Defendant to relief.

Furthermore, the Defendant takes no position in its memo to the chain of title that leads unambiguously to *Ms. von Braunhut*. How can there be any triable issue of fact relating to the true and proper chain of title for all of the trademarks that the Defendant has brought into question when the Defendant has not even considered, let alone contested, the chain of title as entered into the public record?

> Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The justification for the denial of this opportunity to amend is the "futility of the amendment", the "bad faith" demonstrated by willful ignorance of the proper chain of title, and the somewhat gleeful "dilatory motive on the part of the movant" as demonstrated all throughout the history of this action.

5) *Conclusion*

Based upon the evidence now before the Court, it is apparent that: 1) had BTT NOT breached the agreement between the parties and 2) if the contract between the parties was NOT terminated then 3) BTT would have acquired everything that it had originally contracted for.

As a result the Defendant's motion to amend its Answer to include a frivolous counterclaim MUST fail. There can be no fraud in the inducement when the allegation of fraud is plainly unfounded. There simply is no colorable basis to permit the amended Answer to go forward. The evidence presented here demonstrates beyond a shadow of a doubt that even had the Defendant elected to include the counterclaim it now seeks to add in its original Answer that it would most certainly would have been dismissed for failure to state a claim upon which relief can be granted.

**SECOND PART ARGUMENT:  Defendant's motion to dismiss should be a qualified dismissal**

1. *Defendant's motion to dismiss one of the Plaintiffs should also dismiss all counterclaims not jointly and severally attachable to the remaining Plaintiff*

The Defendant also seeks to dismiss the corporation named in the action based upon the corporation having not renewed its charter at the time the action was filed with the **SDNY**.  The Plaintiffs are in support of this dismissal with the caveat that such dismissal should also act to dismiss those claims made against the Plaintiffs that are not jointly and severally attachable to the remaining individual Plaintiff.  Notably, the corporation was "the sole and exclusive manufacturer of the contents of the **Sea-Monkeys®** pouches that were incorporated into the **Sea-Monkeys®** product." [3] (**see Exhibit G; Page 4; Paragraph 41**)  It is an undisputed fact that the Defendant made separate and distinct payments directly to the corporation for the purchase of those pouches.

As noted all throughout the attached exhibits Yolanda von Braunhut is the owner of all of the intellectual property that relates to the product known to the world as **Sea-Monkeys®**. Yolanda became the owner of TSC, formerly owned by the partnership of Harold & Yolanda, by an operation of law on November 28th 2003 when her husband Harold died.  TSC along with Yolanda herself as an individual entered into the contract with BTT in the year 2007.  TSC is currently in a state of revival but, nonetheless, because of its revoked charter at the time the lawsuit was launched it admittedly lacks standing to remain in the suit.  Nevertheless, TSC played an integral role in the performance of the contract.  As noted in her affidavit (**see Exhibit G; Page 4; Paragraph 40**), the corporation in effect had licensed the **Sea-Monkeys®** intellectual property from her in its dutiful obligation to manufacture **Sea-Monkeys®** pouches pursuant to the agreement between the parties. (**see Exhibit G; Page 5; Paragraph 43**)

FRCP Rule 19 (a)(1)(A), "Required Joinder of Parties", states as follows:

> (a) Persons Required to Be Joined if Feasible.
>
>> (1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

---

[3] It is of no small note that contemporaneous to the breach of the agreement orchestrated by BTT in December 2012 that BTT had also elected at that time to NOT purchase pouches from TSC.

Page **12** of **15**

>>(A) in that person's absence, the court cannot accord complete relief among existing parties;

The allegation that the Plaintiffs failed "(ii) …to ship pouches in accordance with the terms of the Purchase Agreement," as contained in the Defendant's Answer to Plaintiffs' 2nd Amended Complaint (see Defendant's Answer; Page 28, Paragraph 38) is therefore solely directed at TSC and NOT at Yolanda.  Here, the Court cannot accord complete relief to the party seeking it which, ironically enough, is the Defendant in this instance.  To hold Yolanda jointly and severally liable for the actions of the corporation in obviation of the protections of limited liability when the corporation is no longer a part of the suit would offend notions of Justice.  All such allegations that are made against the corporation fail for failure to name or join a necessary party.

2. *An Order dismissing the corporation must therefore qualify that any claims based upon the performance or lack thereof of the corporation be likewise also dismissed from the action for failure to pierce the corporate veil*

Corporate law is, for the most part, a creature of state law.  Each state has its own rules regarding the various corporate forms and their resulting limitations of liability that protect corporate owners as well as officers and directors of the corporation.  However, all states follow the general principle that certain qualified parties will not be held liable for debts or liabilities of a corporation unless the facts conform to a veil-piercing exception to the rule as suggested above.

Under New York law, "the party seeking to pierce a corporate veil [must] make a two-part showing: (i) that the owner [*or officer*] exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *see Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

There is no evidence here to trigger either prong.  Instead, the evidence presented in her affidavit shows that the named corporation in the action performed particular activities that acted to shield her from alleged damages resultant of those same activities.  An Order dismissing the corporation must therefore qualify that any claims based upon the performance or lack thereof of the corporation be likewise also dismissed from the action.  The Defendant is of course aware of this variable as it is the Defendant itself who is seeking to remove the necessary party.

In accordance with all of the above, the Plaintiffs ask that any Order dismissing the corporation from the lawsuit also dismiss all claims that relate solely to the corporation for both the failure to name a necessary party and for the failure to pierce the corporate veil.

## **CONCLUSION**

The Trademark Assignment Abstract of Title as shown on the trademark search available to the public on **TESS** and maintained by the **USPTO** indicates without question that the title to ALL of the trademarks in this action belong to no other than Yolanda von Braunhut.  The evidence indicates that the entirety of the intellectual property relating to the product known to the world as **Sea-Monkeys®** was transferred to Yolanda on the date of November 28th 2003.  On the date of June 26th 2007 when Yolanda entered into a written agreement with the Defendant the evidence shows that the trademarks were wholly owned by none other than her.

The Defendant has chosen not to contest the public record that shows all of the above. Accordingly, the Defendant has no colorable basis upon which the counterclaim it now seeks may be asserted.  The Defendant has failed to allege facts sufficient upon which relief can be granted. The Defendant has failed to allege or otherwise produce an inkling of evidence that would create a triable issue of fact.

Despite having no worthy defense to the ultimate merits of the entire action the Defendant continues to evade the inevitable at the expense of not only Yolanda but at the expense of the **Sea-Monkeys®** product and at the expense of the public at large.  If the Defendant in its reply to this response (due on May 25th) seeks to address the issues that it failed to address in its forthright motion, the Plaintiffs respectfully request that the Court NOT permit such a circuitous and roundabout argument to go forward.

Finally, the Defendant's motion to dismiss one of the Plaintiffs should be granted with the caveat that all counterclaims not currently jointly and severally attachable to the remaining individual Plaintiff be likewise also dismissed.

WHEREFORE, Plaintiffs respectfully request the following relief:

(1) An Order dismissing with prejudice the Defendant's motion seeking to amend its Answer to assert additional counterclaims into the action.

(2) An Order prohibiting the Defendant from attacking either directly or indirectly the chain of title for any of the trademarks that relate to the product known to the world as **Sea-Monkeys®** as is now recorded and maintained with and by the **USPTO;**

(3) An Order dismissing from the action the Transcience Corporation and all counterclaims not currently jointly and severally attachable to the remaining Plaintiff; in particular all counterclaims that relate to that allegation that the Transcience Corporation failed "(ii) …to ship pouches in accordance with the terms of the Purchase Agreement,". (see Defendant's Answer to 2nd Amended Complaint; Page 28, Paragraph 38)

(4) and any such other and further relief as the Court may deem just and proper.


Respectfully Submitted,

By: *s/ William Timmons*
William Timmons, Esq.
25 Candee Avenue
Sayville, New York 11782
(631) 750-5980

Attorneys for Plaintiffs
TRANSCIENCE CORPORATION &YOLANDA VON BRAUNHUT

Dated:  May 9, 2016