USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 12/30/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRANSCIENCE CORPORATION and
YOLANDA VON BRAUNHUT,

                      Plaintiffs,

– against –

BIG TIME TOYS, LLC,

                      Defendant.

**OPINION AND ORDER**

13 Civ. 6642 (ER)

Ramos, D.J.:

    Transcience Corporation and Yolanda von Braunhut (collectively, "Plaintiffs") bring this action against Big Time Toys, LLC ("Defendant"), alleging breach of contract, unjust enrichment, and trademark infringement in connection with the product, "Sea-Monkeys." Before the Court is Defendant's motion for leave to amend its answer to add certain counterclaims against Plaintiffs and to dismiss the claims brought by Transcience Corporation. For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND[1]

    Defendant brings the instant motion in light of certain facts it allegedly learned in discovery regarding the corporate existence of plaintiff Transcience Corporation and the history of ownership of the trademarks underlying this case. Def.'s Mem. (Doc. 137) at 1.

    First, Defendant claims to have recently learned that Harold von Braunhut, plaintiff Yolanda von Braunhut's late husband and the inventor of Sea-Monkeys, actually formed two separate companies that are both called "Transcience Corporation." *Id.* at 2–3. The first

---

[1] The facts of this case are discussed extensively in the Court's September 23, 2014 Opinion and Order, familiarity with which is presumed. *See* Doc. 42.

Transcience Corporation was formed in New York in 1970 ("Transcience-NY"). *Id.* at 2. The second Transcience Corporation—the party in this action—was formed in Maryland in 2003, shortly before Harold von Braunhut's death ("Transcience-MD"). *Id.* at 3. According to Defendant, Transcience-NY was dissolved in 1991 and Transcience-MD forfeited its charter in 2012. *Id.* at 1, 3. Plaintiffs concede that Transcience-MD lost its charter before it filed this suit. Pls.' Opp'n Mem. (Doc. 145) at 12. The corporation's current status is unclear, but in February 2016, Plaintiffs represented that they had initiated the process of revival, Doc. 130 at 3, and in May 2016, Plaintiffs represented that the company was "in a state of revival," Pls.' Opp'n Mem. at 12.[2]

Next, Defendant claims to have discovered that Plaintiffs do not own the trademarks they purported to license and, later, sell to Defendant. Def.'s Mem. at 1.[3] According to Defendant, at the time they entered into the License Agreement on June 26, 2007, neither Transcience-MD nor Yolanda von Braunhut owned any of the relevant trademarks. *Id.* at 3. Instead, Defendant argues they were owned by either the then-defunct Transcience-NY or the estate of the then-deceased Harold von Braunhut. *Id.* Defendant alleges that in December 2009, Yolanda von Braunhut attempted to transfer three trademarks from her late husband's estate to Transcience-MD. *Id.* at 3–4. Although it questions the validity of that transfer, Defendant thus argues that when the parties entered into the Purchase Agreement on May 25, 2010, no more than three of the relevant trademarks were owned by Transcience-MD. *Id.* Plaintiffs dispute Defendant's

---

[2] Plaintiffs further represented that they intend to permanently dissolve Transcience-MD after this litigation has run its course. Doc. 130 at 3.

[3] Defendant alleges that six trademarks are at issue in this action: Sea Monkeys, Ocean Zoo, Hatched Egg Design, Instant Life, Instant Pets, and TC & Design. Def.'s Mem. at 2. All were purportedly registered in the United States, and Sea Monkeys was purportedly registered in a number of foreign jurisdictions as well. *See* License Agreement at 1 & Ex. B. Plaintiffs maintain that TC & Design was never part of the parties' agreements and that one additional trademark is at issue: "Sea Monkeys" (with quotation marks). Pls.' Opp'n Mem. at 7–8 & n.2.

allegations and maintain that Yolanda von Braunhut has owned of all of the intellectual property related to Sea-Monkeys since her husband's death in 2003.  Pls.' Opp'n Mem. at 7–9.

In light of these revelations, Defendant seeks leave to amend its answer to add counterclaims against Plaintiffs for breach of the warranties and representations made in the License Agreement and Purchase Agreement and for fraud in the inducement of those contracts.  Def.'s Mem. at 5–7.  Defendant also seeks dismissal of all claims asserted by Transcience-MD.  *Id.* at 7–8.

## II. DISCUSSION

### A. Motion for Leave to Amend the Answer to Add Counterclaims

"Once the time for amending pleadings as a matter of course expires, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *Tolliver v. Lilley*, No. 12 Civ. 971 (DAB) (KNF), 2016 WL 5793998, at *2 (S.D.N.Y. Sept. 19, 2016) (quoting Fed. R. Civ. P. 15(a)(2)).  "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and leave "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility," *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs argue that Defendant has unduly delayed in bringing its proposed counterclaims, that it has acted in bad faith in "willful[ly] ignor[ing]" the "proper chain of title" of the trademarks at issue, and that its proposed amendments would be futile.  Pls.' Opp'n Mem. at 9–11.  Plaintiffs do not argue, and the Court does not find, that Plaintiffs would be unduly prejudiced by the amendments, especially considering that Defendant asserts it needs no additional discovery from Plaintiffs.  Def.'s Mem. at 7; *see Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("In determining what constitutes 'prejudice,' [courts] consider

whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."). The Court also finds no evidence of any bad faith on Defendant's part, and even if Defendant had been able to bring its counterclaims sooner, "[m]ere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Block*, 988 F.2d at 350.

The only remaining factor to consider is whether Defendant's proposed amendments would be futile. Futility is measured under the same standard as a motion to dismiss under Rule 12(b)(6)—that is, "leave to amend will be denied as futile only if . . . it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese*, 244 F.3d at 110 (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

The Court finds that Defendant's proposed amendment to its counterclaim for breach of contract would not be futile. In order to assert a claim for breach of contract in New York,[4] a party must adequately plead (1) the existence of a contract, (2) its own adequate performance of the contract, (3) breach by the other party, and (4) damages suffered as a result of the breach. *See, e.g.*, *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). Here, Defendant adequately pleads all four elements by alleging that (1) the License Agreement and Purchase Agreement each contained representations and warranties concerning Plaintiffs' ownership of intellectual property, (2) Defendant adequately performed under both contracts, (3) Plaintiffs breached the contracts by misrepresenting their ownership of the intellectual

---

[4] The agreements at issue provide that they are to be governed by New York law. License Agreement ¶ 21.A; Purchase Agreement ¶ 11.

property, and (4) Defendant suffered damages as a result of the misrepresentations.  *See* Laura Decl. (Doc. 136), Ex. 1 (Proposed Answer and First Amended Counterclaims) ¶¶ 46–49. Accordingly, Defendant is permitted to amend its breach of contract counterclaim.

On the other hand, the Court finds that adding a counterclaim for fraud in the inducement would be futile.  Under New York law, a fraud-based claim must be "sufficiently distinct from [a] breach of contract claim" where it stems from an alleged breach of contract. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Where brought in tandem with a contract claim, the fraud claim may only proceed where it will "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Id.* (citations omitted).  In other words, "[b]reaching a contract does not constitute fraud unless some legal duty to the plaintiff that is independent of the contract is violated.  Any such independent duty must spring from circumstances extraneous to, and not constituting, elements of the contract itself."  *GS Equities, Ltd. v. Blair Ryan Co.*, No. 08 Civ. 1581 (CM), 2011 WL 3278909, at *6 (S.D.N.Y. July 26, 2011).  Here, Defendant's fraud claim is based on the allegation that Plaintiffs misrepresented their ownership of intellectual property, which is entirely duplicative of the proposed amendment to their breach of contract claim.  *See* Laura Decl., Ex. 1 ¶¶ 50–70.  Accordingly, Defendant's request for leave to add a counterclaim for fraud in the inducement is denied.[5]

---

[5] Defendant's proposed filing also adds requests for punitive damages and rescission of the Purchase Agreement. Laura Decl., Ex. 1 at 36–37 (paragraphs (c) and (e)).  Though not the subject of any motion practice presently before the Court, the Court cautions Defendant that "punitive damages are not recoverable for breach of contract where . . . the wrongful conduct is not directed at the public at large," *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 88 (2d Cir. 2005), and that "before rescission will be permitted the breach must be found to be 'material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the

### B. Motion to Dismiss Transcience Corporation's Claims

As Plaintiffs concede, Transcience-MD's claims must be dismissed. Pls.' Opp'n Mem. at 12. In Maryland, which governs Transcience-MD's corporate status, "[a] corporation, the charter for which is forfeit, is a legal non-entity; all powers granted to [it] by law, including the power to sue . . . , [are] extinguished generally as of and during the forfeiture period." *Dual, Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1101 (Md. 2004) (citing Md. Code Ann., Corps. & Ass'ns §§ 2-103(2), 3-503(d)).[6] The parties do not dispute that Transcience-MD forfeited its charter before this lawsuit was filed in September 2013, and although the company's current corporate status is not clear based on the record, it is apparent that by the time the Second Amended Complaint was filed in December 2014, the corporation had not yet been revived. *See* Doc. 130 at 3 (representing in February 2016 that Plaintiffs had only initiated the process of revival). Because it lacked the ability to bring this suit during the forfeiture period, all of Transcience-MD's claims are dismissed.[7]

By the same token, in Maryland, a corporation's ability to be sued is generally extinguished during the forfeiture period. *See Dual*, 857 A.2d at 1101 (citing Md. Code Ann., Corps. & Ass'ns §§ 2-103(2), 3-503(d)). Thus, the counterclaims against Transcience-MD, which were filed in December 2014, must also be dismissed, and Defendant's request to retain Transcience-MD as a counterclaim defendant is denied.[8]

---

contract,'" *Nolan v. Sam Fox Pub. Co., Inc.*, 499 F.2d 1394, 1397 (2d Cir. 1974) (quoting *Callanan v. Powers*, 92 N.E. 747, 752 (N.Y. 1910)).

[6] The directors of the corporation, who become trustees of its assets upon forfeiture of its charter, may file suit on behalf of the corporation in order to wind up the company's affairs, *Dual*, 857 A.2d at 1101–02 (citing Md. Code Ann., Corps. & Ass'ns § 3-515), but that is not what Plaintiffs have done here.

[7] A corporation may bring suit if its charter is revived, but the limitations period is not tolled during the forfeiture period. *Dual*, 857 A.2d at 1103.

[8] Plaintiffs argue that if the Court dismisses Transcience-MD from this action, it should also dismiss "those claims made against the Plaintiffs that are not jointly and severally attachable to the remaining individual Plaintiff," Yolanda von Braunhut. Pls.' Opp'n Mem. at 12. Although Plaintiffs' argument is not entirely clear, they seem to be

Defendant alternatively asks the Court for leave to name the presumed trustees of Transcience-MD as defendants. Def.'s Reply Mem. (Doc. 147) at 4. Maryland has a corporate survivor statute that allows the directors of a corporation whose charter is forfeited to be sued as its trustees, provided there is a rational relationship between the suit and a legitimate winding up activity of the corporation. *See Stanback v. Levitas*, No. 15 Civ. 3064 (WMN), 2016 WL 893245, at *2 (D. Md. Mar. 9, 2016); *Thomas v. Rowhouses, Inc.*, 47 A.3d 625, 629–31 (Md. Ct. Spec. App. 2012). The Court cannot determine on the present record whether or not Transcience-MD is still winding up its corporate affairs, such that it "is still 'alive' for purposes of being sued to satisfy its debts and liabilities." *Stanback*, 2016 WL 893245, at *2. Defendant is therefore granted leave to replace its counterclaims against Transcience-MD with third-party claims against the company's director-trustees, and the Court reserves decision as to whether or not such claims may thereafter proceed.

## III.  CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss all claims brought by Transcience Corporation is GRANTED, Defendant's counterclaims against Transcience Corporation are DISMISSED, and Defendant's motion to amend its answer is GRANTED in part and DENIED in part. Specifically, Defendant is granted leave to (i) amend its counterclaim for breach of contract and (ii) add a third-party claim for breach of contract against Transcience Corporation's director-trustees. Defendant's amended answer shall be filed on or before **January 6, 2017**. The parties are directed to appear for a conference on **February 2, 2017 at**

---

under the misimpression that Yolanda von Braunhut is being sued under an alter ego theory of liability. *See id.* at 12–14. To the contrary, Defendant alleges that each Plaintiff is directly liable for its own actions, as each is a party to the contracts underlying the counterclaims. *See* Answer to Second Amended Complaint, Affirmative Defenses and Counterclaims (Doc. 46) ¶¶ 36–39; Def.'s Reply Mem. (Doc. 147) at 3–4. Accordingly, none of Defendant's counterclaims against Yolanda von Braunhut will be dismissed.

7

**10:30 a.m.**  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 135, and to terminate Transcience Corporation as a party to this action.

It is SO ORDERED.

Dated:   December 30, 2016
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.