**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------x
                                                    )
TRANSCIENCE CORPORATION and                          )        Civil Action No. 13 CV 6642
YOLANDA VON BRAUNHUT,                                )
                                                    )
        Plaintiffs,                             )
                                                    )
-against                                             )
                                                    )
BIG TIME TOYS, LLC,                                  )
                                                    )
        Defendant/Counterclaimant.              )
                                                    )
-----------------------------------------------------x
BIG TIME TOYS, LLC,                                  )
                                                    )
        Third Party Plaintiff,                  )
                                                    )
-against-                                            )
                                                    )
YOLANDA VON BRAUNHUT, JANE                            )
DOES 1-3, and JOHN DOES 1-3,                          )
                                                    )
        Third Party Defendants.                 )
-----------------------------------------------------x

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTIONS IN LIMINE

---

Sheila A. Woolson, Esq.
swoolson@ebglaw.com
Jeffrey G. Kramer, Esq. (*pro hac vice*)
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center, 13th Floor
Newark, NJ 07102
(973) 642-1900
*Attorneys for Defendant*
*Big Time Toys, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................. iii-v

PRELIMINARY STATEMENT .............................................................................................. 1

FACTS ......................................................................................................................................... 2

POINT I .................................................................................................................................... 4

    PLAINTIFF'S CLAIM FOR TRADEMARK INFRINGEMENT
    UNDER THE LANHAM ACT MUST BE DISMISSED AND
    NOT SUBMITTED TO A JURY ................................................................................. 4

    A.    Trademark Ownership and Chain-of-Title ......................................... 6

    B.    Plaintiff Has No Standing Under Section 32
        of the Lanham Act to Assert Infringement ...................................... 15

    C.    Any Claims For Trademark Infringement
        Under Section 43(a) of the Lanham Act Also Fail ......................... 15

    D.    Conclusion ............................................................................................ 17

POINT II .................................................................................................................................. 17

    PLAINTIFF MUST BE PROHIBITED FROM
    ALLEGING COUNTERFEITING ........................................................................ 17

POINT III ................................................................................................................................ 18

    PLAINTIFF CANNOT RAISE THE ISSUE OF
    LICENSEE ESTOPPEL ........................................................................................ 18

POINT IV ................................................................................................................................ 20

    PLAINTIFF'S UNJUST ENRICHMENT CLAIM
    MUST BE DISMISSED ......................................................................................... 20

POINT V .................................................................................................................................. 21

    PLAINTIFF IS PRECLUDED FROM INTRODUCING
    ANY TESTIMONY/EVIDENCE RELATED TO
    BETH HARWELL ................................................................................................. 21

POINT VI................................................................................................................22

    PLAINTIFF IS NOT ENTITLED TO
    PUNITIVE DAMAGES ........................................................................................22

POINT VII ............................................................................................................22

    PLAINTIFF'S TRADEMARK DAMAGES
    MUST BE LIMITED............................................................................................22

        A.     Prejudgment Interest and Fees' Are
              Not Appropriate .......................................................................23

        B.     Treble Damages Are Not Appropriate ..................................23

POINT VIII ...........................................................................................................24

    PLAINTIFF'S UNJUST ENRICHMENT DAMAGES
    MUST BE LIMITED TO THOSE COSTS THAT
    ARE CERTAIN AND TRACEABLE .................................................................24

CONCLUSION.......................................................................................................26

084329-00002  43147040.4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alko Mfg. Corp. v. Neptune Meter Co.,
  20 A.D.2d 635 (1st Dept. 1964).................................................................24

Antrobus v. New York City Dep't. of Sanitation,
  2016 U.S. Dist. LEXIS 24111 (E.D.N.Y. 2016)....................................16

Arch Specialty Ins. Co. v. Sealmax Glass Systems, Inc.,
  2017 U.S. Dist. LEXIS 22530 (E.D.N.Y. 2017)....................................21

Audemars Piguet Holdings, S.A. v. Swiss Watch Int'l, Inc.,
  2015 U.S. Dist. LEXIS 3207 (S.D.N.Y. 2015).......................................24

Bangkok Bangkok Import & Export, Inc. v. Jamtan African American Market
  Group,
  2016 U.S. Dist. LEXIS 81245 (S.D.N.Y. 2016).....................................18

Beastie Boys v. Monster Energy Co.,
  112 F. Supp.3d 31, 45 (S.D.N.Y. 2015)..................................................23

Briarpatch Ltd. v. Phx. Pictures, Inc.,
  373 F.3d 296 (2d Cir. 2004).....................................................................24

Bucky v. Sebo,
  208 F.2d 304 (2d. Cir. 1953)....................................................................19

C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced, L.P.,
  505 F.3d 818 (8th Cir. 2007) ...................................................................19

Dahon North America, Inc. v. Hon,
  2012 U.S. Dist. LEXIS 57510 (C.D.Ca. 2012).......................4, 12, 14, 15

Diesel S.P.A. v. John Does 1-9, 2016 U.S. Dist. LEXIS 2720, at *7 (S.D.N.Y.
  2016) ........................................................................................................16

De La Cruz v. Caddell Dry Dock & Repair Co., Inc.,
  22 A.D.3d 404 (1st Dept. 2005)...............................................................20

Dual, Inc. v. Lockheed Martin Corp.,
  383 Md. 151, 857 A.2d 1095 (2004) ........................................................9

Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.,
  2015 U.S. Dis. LEXIS 96337 (S.D.N.Y. 2015)......................................17

084329-00002  43147040.4

Fischer v. Forrest,
2017 U.S. Dist. LEXIS 5498 (S.D.N.Y. 2017).......................................................................18

Genometrica Research, Inc. v. Gorbovitski,
2013 U.S. Dist. LEXIS 13512 (E.D.N.Y. 2013)...................................................................16

Gidatex v. Campaniello Imports. Ltd.,
49 F. Supp. 2d 298 (S.D.N.Y 1999).......................................................................................25

Gramercy Mktg. Assocs. v. Russell-Newman, Inc.,
No. 09-6421, 2010 WL 1253374 ...........................................................................................19

Gucci America, Inc. v. Duty Free Apparel,
286 F. Supp.2d 284 (S.D.N.Y. 2003).....................................................................................18

Hinterberger v. Catholic Health Sys.,
536 Fed. Appx. 14 (2d Cir. 2013) ..........................................................................................20

Hirsch v. Qingdao,
2015 U.S. Dist. LEXIS 28112 (E.D.N.Y. 2015).....................................................................4

Hutton v. Klabal,
726 F. Supp. 67 (S.D.N.Y. 1989) ...........................................................................................22

ID7D Co., Ltd. v. Sears Holding Co.,
2012 U.S. Dist. LEXIS 52320 (D.Conn. 2012) .......................................................................4

Innovation Ventures, Inc. v. Ultimate One Distributing Corp.,
176 F. Supp.3d 137, 155 (E.D.N.Y. 2016) ............................................................................16

Karmilowicz v. The Hartford Financial Services Group, Inc.,
494 Fed Appx. 153 (2d Cir. 2012) .........................................................................................20

Kaye v. Grossman,
202 F.3d 611 (2d Cir. 2000)...................................................................................................24

Komilossy v. Faruqi & Faruqi,
2017 U.S. Dist. LEXIS 25490 (S.D.N.Y. 2017).....................................................................20

Learning Annex Holdings, LLC v. Rich Global, LLC,
2011 U.S. Dist. LEXIS 90091 ...............................................................................................24

Legurnic v. Ciccone,
63 F. Supp.3d 241, 248 (E.D.N.Y. 2014) ..............................................................................25

M'Baye v. World Boxing Assoc.,
2007 U.S. Dist LEXIS 23173 (S.D.N.Y. 2007)......................................................................22

Magnuson v. Newman,
  2013 U.S. Dist. LEXIS 158893 (S.D.N.Y. 2013) ...................................................16

Marshak v. Green,
  746 F.2d 927 (2d Cir. 1984)..................................................................................14

Martha Graham School and Dance Foundation, Inc. v. Martha
  Graham Center of Contemporary Dance, Inc., 153 F. Supp.2d 512 (S.D.N.Y.
  2001), aff'd 43 Fed. Appx. 408 (2d. Cir. 2002)......................................................19

Melwani v Singh,
  2004 WL 1672556 (S.D.N.Y. 2004) ......................................................................19

Merck Eprova AG v. Gnosis SPA,
  760 F.3d 247 (2d Cir. 2014)...........................................................................23, 24

New York City Economic Dev. Corp. v. T.C. Food Import and Export, Co.,
  11 Misc.3d 1087(A) (Sup. Ct. 2006) .....................................................................24

Ng v. Tow,
  260 A.D.2d 574 (2d Dept. 1999) ...........................................................................24

Rushmore Recoveries X, LLC v. Skolnick,
  15 Misc.3d 1139(A) (Nassau Ct. 2007)......................................................12, 13, 14

Transcience Corp. v. Big Time Toys, LLC,
  50 F. Supp.3d 441, 453 (S.D.N.Y. 2014) ...............................................................24

Treasury Ent. Sojuzplodoimport v. SPI Spirits,
  726 F.3d 62 (2d Cir. 2013)....................................................................................15

**Statutes**

15 U.S.C. 1116(d) .........................................................................................................23

15 U.S.C. § 1114(1)(a)..................................................................................................18

15 U.S.C. § 1117(a) ......................................................................................................22

LANHAM ACT ..................................................................................................... passim

## PRELIMINARY STATEMENT

Big Time Toys, LLC ("BTT" or "Defendant") brings the following motions in limine, to resolve certain threshold and evidentiary issues related to Plaintiff Yolanda von Braunhut's claims of trademark infringement and unjust enrichment.

As a preliminary matter, Plaintiff lacks standing to bring a trademark infringement claim under any section of the Lanham Act. Plaintiff does not now own, and has never owned, the Sea Monkeys trademarks at issue in this litigation. Plaintiff tacitly acknowledged these facts by a recent, failed, attempt to retroactively assign the trademarks to herself. Thus, as a matter of law, Plaintiff's trademark claims must be dismissed and she must be precluded from arguing that she is the owner of the Sea Monkeys trademarks. For the same reason, Plaintiff must be precluded from arguing that BTT engaged in counterfeiting or that its products were counterfeit. Additionally, Plaintiff must be precluded from arguing that the doctrine of licensee estoppel applies in this case because it clearly does not. Plaintiff's misrepresentations about the ownership of the trademarks and her repudiation of the parties' agreements bar the application of estoppel here. Indeed, it is particularly inappropriate here because Plaintiff relies on the parties' agreements to argue licensee estoppel while simultaneously ignoring the agreement to argue BTT was unjustly enriched. These are fundamental threshold issues that the Court should decide as a matter of law.

Additionally, there exist certain evidentiary issues that the Court should decide before the trial begins. Specifically, Plaintiff should be precluded from introducing any evidence or testimony regarding non-party Beth Harwell who is not involved in this case at all. Similarly, assuming *arguendo* that the issue of Plaintiff's damages still needs to be resolved, the testimony and evidence related to Plaintiff's trademark claim has to be limited to exclude claims of punitive damages, treble damages, prejudgment interest and attorneys' fees as these are not

appropriate in this case.   Similarly, Plaintiff's alleged unjust enrichment damages must be limited to categories of damages that represent a direct and specific benefit conferred on BTT. These categories do not include 1) alleged damages arising out of the termination of electricity, water and heat to Plaintiff's home; 2) the death or illness of Plaintiff's sister; 3) the "degradation" of Plaintiff's quality of life; 4) the loss of a life insurance policy and "tax implications"; and 5) the potential (not even actual) loss of real estate for failure to pay taxes. These alleged costs are not benefits conferred on BTT.

These are clear evidentiary issues that the Court can decide before the trial, which together with the threshold issues of standing and propriety of claims, will streamline the trial and the presentation of evidence.   Accordingly, BTT respectfully requests that the Court grant its motions *in limine*.

### FACTS

On June 26, 2007, Transcience Corporation and Yolanda von Braunhut ("Plaintiff"), as licensors, and BTT, as licensee, entered into a "License Agreement" granting BTT exclusive worldwide rights to "Sea-Monkeys" products and an option to purchase all such rights. (Declaration of Jeffrey Kramer, Ex. A). "Sea-Monkeys" are brine shrimp, hatched from eggs in a small aquarium tank, and sold as a toy/novelty item.   The Sea-Monkeys product (or "kit") contains two principal components; (i) a small plastic tank and related paraphernalia manufactured at defendant's direction in China; and (ii) a set of three "pouches" (each slightly larger than a sugar packet), containing "Water Purifier", "Eggs", and "Growth Food", respectively.   Defendant's principal U.S. customers for Sea-Monkeys are major mass retailers.

Effective May 1, 2009, the parties amended the License Agreement by entering into a "Purchase Agreement and Amendment to License Agreement" ("Purchase Agreement").   (Id., Ex. B).   Section 2.1 of the Purchase Agreement provides:

2

[defendant] hereby exercises the [purchase option] . . . **[defendant] hereby purchases from [plaintiffs] all right, title and interest, free of all liens, claims and encumbrances, in and to any and all of the Sea-Monkeys® Properties and Licensed Products, including Sea-Monkeys®, related assets and the goodwill of the business associated therewith**, in exchange for the Purchase Price . . .(emphasis supplied).

Defendant is the beneficial and equitable owner (but not title holder) of all Sea-Monkeys properties. Defendant paid the Purchase Price over time in the form of periodic payments. Fully executed, but undated, assignments of title to all of the Sea-Monkeys properties are held in escrow. (Id., Ex. B, Sec. 3.2). Once BTT's payments totaled $5,000,000, titles were required to be released by the escrow agent to defendant[1].

---

[1]  Briefly, Section 2.2 of the Purchase Agreement provides:

> Purchase Price. The total purchase price for the Licensed Property shall be $10,000,000, payable as follows (the "Purchase Price"):
>
> (a) Initial Purchase Price. Five Million Dollars ($5,000,000) of the Purchase Price (the "Initial Purchase Price") shall be paid as follows:
>
> (i) $500,000 shall be paid upon execution of this Agreement . . . , and
>
> (ii) $4,500,000 shall be paid in the form of royalties payable under the License Agreement, except that . . . the Minimum Royalty under Section 4.B. of the License Agreement shall be $750,000 . . . payable in twelve (12) equal monthly installments on or before the tenth (10th) day of each month . . . .
>
> **All payments hereunder and under the License Agreement, including the Minimum Royalty,** shall be a nonrefundable advance against any amounts due to Transcience and YvB. It is expressly agreed that **all such payments due on and after the Effective Date shall be applied to the payment of the Purchase Price**." (Emphasis added).
>
> (b) Additional Purchase Price. The remaining Five Million Dollars ($5,000,000) of the Purchase Price (the "Additional Purchase Price") shall be payable as royalties, monthly, [on modified terms].

Under the License Agreement and Purchase Agreement, defendant paid plaintiffs not only a Minimum Royalty/purchase price, but also for pouches and a supplemental laboratory fee. All such payments, added together, exceed $5,000,000. Despite the express words in the Purchase Agreement (in bold above), Plaintiffs dispute that pouch payments and the supplemental laboratory fees are included in the computation of the Initial Purchase Price.

In about December 2012, BTT notified Plaintiffs of a material disruption in its Sea-Monkeys business and that it would not be making a payment in December 2012 (Id., Ex. C). Plaintiffs sent BTT a notice of default, dated December 20, 2012 (Id., Ex. D), and a subsequent notice, dated January 18, 2013, declaring the contract terminated (Id, Ex. E).   In response, defendant's counsel sent a letter, dated January 22, 2013, advising, among other things, that certain actions taken by the United States Fish and Wildlife Service with respect to pouches supplied by Transcience Corporation constituted a *force majeure* of the type described in Section 20.G. of the License Agreement.  Accordingly, it is BTT's position that no default has occurred (Id., Ex. F).

BTT has continued its Sea-Monkeys business.   Because plaintiff repudiated the agreements (and will not release legal titles to the Sea-Monkeys properties to defendant), defendant has discontinued its payments to plaintiffs under the agreements.

Plaintiff instituted a suit against BTT, alleging unjust enrichment and trademark infringement.   BTT has counterclaimed for breach of contract, including that Plaintiff misrepresented ownership of the trademarks in issue when, in fact, she is not the owner.

## POINT I

### PLAINTIFF'S CLAIM FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT MUST BE DISMISSED AND NOT SUBMITTED TO A JURY.

In order to bring a claim of trademark infringement, "[t]here must be ownership at the time the suit was filed. [citation omitted].  A subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing." Dahon North America, Inc. v. Hon, 2012 U.S. Dist. LEXIS 57510, *22 (C.D.Ca. 2012).  (quoting Gaia Techs. v. Reconversion Techs., 93 F.3d 774, 777 (Fed. Cir. 1996)).  See also Hirsch v. Qingdao, 2015 U.S. Dist. LEXIS 28112, **19-20 (E.D.N.Y. 2015) (noting that a complaint based upon a deficient assignment

4

must be dismissed); <u>ID7D Co., Ltd. v. Sears Holding Co.</u>, 2012 U.S. Dist. LEXIS 52320, *12 (D.Conn. 2012) (noting that a *nunc pro tunc* assignment cannot correct a standing defect).  For multiple reasons explained below, Ms. von Braunhut's March 4, 2016 attempt to "*nunc pro tunc*" assign the Transcience-NY Marks and HvB Marks to a purported partnership, and then from the partnership to herself, to correct the fatal defects in her alleged chain-of-ownership, fails as a matter of law.

Initially, there were two plaintiffs in this case, Transcience Corporation (sic), a Maryland corporation ("<u>Transcience-MD</u>") and Yolanda von Braunhut.  By Opinion and Order, dated December 30, 2016, Your Honor dismissed Transcience-MD's claims because Transcience-MD was a dissolved corporation.  ECF No. 148.  The sole remaining plaintiff is Yolanda von Braunhut.  Plaintiff has asserted a claim for "Trademark Infringement".  Count Three of the "2nd Amended Complaint" ("<u>Complaint</u>") alleges that "Plaintiffs have clear and unequivocal title to the intellectual property that form the basis of the contractual relationship between the parties." (Cplt. ¶143)  She further alleges that "Plaintiffs own all trademarks for the Sea Monkeys product" and that all of the "trademarks for the Sea-Monkey's product[s] are registered with the United States Trademark and Patent Office (sic)."  (<u>Id</u>., ¶¶145-46).  Plaintiff then invokes the Lanham Act, seeking remedies available when a "trademark is infringed", alleging that BTT has profited from its trademark infringement.  (<u>Id</u>., ¶¶161, 163).

Importantly, Yolanda von Braunhut alleged Trademark Infringement in her individual capacity as owner of the Trademarks.  She has <u>not</u> brought this suit as a predecessor, successor, assign, legal representative, director or trustee of any other person or in any other capacity.[2]

---

[2] As explained below, Yolanda von Braunhut lacks standing to bring a claim for Trademark Infringement in her individual capacity.  She has not alleged, and she cannot now maintain, that she has brought the action in any other capacity, such as a predecessor, successor, assign, legal representative of a registrant under Section 32 of the Lanham Act (15 U.S.C. 1114(a)), or as a director or trustee of the dissolved Transcience Corporation, a New York

Discovery has shown, and it is indisputable, that Yolanda von Braunhut, as the sole remaining Plaintiff, is not now and never has been the "owner" or "registrant" (as used in the Lanham Act) of any of the Sea Monkeys trademarks.  Thus, she cannot establish the most fundamental element of her claim for infringement under the Lanham Act[3] — ownership of the marks in question.  As such, as a matter of law, her trademark claim must be dismissed and not submitted to the jury.  Plaintiff must also be precluded from arguing to the jury that she is or was ever an owner of the trademarks.

## A.  Trademark Ownership and Chain-of-Title[4]

The following trademarks are in issue; (i) Sea Monkeys (in multiple classes in the U.S. and in foreign countries), (ii) Ocean Zoo, (iii) Hatched Egg Design, (iv) Instant Life, (v) Instant Pets and (vi) TC & Design (collectively, the "Trademarks").  (Kramer Decl., Ex. G and H).

Briefly, on February 11, 1970, Harold Braunhut (a/k/a Harold von Braunhut, Plaintiff's husband, now deceased) caused a New York corporation to be formed by the name of

---

corporation, under NY BSC L. § 1005 or Transience-MD under Md. Code Ann., Corps. & Ass'ns § 3-515(a) (both discussed more fully below).

[3] Plaintiff did not assert State common law trademark infringement.

[4] For purposes hereof, we have put aside the fact that in the Purchase Agreement, BTT exercised its option to purchase the Sea Monkeys properties and was, and we submit remains, the beneficial owner thereof.  The Agreement expressly states at Section 2.1 that:

> **BTT hereby purchases from Transience and YvB all right, title and interest, free of all liens, claims and encumbrances, in and to any and all of the Sea-Monkeys® Properties and Licensed Products**, including Sea-Monkeys®, related assets **and the goodwill of the business** associated therewith, in exchange for the Purchase Price (as defined in Section 2.2) and otherwise in accordance with the terms and conditions of this Agreement.  (emphasis supplied).

From the effective date of the Agreement, payments by BTT were applied to the Purchase Price.  The Agreement provides at Section 2.2(a):

> **All payments hereunder and under the License Agreement, including the Minimum Royalty**, shall be a nonrefundable advance against any amounts due to Transience and YvB.  **It is expressly agreed that all such payments due on and after the Effective Date shall be applied to the payment of the Purchase Price**.  (emphasis supplied).

"Transcience Corporation" ("Transcience-NY") to conduct the Sea Monkeys business.  Prior to 1989, Transcience-NY purported to own all of the Trademarks used in the business.  On June 20, 1989, Harold caused Transcience-NY to assign the U.S. trademarks (i) Sea Monkeys (Reg. No. 769332 for Class 1 and Reg. No. 2485247 for Class 28), (ii) Ocean Zoo (Reg. No. 2509518) and (iii) Hatched Egg Design (Reg. No. 769331), to himself (collectively, the "HvB Marks").  These assignments were registered with the United States Patent and Trademark Office ("USPTO").  The remaining Trademarks, which included the U.S. trademarks at issue in this case – (i) Instant Pets (Reg. No. 999873), (ii) Instant Life (Reg. No. 769330), (iii) TC & Design (Reg. No. 999872), and (iv) rights to the Sea Monkeys trademark in Argentina, Australia, Canada, European Union, France, Germany, Italy, Mexico, New Zealand, South Africa, South Korea and the United Kingdom (collectively, the "Transcience-NY Marks") remained with Transcience-NY.

1.     Transcience-NY Marks.  On December 24, 1991 according to the Division of Corporations of the New York Department of State, Transcience-NY was dissolved pursuant to NY Tax L. § 203-A.  (Kramer Decl., Ex. I)  Under § 203-A, Section 1009 of the New York Business Corporation Law applies to the dissolution.  NY BSC L. § 1009.  Section 1009, in turn, provides that Sections 1005 through 1008 apply.  Section 1005 provides generally that, after dissolution:  "(1) The corporation shall carry on no business except for the purpose of winding up its affairs.  (2) The corporation shall proceed to wind up its affairs, with power to fulfill or discharge its contracts, collect its assets, sell its assets for cash at public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business. (3) After paying or adequately providing for the payment of its liabilities . . . may distribute any remaining assets, in cash or in kind or partly each, among its shareholders according to their respective rights."

Distribution of assets is an affirmative act.  It does not happen by operation of law. Transcience-NY never distributed the Transcience-NY Marks to anyone.  Consequently, they are either the property of the dissolved Transcience-NY until properly distributed or the State of New York under unclaimed property rules.  See NY BSC L. § 1005(c).  Confirmation of the foregoing is the fact that, since 1991, the Transcience-NY Marks were repeatedly renewed in the name of Transcience-NY.  (Kramer Decl., Ex. H).  According to the USPTO, at the time the Complaint was filed, the dissolved Transcience-NY was listed as the registered owner of each of the Transcience-NY Marks.

About one year ago, long after the litigation began, Plaintiff recognized the fatal defects in her chain-of-title to the Transcience-NY Marks.  On March 4, 2016, she attempted to cure these defects by a series of "*nunc pro tunc*" assignments, which we submit were clearly invalid (discussed below).

2.     HvB Marks.  On May 5, 2003, Harold von Braunhut caused a new corporation, Transcience Corp. (i.e., Transcience-MD), to be formed under Maryland law.  (Kramer Decl., Ex. K).  Harold did not transfer any trademarks to Transcience-MD.  Harold died November 28, 2003.  Upon his death, he owned the HvB Marks.  The HvB Marks were listed with the Maryland Orphan's Court as property of his estate.  Harold's purported Last Will and Testament was probated September 28, 2004, with no recorded transfer of the HvB Marks out of his estate. On December 15, 2009, Plaintiff, realizing this omission and in order to close on the Purchase Agreement, in her purported capacity as administrator of Harold's estate and without first

8

securing a new letter of administration[5], executed an assignment, supported by a certification as

to ownership and recorded with the USPTO, of the HvB Marks to Transcience-MD.  (Id., Ex. K).

Transcience-MD's charter was forfeited on October 1, 2012 for failure to file its property

tax return for 2011.  (Id., Ex. K).  In Maryland, when a corporation forfeits its charter the powers

conferred by law on the corporation are inoperative, null, and void as of the date of the

proclamation of forfeiture.  Md. Code Ann., Corps. & Ass'ns § 3-503(d).  Thus, all corporate

powers, including the power to sue or be sued, are extinguished during the forfeiture period.

Dual, Inc. v. Lockheed Martin Corp., 383 Md. 151, 857 A.2d 1095, 1101 (2004).  At the same

time, the directors of the forfeited corporation lose their authority as directors and become

trustees of the corporation's assets for purposes of liquidation only.  Md. Code Ann., Corps. &

Ass'ns § 3-515(a).  Md. Code Ann., Corps. & Ass'ns § 3-515(b) provides that the director-

trustees are vested in their capacity as trustees with full title to all the assets of the corporation to,

collect and distribute the assets, applying them to the payment, satisfaction, and discharge of

existing debts and obligations of the corporation, including necessary expenses of liquidation;

and distribute the remaining assets among the stockholders.  The directors/trustees are authorized

to sue or be sued in their own name as trustees or in the name of the corporation, but only in

connection with the winding up of the corporation's affairs.  Md. Code Ann., Corps. & Ass'ns §

3-515(c)(3); Dual, 857 A.2d at 1101.  This Court has dismissed Transcience-MD's claims.

As under New York law, in Maryland the distribution of a dissolved corporation's assets

requires an affirmative act.  Md. Code Ann., Corps. & Ass'ns § 3-515(b).  It does not happen by

operation of law.  Transcience-MD never distributed the HvB Marks.  Thus, according to the

---

[5]  In the case of two other transfers from the estate, one in 2005 for a vehicle to be registered and another in 2014 for an electric utility refund due to Harold's estate, Plaintiff was required each time to secure a new Letter of Administration.

USPTO, at the time the Complaint was filed, the dissolved Transcience-MD was listed as the registered owner of each of the HvB Marks.

Plaintiff, recognizing the fatal defects in her chain-of-title to the HvB Marks, attempted to cure them on March 4, 2016 by a series of "*nunc pro tunc*" assignments, which we submit were clearly invalid (discussed below).  These *nunc pro tunc* transfers among other things, treat the filing with the Orphan's Court and the 2009 assignments to Transcience-MD recorded with the USPTO, as never having happened.

In summary, at the time the complaint was filed, and today, (i) ownership of the Transcience-NY Marks either remains with Transcience-NY or they escheated to the state of New York, and (ii) ownership of the HvB Marks either remains with Harold's estate or is vested in the dissolved Transcience-MD.  Yolanda von Braunhut is not the owner of any of them.

3.    The Defective *Nunc Pro Tunc* Transfers - Plaintiff's Recently Manufactured Evidence.  The purported transfers described below bring to mind an old admonition – "Oh what a tangled web we weave when first we practice to deceive".  Marmion, by Sir Walter Scott (1807).

Recognizing the fatal defects in Plaintiff's chain-of-title to the Trademarks, 3-1/2 years into this litigation she invented a new theory of ownership.  During the March 2, 2016 pre-motion conference before Your Honor, Mr. Timmons and Myron Greenspan, Esq., of Lackenbach & Siegel LLP, Plaintiff's trademark counsel, raised for the first time the existence of a purported partnership between Harold and Yolanda (the "H&Y Partnership"), apparently dating back to October 14, 2000.  It was not disclosed in discovery or during Plaintiff's deposition.  Aside from the pre-motion conference and Plaintiff's March 4, 2016 affidavits

appended to her *nunc pro tunc* assignments, there is no mention whatsoever of, or any evidence corroborating, the partnership's existence.

On March 4, 2016, shortly after the March 2nd pre-motion conference, Plaintiff executed and on March 30, 2016 recorded with the USPTO a series of three (3) "*nunc pro tunc*" trademark assignments.  (Kramer Decl., Exs. G and H).  Each was accompanied by Plaintiff's affidavit, which contained the following assertion as to ownership of the Trademarks: "22.  [Harold] made it clear that all of the intellectual property and corporate interests owned by him as an individual were now owned by our partnership."[6]  (Id.)  The assignments were designed to create a brand new chain-of-title to the Trademarks retroactive to October 14, 2000; first, by consolidating them in the newly discovered "H&Y Partnership", and then by a 2003 transfer by the H&Y Partnership to Plaintiff.  In doing so, Plaintiff attempted to rewrite 16 years of ownership, registration and renewals of the Trademarks, during which numerous documents, many under oath, directly contradict this new theory and the partnership's existence.  This 16 year period included numerous events implicating ownership of the marks, none of which even made passing reference to an H&Y Partnership or to Yolanda von Braunhut as owner of them.  These events included:

(i)      amendments to a license agreement, originally dated September 22, 2000, in September 2004 and April 17, 2006, between Transcience-NY and Harold von Braunhut, as licensors, and Educational Insights, Inc., as prior licensee;

(ii)     the formation of Transcience-MD in May 2003;

(iii)    the death of Harold von Braunhut on November 28, 2003 and the listing of the HvB Marks in the inventory of Harold von Braunhut's estate, filed with the Maryland Orphan's Court, and the probating of his Will on September 28, 2004;

(iv)     the entry into the License Agreement, dated June 26, 2007, between Transcience-MD and Yolanda von Braunhut, as licensors, with BTT as licensee;

---

[6]  Importantly, the language in her affidavit is simply a purported statement as to ownership.  It is <u>not</u> language indicating an assignment of the trademarks together with the goodwill associated therewith.

(v)      the purported assignment of the HvB Marks, recorded with the USPTO, by Harold von Braunhut's estate to Transcience-MD on December 15, 2009;

(vi)     the execution of the Purchase Agreement, by Transcience-MD and Yolanda von Braunhut, and BTT, on May 25, 2010, which included a Security Agreement, filed with the USPTO, purporting to perfect in BTT a security interest in each of the Trademarks, and Plaintiff's execution of Assignments of all of the Trademarks to BTT on May 25, 2010, all of which are undated and held in escrow; and

(vii)    the institution of this proceeding on September 19, 2013 and subsequent amendments to the original Complaint, the last of which was dated December 2, 2014, (See Kramer Decl. passim);

as well as numerous renewals of the Transcience-NY Marks and HvB Marks filed with the

USPTO and foreign agencies between 2000 and 2016.

        a.     The First *nunc pro tunc* Assignment:  Transcience-NY to H&Y

Partnership, eff. 10/14/2000.  Again, at the time of its dissolution on December 24, 1991,

Transcience-NY purportedly owned the Transcience-NY Marks.  In the first *nunc pro tunc*

assignment, dated March 4, 2016 and intending to be effective October 14, 2000 (16 years

earlier), the dissolved Transcience-NY purported to memorialize a transfer of the Transcience-

NY Marks to the H&Y Partnership (the "First Assignment").  (Id., Ex. H).  The signature box for

Transcience-NY, as assignor, lists "Harold von Braunhut" "President of TSC".  However,

because Harold had died 13 years earlier, it was signed by Plaintiff with the following

parenthetical "(Yolanda von Braunhut, as partner, on behalf of Harold von Braunhut)".

      It is imperative that an assignment be signed by the assignor.  Rushmore Recoveries X,

LLC v. Skolnick, 15 Misc.3d 1139(A) (Nassau Ct. 2007) (finding assignment invalid where not

signed by assignee, rendering subsequent assignment invalid as well).  Ms. von Braunhut was

not the assignor, she did not have authority to execute the First Assignment on behalf of the

dissolved Transcience-NY and her execution of the First Assignment is of no legal effect.

Moreover, as set forth above, her March 4, 2016 assignment cannot retroactively cure a defect in standing.  Dahon, 2012 U.S. Dist. LEXIS 57510, at *22.  The First Assignment is invalid as a matter of law.

        b.      The Second *nunc pro tunc* Assignment:  Harold von Braunhut to H&Y Partnership, eff. 10/14/2000.  Harold von Braunhut passed away on November 28, 2003.  Nonetheless, on March 4, 2016, he purportedly memorialized in writing an assignment of the HvB Marks to the H&Y Partnership.  (Kramer Decl., Ex. G).  The assignment purported to be *nunc pro tunc*, effective as of October 14, 2000 (again, 16 years earlier, the "Second Assignment").  According to the Second Assignment, in the form which we believe was intended to be on file with TESS[7], the signature box for Harold von Braunhut, as assignor, was signed by Yolanda von Braunhut with the following parenthetical "(Yolanda von Braunhut, as partner, on behalf of Harold von Braunhut)".

    Again, it is imperative that an assignment be signed by the assignor.  Rushmore, 15 Misc.3d 1139(A).  Ms. von Braunhut was not the assignor, she did not have authority to execute the Second Assignment on behalf of the deceased Harold von Braunhut.  Her execution of the Second Assignment is of no legal effect.  Moreover, as set forth above, her March 4, 2016 assignment cannot retroactively cure a defect in standing.  Dahon, 2012 U.S. Dist. LEXIS 57510, at *22.  This Second Assignment, too, is invalid as a matter of law.

        c.      The Third *nunc pro tunc* Assignment:  H&Y Partnership to Yolanda von Braunhut, eff. 11/28/2003.  On March 4, 2016, the H&Y Partnership purported to memorialize in

---

[7] Unexecuted versions of the three assignments were provided to us by Mr. Timmons as part of a 60 page attachment to an email on June 6, 2016.  Executed versions, which we obtained online from the USPTO's Trademark Electronic Search Service ("TESS"), did not match the unexecuted copies provided by Mr. Timmons.  Upon investigation, it appears that Mr. Timmons mixed-up pages from the Second Assignment and Third Assignment as filed with the USPTO, i.e., pages 3 and 4 of the assignments do not follow pages 1 and 2, so the contracting parties and signature pages do not match-up.  We cannot determine if the Exhibit pages were switched as well.  For purposes of our analysis, we have assumed that these filed documents are as they were intended to be (not as they are).

writing a transfer by an assignment, *nunc pro tunc*, of both the Transcience-NY Marks and HvB

Marks to Yolanda von Braunhut intending to be effective November 28, 2003, the date of

Harold's death (the "Third Assignment").  (Kramer Decl., Exs. G and H).  According to the

Third Assignment, in the form which we believe was intended to be on file with TESS, the

signature box for the H&Y Partnership, as assignor, was again signed by Yolanda von Braunhut

with the following parenthetical "(Yolanda von Braunhut, as partner, on behalf of Harold von

Braunhut)".

Because the First and Second Assignments were both invalid as a matter of law, as

explained above, the H&Y Partnership had no trademarks to assign in the Third Assignment.

Regardless, as set forth above, Ms. von Braunhut's retroactive attempt to do so fails and cannot

confer standing upon her to bring a claim of trademark infringement.  Dahon, 2012 U.S. Dist.

LEXIS 57510, at *22.  Consequently, the assignment by the H&Y Partnership to Plaintiff is of

no effect.

d.      Invalidity of *Nunc Pro Tunc* Assignments.  Again, it is imperative that an

assignment be signed by the assignor.  Rushmore Recoveries X, LLC v. Skolnick, 15 Misc.3d

1139(A) (Nassau Ct. 2007) (finding assignment invalid where not signed by assignee, rendering

subsequent assignment invalid as well).  Ms. von Braunhut was not the assignor, nor was she a

director of Transcience-NY at the time of its dissolution.  As such, her execution of the First

Assignment is of no legal effect.  Similarly, there is no basis for her to execute a retroactive

assignment on behalf of her deceased husband.  The Second Assignment is of no legal effect.

Additionally, a trademark cannot be validly assigned unless accompanied by its goodwill

garnered in the marketplace.  Marshak v. Green, 746 F.2d 927, 929-30 (2d Cir. 1984).  The

statement in Plaintiff's affidavit, that "[Harold] made it clear that all of the intellectual property

and corporate interests owned by him as an individual were now owned by our partnership",

even assuming it could be regarded as language effectuating a transfer (which it does not), does

not satisfy this requirement.

   e.  Conclusion re: *Nunc Pro Tunc* Assignments.  The three *nunc pro tunc*

transfers, while invalid, are a tacit admission by Plaintiff that on December 2, 2014, the date the

Complaint was last amended, neither Transcience-MD nor Yolanda von Braunhut owned any of

the trademarks that are the basis of the claimed trademark infringement.

## B. Plaintiff Has No Standing Under Section 32 of the Lanham Act To Assert Infringement.

  Plaintiff expressly alleges that all of the marks at issue are registered. (Cplt. ¶146).

Plaintiff is not seeking to protect an unregistered mark.  Accordingly, the Complaint alleges

"Trademark Infringement" with respect to registered marks under Section 32 of the Lanham Act

(15 U.S.C. 1114(1)).  As an element of her trademark infringement claim, Plaintiff bears the

burden of proving, among other things, ownership of the trademarks in issue.  Treasury Ent.

Sojuzplodoimport v. SPI Spirits, 726 F.3d 62, 72 (2d Cir. 2013); Dahon, 2012 U.S. Dist. LEXIS

57510, at *22.  "A party lacks standing to sue for trademark infringement if it does not own the

trademark at issue."  Dahon, 2012 U.S. Dist. LEXIS 57510, at *22.  This is an issue for the Court

to decide.  Treasury, 726 F.3d at 72.

  Based on the facts set forth above, as a matter of law, (i) ownership of the Transcience-

NY Marks either remains with Transcience-NY or they escheated to the state of New York, and

(ii) ownership of the HvB Marks either remains with Harold's estate or is vested in the dissolved

Transcience-MD.  Under any scenario, Plaintiff is not, and has never been, either the "owner" or

the "registrant" of any of the trademarks at issue in this case.  Plaintiff has no standing to sue for

infringement under Section 32 of the Lanham Act.

## C. Any Claims For Trademark Infringement Under Section 43(a) of the Lanham Act Also Fail.

Given the failure of her claim under Section 32 of the Lanham Act, Plaintiff may attempt to now allege trademark infringement with respect to unregistered trademarks under Section 43 of the Lanham Act (15 U.S.C. 1125(a)).  Even if the Court examines Plaintiff's claims under Section 43 of the Lanham Act, the same result obtains—Plaintiff's trademark claim fails.  While claims under Section 43 of the Lanham Act are broader because Section 43(a) addresses unregistered marks, the legal standard for trademark infringement under Section 32 and 43(a)(1)(A) is the same.  Innovation Ventures, Inc. v. Ultimate One Distributing Corp., 176 F. Supp.3d 137, 155 (E.D.N.Y. 2016); Diesel S.P.A. v. John Does 1-9, 2016 U.S. Dist. LEXIS 2720, at *7 (S.D.N.Y. 2016).  Plaintiff must demonstrate that she owns a protectable trademark that Defendant appropriated in commerce causing confusion.  See Genometrica Research, Inc. v. Gorbovitski, 2013 U.S. Dist. LEXIS 13512, **34-35 (E.D.N.Y. 2013) (noting that although Section 43(a) does not explicitly require the plaintiff own the mark, when Section 43 is used as a vehicle for trademark infringement a protectable mark is required (i.e. one that is owned by the plaintiff)); Diesel S.P.A., 2016 U.S. Dist. LEXIS 2720, at *7 (holding that under Section 43(a)(1) plaintiff must demonstrate that it "owns a protectable trademark" to allege infringement/false designation of origin).[8]  Plaintiff cannot demonstrate that she is the owner of the marks and cannot sustain a claim of trademark infringement under Section 43(A) of the Lanham Act.

The Court must reject any attempt by Plaintiff to rewrite her Complaint and now allege unfair competition, false advertising or any other theory within the scope of Section 43.  Only trademark infringement, no other theories, has been pled.  Changing theories and causes of

---

[8] Some courts hold that under Section 43, a plaintiff need only demonstrate a commercial or pecuniary interest in order to have standing.  Plaintiff still has no right or interest in the Trademarks because she is not the owner, the assignee or a licensee.

action on the eve of trial is improper and unfairly prejudicial.  See Antrobus v. New York City Dep't. of Sanitation, 2016 U.S. Dist. LEXIS 24111, *37 (E.D.N.Y. 2016) (noting that "prejudice is generally found where a motion to amend comes on the eve of trial after many months or years of pre-trial activity" and entails more than a change to the allegations in the complaint); Magnuson v. Newman, 2013 U.S. Dist. LEXIS 158893, *9-10 (S.D.N.Y. 2013) (denying motion for leave to appeal on the eve of trial, after three years, would be prejudicial to defendant) (see authorities cited).  Plaintiff has never alleged unfair competition, false advertising or any other theory under Section 43, despite having twice amended her Complaint.  Any such claim would require additional fact discovery and a reconsideration of the issue of Plaintiff's alleged damages, both of which are impossible given the current trial date.  Thus, any last minute change of theory proposed by Plaintiff must be rejected.

**D.  Conclusion.**

Plaintiff has no standing to sue for trademark infringement under the Lanham Act.  Because she cannot establish ownership of the Trademarks, as the threshold element of her trademark infringement claim, the claim cannot be presented to the jury, but must be dismissed instead.[9]

## POINT II

## PLAINTIFF MUST BE PROHIBITED FROM ALLEGING COUNTERFEITING

Plaintiff has not alleged "counterfeiting" in the Complaint.  However, during the course of this litigation Plaintiff has sent letters to certain retailers, including WalMart and Toys R Us, asserting that BTT is marketing and selling counterfeit Sea Monkeys products.  (Kramer Decl., Ex. L).  Plaintiff has also made representations to that effect to Your Honor and Magistrate Judge Ellis.  As described below, such statements are incorrect as a matter of law.  Any assertion that

---

[9] Plaintiff has not alleged infringement under New York state law.

BTT is engaged in counterfeiting during the course of the trial would be unfairly prejudicial to BTT and must be prohibited.

"The essence of counterfeiting" is the use of the infringing mark to trick the consumer into believing he or she is receiving the genuine article, not an imitation.  Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co., 2015 U.S. Dis. LEXIS 96337, * * (S.D.N.Y. 2015).  A counterfeit mark is a "spurious mark" that is identical to or indistinguishable from a registered mark.  Fischer v. Forrest, 2017 U.S. Dist. LEXIS 5498, *33-34 (S.D.N.Y. 2017).  Although not defined by statute, case law has defined "spurious" as "fake" or suggesting a "false origin".  Id. at *38-39.  Thus a fundamental question before the Court when presented with a claim of counterfeiting is whether or not the items are fake.  Gucci America, Inc. v. Duty Free Apparel, 286 F. Supp.2d 284, 287 (S.D.N.Y. 2003).  Furthermore, ownership of a registered mark is a requirement for alleged counterfeiting.  See Bangkok Bangkok Import & Export, Inc. v. Jamtan African American Market Group, 2016 U.S. Dist. LEXIS 81245, *5 (S.D.N.Y. 2016) (noting that ownership of the trademark is a necessary element to prevail on a counterfeiting claim); 15 U.S.C. § 1114(1)(a) (prohibiting the unauthorized use of "any reproduction, **counterfeit**, copy, or colorable imitation of a **registered mark** in connection with the sale, offering for sale, distribution).

In this case, Plaintiff has not pled counterfeiting, nor could she.  She is not owner or registrant of the Sea-Monkey's trademarks, and Defendant is the beneficial owner of the trademarks.  Thus, because Plaintiff has not and cannot allege counterfeiting, she should not be permitted to imply or argue to the jury that counterfeiting occurred.

## POINT III

### PLAINTIFF CANNOT RAISE THE ISSUE OF LICENSEE ESTOPPEL

BTT anticipates that Plaintiff will seek to obscure the issues surrounding her lack of ownership of the Sea-Monkeys marks by raising the doctrine of "Licensee Estoppel."   The doctrine does not apply here based on Plaintiff's own allegations.   Plaintiff alleges that she terminated the Purchase Agreement in January 2013[10].   According to J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, Section 18:63 at 18-171 (4th Edition 2015), ". . . a no-contest or no-challenge clause in a license only operates during the duration of the license and cannot be invoked after the license is terminated".   Martha Graham School and Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc., 153 F. Supp.2d 512 (S.D.N.Y. 2001), aff'd 43 Fed. Appx. 408 (2d. Cir. 2002); Bucky v. Sebo, 208 F.2d 304, 306 (2d. Cir. 1953).   Thus, neither licensee estoppel nor a no-contest clause can be invoked to prevent BTT from challenging the ownership or validity of the trademarks now.

Plaintiff also warranted in the Agreement that she was one of the sole owners of the trademarks.  (Kramer Decl., Exs. A-B).  As demonstrated above, that representation was not true.  A no-challenge provision is not effective, where, as here, the contract contains warranty of title and the licensor has breached that provision.  See C.B.C. Distrib. & Mktg. v. Major League Baseball Advanced, L.P., 505 F.3d 818, 825 (8th Cir. 2007) (applying New York law); See also Gramercy Mktg. Assocs. v. Russell-Newman, Inc., No. 09-6421, 2010 WL 1253374, at *4 (S.D.N.Y. 2010) (the licensee estoppel doctrine does not apply where the licensee expressly renounced the license agreement on the ground that it is the product of the licensor's material misrepresentations).

---

[10]   We put aside for the moment the fact that the Agreement is a purchase contract calling for payments of purchase price and transferring title to the property to Defendant.

In addition, licensee estoppel "is 'equitable in nature and is not subject to rigid application." <u>Melwani v Singh</u>, 2004 WL 1672556, *4 (S.D.N.Y. 2004) (holding that "upon closer examination, fairness considerations" made license estoppel "inappropriate"); <u>Martha Graham School and Dance Foundation, Inc</u>., 153 F.Supp.2d at 520 ("license estoppel is 'equitable'" and "not subject to rigid application"); <u>McCarthy On Trademarks And Unfair Competition,</u> Section 18:63, at 18-108 ("license estoppel is an equitable doctrine which is not to be rigidly applied in any and all circumstances"); *Restatement (Third) Unfair Competition*, Section 33, Comment d ("license estoppel is an equitable doctrine, and a court remains free to consider that particular circumstances of the case, including the nature of the licensees' claim and the terms of the license"). Even assuming licensee estoppel would apply to the Agreement, it is entirely unfair in these circumstances. Plaintiff first disavowed the Agreement and claimed Defendant infringed the trademarks as though the Agreement never existed. She then withdrew her claim of breach of contract related to the Agreement, while simultaneously relying upon it to claim licensee estoppel. Plaintiff's tortured attempt to deprive Defendant of a legitimate defense to Plaintiff's infringement claim fails as a matter of law.

**POINT IV**

**<u>PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED</u>**

Although a party may plead both breach of contract and unjust enrichment, a party cannot use an unjust enrichment claim to salvage an otherwise failed breach of contract claim. Where an express contract exists, as in this case, a party cannot recover on a theory of unjust enrichment. <u>Karmilowicz v. The Hartford Financial Services Group, Inc.</u>, 494 Fed Appx. 153, 158 (2d Cir. 2012); <u>De La Cruz v. Caddell Dry Dock & Repair Co., Inc.</u>, 22 A.D.3d 404, 405 (1st Dept. 2005). This is true even if the claim of breach of contract is subsequently withdrawn. <u>See</u>

20

Hinterberger v. Catholic Health Sys., 536 Fed. Appx. 14, 17 (2d Cir. 2013).  In Hinterberger, the

plaintiffs withdrew their claims regarding written employment contracts, but the Court still held

that Plaintiffs' unjust enrichment claims failed because they had already admitted the existence

of the contracts. Accord  Komilossy v. Faruqi & Faruqui, 2017 U.S. Dist. LEXIS 25490, *23-24

(S.D.N.Y. 2017) (noting that a plaintiff cannot avoid a statute of limitations defense to a breach

of contract claim by alleging unjust enrichment).

In this case, Plaintiff has admitted the existence of the Purchase Agreement.  While

Plaintiff has voluntarily withdrawn her claims for breach of contract, her unjust enrichment

claims are inextricably intertwined with the Purchase Agreement.  Arch Specialty Ins. Co. v.

Sealmax Glass Systems, Inc., 2017 U.S. Dist. LEXIS 22530, *9 (E.D.N.Y. 2017) (holding that

claims are duplicative if they arise from the same facts and do not have distinct damages).

Indeed, as set forth above, Plaintiff is improperly seeking to use the Purchase Agreement to

prevent BTT from defending against her claims of trademark infringement, while seeking to

otherwise avoid the Agreement by suing for unjust enrichment.[11]  Plaintiff is not free to invoke

the Purchase Agreement's terms when she wants and then ignore them when they are

inconvenient.  Plaintiff's decision to withdraw her claim for breach of contract does not change

this fact.  Nor does it give life to her unjust enrichment claim, which is duplicative of her

contract claim and should be dismissed as such.

## POINT V

### PLAINTIFF IS PRECLUDED FROM INTRODUCING
### ANY TESTIMONY/EVIDENCE RELATED TO BETH HARWELL

BTT expects that Plaintiff will try to introduce during the trial testimony or evidence

regarding Beth Harwell, the current Speaker of the House of Tennessee.  Ms. Harwell is not a

---

[11] Even in her claim for damage for unjust enrichment, Plaintiff seeks "the exact amount of monies not paid pursuant
to the former agreement between the parties".  (Kramer Decl., Ex. M).

party to the litigation or a witness; her sole connection to this matter is that she is married to

another non-party, Sam Harwell, who is BTT's President.  There is no reason to identify, much

less, introduce Ms. Harwell during the trial.  Her identity will not make any fact of consequence

in the litigation more or less probable, meaning it is inadmissible and irrelevant.  F.R.E. 401-402.

The sole reason to identify Mr. Harwell's wife is to attempt to cause her embarrassment and to

compromise her politically, with the hope of forcing Mr. Harwell to cause BTT to settle, or at

least concede, elements of its case.  Any reference to Ms. Harwell may improperly inflame and

prejudice the jury.

## POINT VI

## PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

Punitive damages are not available under New York law for claims of breach of contract

or unjust enrichment.  Hutton v. Klabal, 726 F. Supp. 67, 73 (S.D.N.Y. 1989) (noting that

punitive damages cannot be awarded for matters involving breaches of private contracts or unjust

enrichment); M'Baye v. World Boxing Assoc., 2007 U.S. Dist. LEXIS 23173, **12-13

(S.D.N.Y. 2007).  Nor are punitive damages available for trademark infringement.  Regardless of

the type of damage award under trademark statutes, the Court must ensure that it constitutes

"compensation, and not a penalty." 15 U.S.C. § 1117(a).

Plaintiff's sole remaining claims are trademark infringement and unjust enrichment.

Even assuming that one or both survive through trial, Plaintiff is not entitled to punitive damages

with respect to either claim as a matter of law.  Thus, her claims for punitive damages must be

dismissed with prejudice, and she must be prohibited from presenting evidence regarding same.

# POINT VII

## PLAINTIFF'S TRADEMARK DAMAGES MUST BE LIMITED

Assuming *arguendo* that the Court allows Plaintiff to proceed on her trademark infringement claim (and it should not), Plaintiff's damage claim needs to conform to the categories and scope of damages permitted under the Lanham Act for a case like this. These damages do not include punitive damages (as set forth above).  Moreover, the damages do not include treble damages, attorneys' fees or prejudgment interest.

### A.  Prejudgment Interest and Fees' Are Not Appropriate

The Lanham Act provides for attorneys' fees and prejudgment interest only in "exceptional" cases and based upon the Trial Court's discretion.  Beastie Boys v. Monster Energy Co., 112 F. Supp.3d 31, 45 (S.D.N.Y. 2015); Merck Eprova AG v. Gnosis SPA, 760 F.3d 247, 264 (2d Cir. 2014).  Exceptional cases involve not just fraud, bad faith or willfulness, but they "stand out" with respect to the substantive strengths of the arguments or the unreasonable manner in which the case was litigated.  Beastie Boys, 112 F. Supp.3d at 46 (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014)).  Thus, the Courts in the Second Circuit do not award fees except in cases of extreme misconduct during litigation.

This is not the type of case where fees or prejudgment interest should be awarded.  At its core, this is a commercial dispute over a Purchase Agreement, which BTT believes gives it the right to sell the Sea-Monkeys products, a position with which Plaintiff disagrees.  Plaintiff has already dismissed her contract and copyright infringement claims — a full half of the claims in the 2d Amended Complaint (and six of the original eight claims) — and her remaining claims are by no means certain as set forth above.  Thus, this is not an exceptional case that warrants the imposition of fees or prejudgment interest.

**B.  Treble Damages Are Not Appropriate**

Treble damages are only mandatory where there is counterfeiting of a registered mark. 15 U.S.C.  1116(d).  Because Plaintiff is not the owner of any registered mark, she cannot bring a claim for counterfeiting and is not entitled to a mandatory award of treble damages.  Nor is she entitled to a discretionary award of treble damages.

The Court may award treble damages where it find the amount of the recovery based upon profits is inadequate and to deter willful infringement.  Merck Eprova, 760 F.3d at 263; Audemars Piguet Holdings, S.A. v. Swiss Watch Int'l, Inc., 2015 U.S. Dist. LEXIS 3207, *9 (S.D.N.Y. 2015).  In this case, Plaintiff has made no showing that an award based upon profits is insufficient, and in fact has argued the opposite in her answers to interrogatories. (Kramer Decl. Ex. M).

Furthermore, this is not a case of willful infringement but rather a good faith dispute over who has the right to use the Sea Monkeys' trademarks and sell Sea Monkey's products under the Purchase Agreement. Thus, no enhancement of fees is appropriate.

## POINT VIII

### PLAINTIFF'S UNJUST ENRICHMENT DAMAGES MUST BE LIMITED TO THOSE COSTS THAT ARE CERTAIN AND TRACEABLE

Damages under a contract or quasi-contract theory are designed to place the plaintiff in the same position she would have been in but for the breach or failure to pay.  Ng v. Tow, 260 A.D.2d 574 (2d Dept. 1999).  Indeed, the whole point of an unjust enrichment claim is that it would be unjust for a party to retain the benefit bestowed.  Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp.3d 441, 453 (S.D.N.Y. 2014); Briarpatch Ltd. v. Phx. Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004); Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000); Learning Annex Holdings, LLC v. Rich Global, LLC, 2011 U.S. Dist. LEXIS 90091, *10 (S.D.N.Y. 2011); New

24

York City Economic Dev. Corp. v. T.C. Food Import and Export, Co., 11 Misc.3d 1087(A) (Sup. Ct. 2006) (party who prevails on claim of unjust enrichment is entitled to restitution of the benefit conferred not a windfall).   In other words, not every cost incurred by a plaintiff is a benefit conferred upon the defendant.  Alko Mfg. Corp. v. Neptune Meter Co., 20 A.D.2d 635 (1st Dept. 1964).

Furthermore, the unjust enrichment damages cannot be speculative or merely possible, but rather must be reasonably certain and directly related to the benefit conferred, not intervening causes.  Legurnic v. Ciccone, 63 F. Supp.3d 241, 248 (E.D.N.Y. 2014) (holding that benefit conferred must be specific and direct in order to support an unjust enrichment claim); see also Gidatex v. Campaniello Imports. Ltd., 49 F. Supp. 2d 298 (S.D.N.Y 1999) (noting that damages in an unjust enrichment claim must not be speculative).   Damages on a claim of unjust enrichment are limited to the reasonable value of the services rendered or benefit conferred.  Id.

Plaintiff impermissibly seeks wide ranging and far reaching categories of damages, most of which bear no relationship to her claims in this case.  They do not represent any type of benefit bestowed on BTT, nor are they related at all, much less specifically or directly, to any benefit alleged conferred on BTT by Plaintiff.  These categories of damages should be excluded as a matter of law.  They include:

1) Alleged damages arising out of the termination of electricity, water and heat to Plaintiff's home;

2) The death of Plaintiff's sister;

3) The "degradation" of Plaintiff's quality of life;

4) The loss of a life insurance policy and "tax implications";

5) The potential (not even actual) loss of real estate for failure to pay taxes; and

6)  BTT's alleged failure to maintain sales in excess of $3,000,000.[12]

None of these categories are a "benefit" that Plaintiff conferred upon BTT and none are a direct and specific result of any action by BTT.  Thus, they are not appropriate damages that are recoverable under Plaintiff's unjust enrichment claim and must be excluded as a matter of law. Any testimony with respect to such matters would be prejudicial to BTT and must be prohibited.

## CONCLUSION

For the foregoing reasons, BTT respectfully requests that the Court grant its motions *in limine* and dismiss Plaintiff's claims of trademark infringement and unjust enrichment and otherwise limit the introduction of evidence at trial related to Beth Harwell and Plaintiff's claims for damages, all as more fully described above.

April 3, 2017                                         Respectfully submitted,

 *s/ Sheila A. Woolson*
Sheila A. Woolson, Esq.
Jeffrey G. Kramer, Esq. (*pro hac vice*)
Epstein Becker & Green, P.C.
One Gateway Center – 13th Floor
Newark, NJ 07102
Telephone: (973) 642-1900
Facsimile: (973) 642-0099

*Attorneys for Defendant Big Time Toys, LLC*

---

[12] The last category of damages is based on Plaintiff's misreading of Section 2.3 of the Purchase Agreement.  Given that Plaintiff dismissed the breach of contract claim, this category is not relevant.