## Exhibit #1

# Affidavit of Yolanda von Braunhut

I, YOLANDA VON BRAUNHUT, declare as follows:

1. My name is **Yolanda von Braunhut**.

2. I reside at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040.

3. I maintain a post office box address at PO Box 809, Byrans Road, MD 20616-0809.

4. I am the individual named as a Plaintiff in the action entitled *Transcience Corporation & Yolanda von Braunhut (individual) v. Big Time Toys, LLC* (Index Number: 13-cv-6642) that is now currently being prosecuted in the Southern District of New York (**SDNY**).

5. I am the owner of all the intellectual property, common law rights, and concomitant goodwill that relates or is otherwise in any way associated with the product known to the world as SEA-MONKEYS®.

6. The SEA-MONKEYS® product was a product that was created by my late husband Harold von Braunhut.

7. I first met Harold on the set of a TV production studio in New York City in or about the year 1968.

8. We began a lifelong friendship shortly afterwards.

9. I was listed as the "Secretary-Treasurer" on the documents of incorporation of the *Transcience Corporation* in the State of New York when that company was formed in the year 1970.

10. I married Harold on February 14th of the year 1980 in New York City.

11. Harold and I purchased and moved into the residence located at 6200 Chapmans Landing Road in the year 1984 where I still live today.

12. Harold died on November 28, 2003 at that same residence.

13. Harold was a charismatic, eccentric, and highly unorthodox individual.

14. Harold was a noted American inventor and marketer who developed over the course of his lifetime various products many of which have become cultural icons including, as noted previously, a product named SEA-MONKEYS®.

Page 1

Affidavit of Yolanda von Braunhut

# Affidavit of Yolanda von Braunhut

15. The SEA-MONKEYS® product and its associated intellectual property was and is Harold's most successful and enduring enterprise and legacy.

16. Over the course of my relationship with Harold I became ever more intrinsically involved and intertwined with the SEA-MONKEYS® product and the SEA-MONKEYS® business.

17. On or about October 4th of the year 2000 my beloved father Michael "Maestro" Signorelli died.

18. On or about the date of October 14, 2000 Harold and I, in the light of my father's death, had a long discussion about life and death, about the meaning of life, and about what we meant to each other.

19. Harold told me, words to the effect, that all things being what they are that he was profoundly happy that he was lucky enough to have found his soulmate.

20. Harold told me at that time, words to the effect, that while we were as soulmates bound together heart, body, mind, and soul that he wanted it to be clear to me that I was his business partner as well.

21. While I had been involved with the SEA-MONKEYS® business and Harold's other endeavors from the days soon after I first met Harold, Harold made it clear to me at that moment that he envisioned he and I together as a business partnership from that point forward.

22. He made it clear that all of the intellectual property and corporate interests owned by him as an individual were now owned by our partnership.

23. We agreed that we would work together as equals and perform any and all of the necessary tasks and responsibilities of the partnership.

24. I reciprocated by telling him, words to the effect, that my heart, body, mind, and soul was also bound to him and that all intellectual properties owned by me were also to be owned by our partnership.

25. Harold and I furthermore agreed that the property owned by our

Page 2

Affidavit of Yolanda von Braunhut

# Affidavit of Yolanda von Braunhut

partnership would be passed on solely to the survivor of us upon one of us passing.

26. The partnership was formed in the State of Maryland on or about the date of October 14th 2000, had no name, and was not set in writing.

27. By default the name of the partnership was simply "us" or "Harold & Yolanda" from my perspective or "Yolanda & Harold" from his.

28. The Sea-Monkeys® product incorporates vital and closely held trade secrets that Harold developed and perfected over the years.

29. The trade secrets are used to produce the content of SEA-MONKEYS® pouches that are incorporated into the SEA-MONKEYS® product that is sold to the public.

30. While I previously had access to the trade secrets over my many years with Harold, Harold insisted after the creation of our new partnership that I be made expressly aware of each of the many steps and subtle nuances and causes and effects necessary to successfully produce the SEA-MONKEYS® product.

31. After the formation of the partnership Harold fully versed and trained me in the trade secreted methods, processing, and procurement of all the ingredients of the pouches that are vital to the SEA-MONKEYS® product.

32. Harold owned as an individual several US trademarks effective all throughout the United States of America at the time that we formed our partnership that relate to the SEA-MONKEYS® product.

33. These US trademarks as registered with the United States Patent and Trademark Office (**USPTO**) are as follows: (**see attached Addendum A**)

   a. Word Mark: "**SEA-MONKEYS"**; USPTO Serial Number: 72161791; USPTO Registration Number: 0769332;

   b. Word Mark: **SEA-MONKEYS**; USPTO Serial Number: 76136804; USPTO Registration Number: 2485247;

Page 3

Affidavit of Yolanda von Braunhut

## Affidavit of Yolanda von Braunhut

c. Word Mark: **INSTANT LIFE**; USPTO Serial Number: 72161789; USPTO Registration Number: 0769330;

d. Word Mark: **INSTANT PETS**; USPTO Serial Number: 72456406; USPTO Registration Number: 999873;

e. Word Mark: **OCEAN ZOO**; USPTO Serial Number: 76137530; USPTO Registration Number: 2509518;

f. Drawing: **HATCHED EGG DESIGN**; USPTO Serial Number: 72161790; USPTO Registration Number: 769331.

34. At the time we formed our partnership Harold also owned several foreign trademarks that were registered in several foreign nations that related to the SEA-MONKEYS® product. (**see attached Addendum A**)

35. At the time Harold and I formed our partnership the ownership of all domestic and foreign trademarks relating to the SEA-MONKEYS® product were transferred to the partnership.

36. After Harold died the ownership to all domestic and foreign trademarks relating to the SEA-MONKEYS® product were effectively transferred to me pursuant to my partnership with Harold.

37. The *Transcience Corporation MD* was formed in the year 2003.

38. The *Transcience Corporation MD* in effect licensed the SEA-MONKEYS® intellectual property, including but not limited to the trade secrets, from the partnership to create the contents of the SEA-MONKEYS® pouches.

39. I became the sole owner of the *Transcience Corporation MD* by an operation of law after Harold died.

40. After Harold died the *Transcience Corporation MD* licensed the SEA-MONKEYS® intellectual property, including but not limited to the trade secrets, from me to create the contents of the SEA-MONKEYS® pouches.

41. The *Transcience Corporation MD* was the sole and exclusive manufacturer of the contents of the SEA-MONKEYS® pouches that were incorporated into the SEA-MONKEYS® product.

Page 4

Affidavit of Yolanda von Braunhut

# Affidavit of Yolanda von Braunhut

42. The *Transcience Corporation MD* produced and was paid to produce the contents of the SEA-MONKEYS® pouches that were incorporated into the SEA-MONKEYS® product.

43. All issues relating to the production, delivery, and/or accountings of the contents of the SEA-MONKEYS® pouches were the sole responsibility of the *Transcience Corporation MD*.

44. Pursuant to the license granted by me to *Transcience Corporation MD* I retained the right to control the quality of the contents of the SEA-MONKEYS® pouches that were made and distributed by *Transcience Corporation MD*.

45. I am the owner of the common law rights and the goodwill associated with all of the trademarks that relate to the SEA-MONKEYS® business.

46. No other party has made a claim of ownership to any of the trademarks and the associated goodwill that relate to the SEA-MONKEYS® business.

47. The public continues to write to me up to the current date in time to make good on any warranties that relate to the SEA-MONKEYS® business.

48. I continue to honor the warranties made on all sales to the public with regard to warranties that relate to the SEA-MONKEYS® business.

49. I continue to pay the renewal fees for all of the registered trademarks that relate to the SEA-MONKEYS® business when they are due for renewal.

50. Notwithstanding, any and all *nunc pro tunc* filings made with the **USPTO** and other foreign registries I expressly reserve the right to re-register any and all of the trademarks that relate to the SEA-MONKEYS® business with the **USPTO** and other foreign registries should such a need arise.

51. There is no doubt in my mind that should I ever elect to sell, transfer, or otherwise assign my right, title, and interest to any or all of trademarks that relate to the SEA-MONKEYS® business that I will be able to convey clear and unequivocal title to such.

Page 5

Affidavit of Yolanda von Braunhut

## Affidavit of Yolanda Von Braunhut

I declare under penalty of perjury under the laws of the State of New York and the United States of America that the foregoing to the best of my knowledge is true and correct.

Executed this 4th day of March 2016

at Sayville, New York

_Yolanda von Braunhut_                    3/4/16

Yolanda von Braunhut                           Date

Sworn to before me this

4th day of March 2016

_Will . T_

Notary Public

WILLIAM TIMMONS, ESQ.
Notary Public, State of New York
No 02TI6201454
Qualified in Suffolk County
Commission Expires March 7, 2017

**Signature Page**

Affidavit of Yolanda Von Braunhut

**Exhibit #2**



## TRADEMARK AND DOMAIN NAME ASSIGNMENT

Assignment by and between

**Transcience Corporation**

and

**The Partnership of Harold & Yolanda**

October 14, 2000

with regard to

## Sea-Monkeys®

executed *nunc pro tunc* March 4th 2016

◄☼►

## TRADEMARK AND DOMAIN NAME ASSIGNMENT

This assignment (the "Assignment") is by and between **Party #1**; the former Transcience Corporation ("**TSC**"), a New York corporation, with offices located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040 and **Party #2**; the Partnership of Harold von Braunhut & Yolanda von Braunhut **OR** Harold & Yolanda ("**H&Y**") with offices located at 6200 Chapmans Landing Road, Indian Head, MD 20640-3040 and is effective as of October 14, 2000 (the "Effective Date").

**WHEREAS**, TSC is the owner of certain trademarks identified in **Exhibit A** (the "Trademarks") and of certain domain names also identified in **Exhibit A** (the "Domain Names");

**WHEREAS**, TSC acquired INACTIVE status as a corporation registered under the laws of the State of New York on 12-24-91;

**WHEREAS**, Harold von Braunhut was the sole shareholder of **TSC** corporate stock;

**WHEREAS**, no claims or liabilities have been made or levied against **TSC** upon or since its dissolution;

**WHEREAS**, Harold von Braunhut and Yolanda von Braunhut entered into a partnership via oral agreement pursuant to the laws of the State of Maryland on or about the date of October 14, 2000 (**see Exhibit B**);

**WHEREAS**, the terms of the partnership between Harold von Braunhut and Yolanda von Braunhut effectively provided that all of the intellectual property belonging to the dissolved corporation would pass solely and exclusively to **H&Y** (**see Exhibit B**);

**WHEREAS**, TSC desires to transfer all rights, title, and interest in and to the Trademarks to **H&Y**;

**WHEREAS**, TSC desires to transfer all rights, title, and interest in and to the related Domain Names to **H&Y**;

In consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      **Trademark Assignment**. TSC irrevocably assigns, grants and transfers to **H&Y**, all of **TSC**'s right, title, and interest in and to the Trademarks, including all common law rights, and any trademark registrations and applications, along with the goodwill of the business symbolized by use of the Trademarks, and the right to sue third parties for and recover damages from future infringement of the Trademarks, the same to be held and enjoyed by **H&Y** for its own use and enjoyment and the use and enjoyment of its successors, assigns or other legal representatives, as fully and entirely as the same would have been held and enjoyed by **TSC** if this assignment had not been made (the "Assignment").

To the extent that TSC is seeking to perfect the ownership of the Trademarks and **TSC**'s ownership of the Trademarks has not been perfected by the Effective Date, **TSC** agrees to promptly assign



ownership of the Trademarks to **H&Y**, in accordance with the terms of this Agreement, as soon as such ownership has been perfected. **TSC** further agrees to take all steps necessary to promptly expedite any perfection of their ownership in and to the Trademarks. **TSC** hereby authorizes the Commissioner of Patents and Trademarks of the United States, and any official of any other country empowered to issue trademark registrations, to record this Assignment, and to issue or transfer said Trademarks to **H&Y** as owner of all right, title and interest therein, or otherwise as **H&Y** may direct, in accordance with the terms of the Assignment.

2.      **Domain Names**. Upon the mutual agreement of the Parties, as of the Effective Date of the assignment **H&Y**, **TSC** shall cause any related Domain Names (including all sub-domains and related URLs) to redirect directly to the URLs designated by **H&Y** with no interstitial content. As of the Effective Date, **TSC** hereby transfers to **H&Y TSC's** entire right, title and interest to the Domain Names.

3.      **Execution and Delivery**. Upon **H&Y's** request, **TSC** agrees that it will take such actions and execute such documents (including, without limitation, the prompt execution and delivery of documents in recordable form or testifying as to any material fact or thing and including the transfer of any domain names through appropriate communications with domain name registrars) as may be necessary to vest in and secure unto **H&Y** the full right, title and interest in and to the Trademarks and Domain Names and to protect and enforce the Trademarks.

4.      **Representations and Warranties**. **TSC** represents and warrants that **TSC** has the full right to convey the entire right, title and interest herein assigned, and that **TSC** will not take any action, use any trademark or domain name, or execute any instrument or grant or transfer any rights, title or interests inconsistent with the rights, title and interests assigned herein.

5.      **Warranty Disclaimer**. **TSC** MAKES NO WARRANTIES, EXPRESS OR IMPLIED, TO ANY PERSON OR ENTITY WITH RESPECT TO THE TRADEMARKS OR ANY RELATED MATERIALS PROVIDED HEREUNDER, ALL OF WHICH ARE PROVIDED "AS IS," AND DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NONINFRINGEMENT.

6.      **Limitation of Liability**. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING FROM OR RELATED TO THE USE OF THE TRADEMARKS, EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

7.      **Miscellaneous**

a. **Modification and Waiver**. The failure of either party to enforce its rights or to require performance by the other party of any term or condition of this Agreement shall not be construed as a waiver of such rights or of its right to require future performance of that term or condition. Any amendment or modification of this Agreement or any waiver of any breach of any term or condition of this Agreement must be in a writing signed by both parties in order to be effective and shall not be construed as a waiver of any continuing or succeeding breach of such term or



condition, a waiver of the term or condition itself or a waiver of any right under this Agreement.

b. **Governing Law**. This Agreement shall be governed and interpreted under the laws of the State of New York without regard to the conflicts of law provisions thereof.

c. **Headings**. Headings and captions are for convenience of reference only and shall not be deemed to interpret, supersede or modify any provisions of this Agreement.

d. **Severability**. In the event that any provision of this Agreement shall be determined by a court of competent jurisdiction to be illegal or unenforceable, that provision will be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

e. **Entire Agreement**. Upon execution by both parties, this Agreement shall constitute the entire agreement between the parties with respect to the subject matter hereof and supersedes all discussions, negotiations, agreements and past dealings, either oral or written, between or among the parties relating to the subject matter hereof.

f. **Non-Exclusive Remedies**. The rights and remedies of a party set forth herein are not exclusive, the exercise thereof shall not constitute an election of remedies and the aggrieved party shall in all events be entitled to seek whatever additional remedies may be available in law or in equity.

Each party represents and warrants that it has full right, power and authority to enter into this Agreement and perform all of its obligations hereunder.

IN WITNESS WHEREOF, the parties hereto have each caused this Assignment to be executed by their authorized representatives.

**Party #1; The Transcience Corporation (TSC)**

Dated: March 4, 2016
Name: Harold von Braunhut
Title: President of **TSC**

Signature: *Yolanda von Braunhut*
(Yolanda von Braunhut, as partner,
on behalf of Harold von Braunhut)

**Party #2; The Partnership of Harold & Yolanda (H&Y)**

Dated: March 4, 2016
Name: Yolanda von Braunhut
Title: Partner of Partnership of **H&Y**

Signature: *Yolanda von Braunhut*
(Yolanda von Braunhut, Partner
of Partnership of H&Y)

# EXHIBIT A



## US TRADEMARKS

1) **SEA-MONKEYS:** USPTO Serial Number: <u>76136804</u>; USPTO Registration Number: <u>2485247</u>; Word Mark: **SEA-MONKEYS**; was created on**:** 10-5-1962 [first use]; 1-31-1963 [application filing date]; 5-12-1964 [registration date]

2) **INSTANT LIFE:** USPTO Serial Number: <u>72161789</u>; USPTO Registration Number: <u>0769330</u>; Word Mark: **INSTANT LIFE**; was created on: 10-5-1962 [first use]; 1-31-1963 [application filing date]; 5-12-1964 [registration date]

3) **INSTANT PETS:** USPTO Serial Number: <u>72456406</u>; Registration Number: <u>999873</u>; Word Mark: **INSTANT PETS**; was created on: 1969 [first use]; 5-3-1973 [application filing date]; 12-17-1974 [registration date]

4) **TC & DESIGN:** USPTO Serial Number: <u>72452952</u>; Registration Number: <u>999872</u>; For: Transcience Corporation Logo: Drawing; was created on: 1969 [first use]; 5-3-1973 [application filing date]; 12-17-1974 [registration date]

## DOMAIN NAMES

**[List Domain Names to be transferred (if any)]**

www.sea-monkeys.com

## NON-US TRADEMARKS

1) **SEA-MONKEYS:** Country: Argentina; Registration Number: <u>1.744.137</u>; Application Number: <u>2.211.676</u>; Word Mark: **SEA-MONKEYS**

2) **SEA-MONKEYS:** Country: Australia; Registration Number: <u>260449</u>; Application Number: <u>260449</u>; Word Mark: **SEA-MONKEYS**

3) **SEA-MONKEYS:** Country: Canada; Registration Number: <u>TMA630098</u>; Application Number: <u>1,117,342</u>; Word Mark: **SEA-MONKEYS**

4) **SEA-MONKEYS:** Country: Canada; Registration Number: <u>TMA552029</u>; Application Number: <u>1,046,688</u>; Word Mark: **SEA-MONKEYS**



5) **SEA-MONKEYS:** Country: European Union; Registration Number: 563155; Application Number: 563155; Word Mark: **SEA-MONKEYS**

6) **SEA-MONKEYS:** Country: France; Registration Number: 1.626.432; Application Number: 248375; Word Mark: **SEA-MONKEYS**

7) **SEA-MONKEYS:** Country: France; Registration Number: 563155; Word Mark: **SEA-MONKEYS (stylized)**

8) **SEA-MONKEYS:** Country: Germany; Registration Number: 899238; Application Number: T1411431WZ; Word Mark: **SEA-MONKEYS**

9) **SEA-MONKEYS:** Country: Italy; Registration Number: 870677; Application Number: 257299RM; Word Mark: **SEA-MONKEYS**

10) **SEA-MONKEYS:** Country: Mexico; Registration Number: 726034; Application Number: 500763; Word Mark: **SEA-MONKEYS**

11) **SEA-MONKEYS:** Country: Mexico; Registration Number: 753394; Application Number: 500762; Word Mark: **SEA-MONKEYS**

12) **SEA-MONKEYS:** Country: New Zealand; Registration Number: 277925; Application Number: 277925; Word Mark: **SEA-MONKEYS**

13) **SEA-MONKEYS:** Country: South Africa; Registration Number: 1972/03452; Application Number: 72/3452; Word Mark: **SEA-MONKEYS**

14) **SEA-MONKEYS:** Country: South Korea; Registration Number: 569293; Application Number: 2002-27346; Word Mark: **SEA-MONKEYS**

15) **SEA-MONKEYS:** Country: United Kingdom; Registration Number: 967436; Application Number: 967346; Word Mark: **SEA-MONKEYS (stylized)**

16) **SEA-MONKEYS:** Country: United Kingdom; Registration Number: E563155; Word Mark: **SEA-MONKEYS**